No. 26-761

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JOHN GREGORY ALEXANDER HERRIN,

Defendant-Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
No. 6:16-CR-00015-BMM
HONORABLE BRIAN M. MORRIS
UNITED STATES DISTRICT JUDGE

---

DEFENDANT-APPELLANT'S OPENING BRIEF

---

JOHN GREGORY ALEXANDER HERRIN
PETITIONER-APPELLANT PRO-SE
3402 W Babcock St, Apt 2
Bozeman, MT 59718
Telephone: (406) 437-2291
SUBMITTED: March 20, 2026

# TABLE OF CONTENTS

<span style="float:right">**PAGE**</span>

TABLE OF CONTENTS.......................................................i

TABLE OF AUTHORITIES.................................................iii

STATEMENT OF JURISDICTION..............................................1

    A.    Subject Matter Jurisdiction in the District Court..............1

    B.    Jurisdiction in the Court of Appeals...........................1

    C.    Timeliness.....................................................1

STATEMENT OF THE ISSUES...............................................2

    A.    Whether the district court erred as a matter of law on 'Element 1' of the Hirabayashi standard by denying coram nobis on the ground that § 2255 "remained available" while Appellant was in custody, when Kwan expressly held that a petitioner "is not barred from seeking coram nobis relief simply because he could have sought relief while in custody."....................................................2

    B.    Whether the district court applied the wrong legal standard on Element 2 by denying the petition without finding any of the three conditions Kwan identifies as the exclusive bases for denial: that the petitioner offered no reason whatsoever, that the respondent demonstrated prejudice, or that the petitioner abused the writ...............2

    C.    Whether the petition stated a cognizable coram nobis claim where it sought performance of a *Rule 104(a)* preliminary admissibility determination that the record does not show was ever made, and where the court's own language — "I make no final determination on that issue," "regardless of the standard applied," "to the extent otherwise admissible under the rules of evidence to be applied," and "premature at this point" — affirmatively confirms that absence............2

    D.    Whether the omission is of the most fundamental character where the stolen-property predicate was submitted to the jury on a circular evidentiary structure in which the

i

theft-identity evidence was admitted to prove the
predicate and the predicate's existence was what made the
theft-identity evidence relevant, and where the *Huddleston*
inquiry required to interrupt that circularity was never
performed.......................................................2

STATEMENT OF THE CASE..............................................3

    A.    Procedural History........................................3

    B.    The January 10, 2019 Ruling...............................4

    C.    The Trial and Direct Appeal...............................6

SUMMARY OF THE ARGUMENT............................................7

STANDARD OF REVIEW...............................................10

ARGUMENT.........................................................10

    A.    District Court erred as a matter of law per Element 1.....10

    B.    District Court applied the wrong standard per Element 2...11

    C.    The Coram Nobis petition presented a fundamental error....14

        1. *Rule 104(a)* Is the Duty; *Rule 104(b)* Is Its Content....14

        2. The January 10, 2019 Ruling Did Not Perform the
            Demanded Act.........................................15

        3. The Court's Own Language Shows the Act Was Deferred,
            Not Performed........................................16

    D.    The error presented is of the most fundamental character...19

    E.    Remand is the remedy for performance of the omitted acts...21

CONCLUSION.......................................................21

STATEMENT OF RELATED CASES.......................................24

CERTIFICATE OF COMPLIANCE........................................25

CERTIFICATE OF SERVICE...........................................26

ii

iii

# TABLE OF AUTHORITIES

**TABLE OF CASES**                                           **PAGE**

Hirabayashi v. United States,
828 F.2d 591 (9th Cir. 1987)................................. 2, 9, 10

*Huddleston* v. United States,
485 U.S. 681 (1988).......................................... passim

United States v. Chan,
792 F.3d 1151 (9th Cir. 2015)................................. 9, 19

United States v. Kwan,
407 F.3d 1005 (9th Cir. 2005)................................. passim

United States v. McClelland,
941 F.2d 999 (9th Cir. 1991)...................................... 20

United States v. Morgan,
346 U.S. 502 (1954)................................. 1, 10, 19, 21, 22

United States v. Riedl,
496 F.3d 1003 (9th Cir. 2007)................................. 9, 21

**STATUTES**

18 *U.S.C. § 2314* ......................................... 3, 5, 15, 19
18 U.S.C. § 3231 ................................................... 1
28 U.S.C. § 1291 ................................................... 1
28 U.S.C. § 1651(a) ................................................ 1
28 U.S.C. § 2255 .......................................... 2, 10, 11

**RULES**

Fed. R. App. P. 4(a)(1) ............................................ 1
Fed. R. Evid. *104(a)*......................................... passim
Fed. R. Evid. 104(b)........................................... passim

## STATEMENT OF JURISDICTION

A.   Subject Matter Jurisdiction in the District Court.

The district court had jurisdiction over the underlying criminal case under *18 U.S.C. § 3231* and over the petition for writ of error coram nobis under the *All Writs Act, 28 U.S.C. § 1651(a). United States v. Morgan, 346 U.S. 502, 506-07 (1954)*.

B.   Jurisdiction in the Court of Appeals.

This Court has jurisdiction under *28 U.S.C. § 1291*. The denial of a petition for writ of error coram nobis is a final order appealable as of right. *United States v. Kwan, 407 F.3d 1005, 1010 (9th Cir. 2005)*.

C.   Timeliness.

The district court denied the petition on February 3, 2026. [Dkt. 136; ER 1.] Appellant filed a notice of appeal on February 5, 2026. [Dkt. 137; *ER 150*.] An appeal from an order granting or denying coram nobis relief is governed by *Federal Rule of Appellate Procedure 4(a)(1)*. Where the United States is a party, the notice of appeal, must be filed within sixty days of the order. *Fed. R. App. P. 4(a)(1)*. The notice was filed within that period.

1

## STATEMENT OF THE ISSUES

A. Whether the district court erred as a matter of law on 'Element 1' of the *Hirabayashi* standard by denying coram nobis on the ground that *§ 2255* "remained available" while Appellant was in custody, when *Kwan* expressly held that a petitioner "is not barred from seeking coram nobis relief simply because he could have sought relief while in custody."

B. Whether the district court applied the wrong legal standard on Element 2 by denying the petition without finding any of the three conditions *Kwan* identifies as the exclusive bases for denial: that the petitioner offered no reason whatsoever, that the respondent demonstrated prejudice, or that the petitioner abused the writ.

C. Whether the petition stated a cognizable coram nobis claim where it sought performance of a *Rule 104(a)* preliminary admissibility determination that the record does not show was ever made, and where the court's own language — "I make no final determination on that issue," "regardless of the standard applied," "to the extent otherwise admissible under the rules of evidence to be applied," and "premature at this point" — affirmatively confirms that absence.

D. Whether the omission is of the most fundamental character where the stolen-property predicate was submitted to the jury on a circular evidentiary structure in which the theft-identity evidence was admitted to prove the predicate and the predicate's existence was what made the theft-identity evidence relevant, and where the *Huddleston* inquiry required to interrupt that circularity was never performed.

## STATEMENT OF THE CASE

### A. Procedural History

Appellant was indicted on October 26, 2016, on fourteen counts: interstate transportation of stolen property (Count 1), twelve counts of money laundering (Counts 2-13), and attempted witness tampering (Count 14). [Dkt. 2; ER 135.]

Before trial, Appellant filed a motion to suppress and exclude the theft-identity evidence on the ground that the stolen-property predicate had not been independently established. [Dkt. 13-14; ER 113-127.] The court held a full evidentiary hearing on January 10, 2019. [Dkt. 33; *ER 109*.] Four witnesses testified. At the close of evidence, the court ruled from the bench and denied the motion in a one-sentence written order. [Dkt. 34; ER 107; Hearing Tr. 118:1-122:19; ER 102.] Defense counsel filed a notice of interlocutory appeal the same day. [Dkt. 36; ER 105.] The Ninth Circuit dismissed the appeal without reaching the merits. [Dkt. 46; ER 91.]

Before trial, Appellant filed proposed jury instructions demanding that the jury be instructed to disregard the theft-identity evidence if the stolen-property predicate was not independently established. [Dkt. 27; *ER 110*.] The court deferred instruction-related questions to the close of trial as "premature at this point." [Hearing Tr. 122:6-12; ER 102.]

Trial commenced January 13, 2020. Defense counsel renewed objections

3

to the theft-identity evidence at trial. [Dkt. 77, 80-81; ER 88-90.] The jury convicted Appellant on nine counts and acquitted on four. [Dkt. 83; ER 81.] The final jury instructions included a *Rule 404(b)* limiting instruction but contained no instruction directing the jury to disregard the theft-identity evidence if the predicate was not independently established. [Dkt. 87; ER 64; Trial Tr. 606:11-17; ER 33.]

After trial, defense counsel filed a renewed Rule 29 motion. [Dkt. 98; *ER 56*.] Appellant was sentenced to 30 months' imprisonment and 36 months' supervised release. [Dkt. 116; *ER 20*.]

On direct appeal, the Ninth Circuit reviewed and affirmed the Rule *401* and Rule *404(b)* rulings. [Dkt. 130; ER 16; United States v. Herrin, No. 20-30130, 2021 WL 2581357 (9th Cir. June 23, 2021).] The memorandum disposition contains no reference to *Rule 104(a)*, *Rule 104(b)*, or *Huddleston v. United States*. [Id.] The Ninth Circuit denied rehearing. [Dkt. 131; ER 15.] The Supreme Court denied certiorari on December 6, 2021. [Dkt. 134; ER 14.]

Appellant completed supervised release in January 2025. On January 29, 2026, Appellant filed a petition for writ of error coram nobis. [Dkt. 135; ER 8.] The district court denied the petition on February 3, 2026. [Dkt. 136; ER 1.] This appeal followed.

## B.   The January 10, 2019 Ruling

The January 10, 2019 hearing addressed whether the theft-identity

evidence should be excluded. The government's theory was that the money transported from Montana to Nevada was stolen from a Garda armored truck in November 2013, and that evidence showing Appellant may have been the person who took the money was relevant to prove the stolen-property element of Count 1 and the criminally-derived-property element of Counts 2 -13. [Hearing Tr. 119:16-25; ER 95.]

Defense counsel argued that the theft-identity evidence could not be admitted unless the stolen-property predicate was independently established by sufficient proof, and that the government's proof structure was circular: the theft-identity evidence was being offered to prove the predicate, and the predicate's existence was what made the theft-identity evidence relevant. [Dkt. 13-14; *ER 113*-127.]

At the close of the hearing, the court ruled from the bench. The ruling performed a Rule *401* relevance analysis. The court analyzed whether the theft-identity evidence was relevant to the elements of 1*8 U.S.C. § 2314*, finding that the evidence "touches upon and deals with both the question of who took the money and whether or not the defendant intended to deprive the true owner of the money." [Hearing Tr. 119:16-25; ER 95.] The ruling contains no reference to *Rule 104(a)*, *Rule 104(b)*, or *Huddleston v. United States*. [Hearing Tr. 118:1-122:19; ER 94.]

The court's ruling contains four critical phrases:

**First**, the court stated: "I make no final determination on that

5

issue, because it is the Court's determination, regardless of the standard applied, and whether the review of this Court's decision be for abuse of discretion, or whether it be by de novo review, that the evidence should be admitted." [Hearing Tr. 121:10–15; ER 101.]

**Second**, the court admitted the evidence only "to the extent that the court finds it otherwise to be admissible under the rules of evidence to be applied." [Hearing Tr. 122:16–18; ER 102.]

**Third**, the court deferred instruction-related questions to "settlement of instructions at the completion of trial" as "premature at this point." [Hearing Tr. 122:6–12; ER 102.]

**Fourth**, the court stated the conclusion held "regardless of the standard applied." [Hearing Tr. 121:10–15; ER 101.]

The written order states: "Defendant's Motion to Suppress Evidence is DENIED." [Dkt. 34; ER 107.]

## C.    The Trial and Direct Appeal

At trial, the government proved the stolen-property predicate through the theft-identity evidence—the same evidence whose admissibility was conditioned on the predicate being independently established. [Trial Tr. 609:16–610:2; ER 36.] The government told the jury in closing: "We don't know precisely how those Kalispell load bags were taken. We don't know exactly when or where... We don't know precisely who. Maybe it was Mr. Herrin. Maybe it was someone else... it's not your job to solve that

6

mystery." [*Id.*]

Defense counsel's closing identified the dependency: "If you don't believe that as a matter of fact, you can't convict on any of the first 13 counts." [Trial Tr. 626:11–13; ER 53.]

The final jury instructions included the standard Count 1 elements instruction, which stated: "The government need not prove who stole the money." [Trial Tr. 603:8; ER 30; Dkt. 87; ER 64.] The instructions also included a Rule 404(b) limiting instruction directing the jury to consider uncharged-acts evidence only for bearing on intent, motive, opportunity, preparation, plan, and knowledge. [Trial Tr. 606:11–17; ER 33; Dkt. 87; ER 64.] The instructions contained no direction to disregard the theft-identity evidence if the stolen-property predicate was not independently established—the instruction the defense demanded at Docket No. 27 and the obligation the court deferred at the January 10 hearing. [Dkt. 27; ER 110; Hearing Tr. 122:6–12; ER 102.]

On direct appeal, the Ninth Circuit reviewed and affirmed the Rule 401 and Rule 404(b) rulings and the court's rejection of the defense's proposed instruction. [2021 WL 2581357, at *1–2.] The disposition contains no reference to *Rule 104(a)*, *Rule 104(b)*, or *Huddleston*. [*Id.*] No appellate court identified where in the record the *Rule 104(a)* threshold determination was made. No appellate court held that the determination was not required. [Dkt. 137 ¶¶ 11–12; *ER 144.*]

7

## SUMMARY OF THE ARGUMENT

This appeal does not challenge a bad *Rule 104(a)* determination. It challenges the denial of a petition that sought performance of a *Rule 104(a)* determination the record does not show was ever made, even as later proceedings treated the missing act as though it had occurred.

The district court erred as a matter of law on Element 1 by converting *Kwan*'s present-availability test—"is unavailable"—into a retrospective forfeiture rule—"was unavailable." *Kwan* expressly held that a petitioner "is not barred from seeking coram nobis relief simply because he could have sought relief while in custody." *407 F.3d at 1013*. The district court's holding does precisely what *Kwan* forbids.

The district court applied the wrong legal standard on Element 2. *Kwan* identified three exclusive conditions under which a petition may be denied on sound-reasons grounds: where the petitioner offered no reason whatsoever, where the respondent demonstrated prejudice, or where the petitioner abused the writ. *Id*. at 1013. None appears in the order. The district court found Appellant offered reasons and deemed them insufficient—that is not the same as offering no reason whatsoever. The order contains no prejudice finding and no abuse finding. The denial lacks a lawful basis.

The petition stated a cognizable claim. *Rule 104(a)* imposes a non-delegable duty to decide preliminary questions concerning admissibility. When relevance depends on a conditional fact, *Rule 104(b)* supplies the

8

standard: whether sufficient proof exists from which the jury could reasonably find the conditional fact. *Huddleston, 485 U.S. at 689-90*. The January 10, 2019 ruling performed a Rule *401* relevance analysis. It did not perform the distinct *Rule 104(a)* adjudication the defense demanded.

The court's own language confirms this. The court stated it was making "no final determination on that issue" and that the conclusion held "regardless of the standard applied." [Hearing Tr. 121:10-15; ER 101.] It admitted the evidence only "to the extent otherwise admissible under the rules of evidence to be applied." [Hearing Tr. 122:16-18; ER 102.] It deferred instruction-related questions as "premature at this point." [Hearing Tr. 122:6-12; ER 102.] These are not the artifacts of a completed adjudication. They are the artifacts of an adjudication begun and not finished. The ruling cleared the evidence to proceed; it did not determine that the evidence had cleared the threshold it was conditionally admitted to clear.

The error is of the most fundamental character. The stolen-property predicate was submitted to the jury on a circular evidentiary structure: the theft-identity evidence was admitted to prove the predicate, and the predicate's existence was what made the theft-identity evidence relevant. The *Huddleston* inquiry was required to interrupt that circularity. It was never performed.

The remedy is remand for performance of the omitted judicial act.

9

## STANDARD OF REVIEW

The denial of a coram nobis petition is reviewed de novo. United States v. Riedl, 496 F.3d 1003, 1006 (9th Cir. 2007). Whether the petition stated a cognizable claim, whether the district court applied the correct legal standard to each Hirabayashi element, and whether the identified omission constitutes fundamental error are questions of law reviewed de novo. United States v. Kwan, 407 F.3d 1005, 1011 (9th Cir. 2005); United States v. Chan, 792 F.3d 1151, 1153 (9th Cir. 2015).

## ARGUMENT

### A.   District Court erred as a matter of law per Element 1

The first *Hirabayashi* requirement asks whether a more usual remedy is currently available. *Kwan*, 407 F.3d at 1011. Section 2255 relief requires custody. 28 U.S.C. § 2255. Appellant completed supervised release in January 2025. [Dkt. 116 at 2; ER 30; Dkt. 136 at 3; ER 1.] Custody has ended. Direct appeal is exhausted. No statutory avenue to relief remains. The writ exists to fill this void so that a wrong does not "stand uncorrected which the available remedy would right." *Morgan*, 346 U.S. at 513.

The district court denied Element 1 on the ground that § 2255 "remained available" between December 2021 and January 2025 and that "a remedy remained available to Herrin that he chose not to pursue." [Dkt. 136 at 5; ER 1.] That reasoning transforms the present-availability test into a retrospective forfeiture rule.

10

*Kwan* directly addressed and rejected this conversion. The Ninth Circuit observed that substituting "was unavailable" for "is unavailable" would be "a subtle change in the language... that would cause a great change in its meaning." *407 F.3d at 1013*. The court held that a petitioner "is not barred from seeking coram nobis relief simply because he could have sought relief while in custody." *Id*.

The district court's holding does precisely what *Kwan* forbids: it denies coram nobis because § *2255 wa*s available at an earlier time. That result eliminates the remedy *Morgan* established for exactly this situation.

The correct Element 1 inquiry asks a single question: is a more usual remedy currently available? The answer is no. Element 1 is satisfied.

## B.   District Court applied the wrong standard per Element 2

Kwan identified the exclusive conditions under which a coram nobis petition may be denied on sound-reasons grounds: "where the petitioner has delayed for no reason whatsoever, where the respondent demonstrates prejudice, or where the petitioner appears to be abusing the writ." *407 F.3d at 1013*. The law "does not require a petitioner to challenge his conviction at the earliest opportunity; it requires only that he have sound reasons for not doing so." Id. at 1012.

None of Kwan's three conditions appears in the district court's

11

order. [Dkt. 136 at 5–6; ER 1.]

The "no reason whatsoever" condition is not met. The district court found that Appellant offered reasons—incarceration and COVID-related constraints—and concluded they were insufficient. [Dkt. 136 at 6; ER 1.] A petitioner who offers reasons a court finds unpersuasive is not a petitioner who offered no reason whatsoever. Kwan authorizes denial where the petitioner offers no reason at all; it does not authorize denial where the court finds the offered reasons inadequate.

The demonstrated-prejudice condition is not met. Kwan places the burden on the respondent: denial requires that "the respondent demonstrates prejudice." *407 F.3d at 1013*. The order contains no prejudice analysis. [Dkt. 136 at 5–6; ER 1.] The government made no showing of unavailable witnesses, faded memories, degraded evidence, or investigative difficulty. The petition rests on fixed record materials whose contents are identical today to what they were in 2021. The absence of a prejudice finding is the absence of the factual condition Kwan requires the government to demonstrate before delay may be held against the petitioner.

Abuse of the writ is not present. The order makes no such finding. [Dkt. 136 at 5–6; ER 1.]

Because none of Kwan's three conditions is present in the order, the Element 2 denial lacks a lawful basis under controlling circuit authority.

The petition was filed within one year of the date coram nobis

12

became the only available vehicle. Every prior forum was exhausted in sequence without any court performing or identifying the omitted determination. [Dkt. 135; ER 8; Dkt. 137 ¶¶ 11-12, 23-24; *ER 144.*] That is a sound reason under Kwan.

The district court's contrary reasoning is not merely inconsistent with Kwan. It is internally self-defeating. A coram nobis claim identifying the omission of a specific judicial act requires more than assertion. It requires a record-based showing that the act was demanded, deferred, never performed, and later treated as though it had been completed. That showing becomes legible only through the assembled procedural record. The district court treated the time required to develop that showing as evidence of unreasonable delay, thereby penalizing the diligence required to produce a legally sufficient petition while implicitly favoring a premature filing that would likely have been dismissed as conclusory and unsupported.

The result is an impossible standard. If Appellant had filed immediately after certiorari was denied, before the record affirmatively demonstrated the absence of the required determination, the petition would have been vulnerable to dismissal as unsupported. Filing after developing the claim becomes "delay." Under that reasoning, there is no point at which a petitioner can both present a legally sufficient claim and satisfy the court's timeliness requirement. That is not a sound-reasons standard. It is a no-relief standard. Kwan does not permit that result.

13

The problem is structural. The omitted act was self-concealing. Because the error was an omission rather than a ruling, it left no ordinary artifact to appeal. The trial proceeded on the assumption that the required determination had been made. The verdict, judgment, and affirmance layered additional appearances of regularity onto a record whose foundational act had never been performed. Each stage treated the missing act as though it had occurred, and the existence of those later proceedings was then available as proof that nothing foundational was missing, even though each layer presupposed the very act the record does not show was ever done. A claim of that kind becomes fully legible only through the completed procedural history. Using the time required to assemble that history as the reason to deny review rewards the error for having successfully evaded ordinary correction.

## C.   The Coram Nobis petition presented a fundamental error.

### 1.   *Rule 104(a)* Is the Duty; Rule 104(b) Is Its Content

*Rule 104(a)* assigns to the court the non-delegable duty to decide preliminary questions concerning the admissibility of evidence. Fed. R. Evid. *104(a)*. The duty is structural—imposed by the rule, not created by the parties' citation of it.

When the relevance of offered evidence depends on whether a conditional fact exists, *Rule 104(b)* supplies the standard the court must apply under *Rule 104(a)*: whether sufficient proof exists from which the jury could reasonably find the conditional fact. *Huddleston, 485 U.S. at*

689–90. *Rule 104(b)* does not create a separate duty. It identifies the content of the *Rule 104(a)* duty in this evidentiary posture. If the proponent fails to meet this minimal standard of proof, "the trial court must instruct the jury to disregard the evidence." Id. at 690.

The petition sought enforcement of the *Rule 104(a)* duty: to determine whether sufficient independent proof existed to establish the stolen-property predicate on which the theft-identity evidence's relevance depended.

### 2. The January 10, 2019 Ruling Did Not Perform the Demanded Act.

The January 10, 2019 ruling performed a general relevance analysis and conditionally admitted the theft-identity evidence. It did not perform the distinct *Rule 104(a)* preliminary admissibility adjudication the defense demanded.

A completed *Rule 104(a)* admissibility determination would identify the governing standard, apply it to the predicate problem presented, and resolve whether the condition for admission had been met. *Huddleston*, 485 U.S. at 688–90. In this evidentiary posture, the governing standard is *Rule 104(b)*: whether sufficient independent proof existed from which the jury could find the stolen-property predicate on which the theft-identity evidence's relevance depended. Id. at 689.

Rule *401* asks whether evidence tends to make a consequential fact

15

more probable. *Rule 104(b)/Huddleston* asks whether the predicate on which relevance depends was independently established by sufficient proof. These are distinct inquiries with distinct standards.

The court analyzed admissibility by reference to the elements of 18 U.S.C. § 2314. [Hearing Tr. 120:1–121:1; ER 96.] It asked whether the theft-identity evidence was relevant to the charged elements, finding that the evidence "touches upon and deals with both the question of who took the money and whether or not the defendant intended to deprive the true owner of the money." [Hearing Tr. 119:16–25; ER 95.] This is a Rule *401* relevance analysis.

The complete ruling text contains no reference to *Rule 104(a)*, *Rule 104(b)*, or *Huddleston v. United States*. [Hearing Tr. 118:1–122:19; ER 94.] The district court did not rule affirmatively or negatively on the existence of the predicate condition and did not hold the determination unnecessary. [Dkt. 137 ¶¶ 5–6; *ER 144.*]

3.    The Court's Own Language Shows the Act Was Deferred, Not Performed.

The record contains no completed *Rule 104(a)* preliminary admissibility determination. What it does contain—the court's conditional admission language, its express deferral of the instruction question, its statement that it was making no final determination, and its statement that the evidence was admitted regardless of the applicable standard— affirmatively confirms that absence rather than filling it. These are not

16

the artifacts of a completed adjudication. They are the artifacts of an adjudication begun and not finished.

First, the court stated: "I make no final determination on that issue, because it is the Court's determination, regardless of the standard applied, and whether the review of this Court's decision be for abuse of discretion, or whether it be by de novo review, that the evidence should be admitted." [Hearing Tr. 121:10–15; ER 101.] A court making no final determination is a court not deciding. The court explicitly said it was not making a final determination on the threshold question and then proceeded to admit the evidence anyway, as if the threshold question's resolution was irrelevant to the outcome.

Second, the court stated the conclusion held "regardless of the standard applied." [Id.] A court that identifies the governing standard and applies it to the specific problem presented has performed an adjudicative act. A court that declines to identify the standard— announcing instead that the conclusion holds regardless of which standard governs—has not performed one. A ruling that says "regardless of the standard" is a ruling that applied no standard.

Third, the court admitted the theft-identity evidence only "to the extent that the court finds it otherwise to be admissible under the rules of evidence to be applied." [Hearing Tr. 122:16–18; ER 102.] A completed admissibility determination says: this evidence is admissible. That

17

language says: this evidence may be presented if it is admissible under the rules to be applied. The first is a determination. The second is a reservation. The court's own words confirm that admissibility remained subject to the rules to be applied at trial—of which *Rule 104(a)* and the *Huddleston* standard are examples—rather than having been finally resolved.

Fourth, the court deferred instruction-related questions to "settlement of instructions at the completion of trial" as "premature at this point." [Hearing Tr. 122:6–12; ER 102.] Under *Huddleston*, the disregard instruction is the enforcement mechanism for an incomplete conditional predicate. *485 U.S. at 690*. A court that explicitly defers its own enforcement mechanism to a later stage is a court that explicitly acknowledges the underlying question remains open. The deferral is not incidental language. It is the court's own statement that the act was not complete.

Taken together, the four features of the ruling establish a single, consistent conclusion: the court cleared the evidence to proceed while leaving open the conditional-fact question the defense had asked it to decide. The ruling cleared the evidence to proceed; it did not determine that the evidence had cleared the threshold it was conditionally admitted to clear.

The final jury instructions include a Rule *404(b)* limiting instruction but contain no instruction requiring the jury to find from

independent evidence that the predicate was established before using the conditional evidence—the instruction the defense demanded at Docket No. 27 and the obligation the court deferred at the hearing. [Dkt. 137; *ER 144*; Hearing Tr. 122:6–12; ER 102; Trial Tr. 606:11–17; ER 33; Dkt. 87; ER 64.] The Rule *404(b)* instruction and the *Huddleston* disregard instruction are categorically distinct. The *404(b)* instruction restricts how the jury uses evidence already admitted—it presupposes proper admission. The *Huddleston* disregard instruction enforces the threshold condition whose resolution was deferred—it presupposes the condition was resolved against admission. The court gave the former. The deferred obligation to give the latter was never discharged.

On direct appeal, the Ninth Circuit reviewed and affirmed the Rule *401* and *404(b)* rulings. [2021 WL 2581357, at *1–2.] The Ninth Circuit's memorandum disposition contains no reference to *Rule 104(a)*, *Rule 104(b)*, or *Huddleston*. [Id.] No appellate court identified where in the record the threshold determination was made. No appellate court held that the determination was not required. [Dkt. 137 ¶¶ 11–12; *ER 144*.]

D.    **The error presented is of the most fundamental character.**

The writ reaches errors "of the most fundamental character, that is, such as rendered the proceeding itself invalid." *Morgan*, *346 U.S. at 511*; *Chan*, *792 F.3d at 1153*. Because the district court did not reach Elements 3 or 4, this Court may remand for the district court to address them. The record establishes both elements on its face.

Count 1 required the government to prove Herrin transported stolen property in interstate commerce. 18 U.S.C. § 2314. The "stolen" element is an essential element of the charged offense, and every money laundering count derived its essential criminally-derived-property element from it. [Trial Tr. 603:9–604:7; ER 30.] The government's proof that the funds were stolen was the theft-identity evidence. [Hearing Tr. 119:16–25; ER 95.] The relevance of the theft-identity evidence to the charged elements depended on the predicate that the funds were stolen property.

The structure is circular. The theft-identity evidence was offered to prove the stolen-property predicate. The relevance of the theft-dentity evidence depended on the stolen-property predicate being established. The *Huddleston* determination was required to interrupt this circularity—to ask, before admitting the evidence, whether sufficient independent proof existed to establish the predicate apart from the evidence offered to prove it. The court never asked that question. No court has asked that question. [Dkt. 137 ¶¶ 23–24; *ER 144.*]

In *United States v. McClelland*, the Ninth Circuit granted coram nobis relief where a jury instruction relieved the government of its burden to prove an essential element, holding that sidestepping the requirement to prove every element beyond a reasonable doubt is fundamental error. *941 F.2d at 999*. The present case reaches the *McClelland* result through a specific mechanism. The essential "stolen property" element was submitted to the jury on the strength of evidence

20

whose threshold admissibility—under the standard *Huddleston* required before that evidence could be admitted—was never resolved. The jury convicted on a foundational structure the Rules required to be independently verified before it was presented. That is the *McClelland* scenario by a different mechanism.

**E.  Remand is the remedy for performance of the omitted acts.**

This appeal does not ask this Court to perform the *Rule 104(a)* determination the district court omitted. It asks this Court to determine whether the petition stated a cognizable claim warranting merits review— and whether the district court erred in denying that review on threshold grounds.

To assess cognizability, this Court must examine what the petition alleged and what the record shows. The following presents the substance of the claimed error—not for resolution, but to demonstrate that the claim is neither frivolous nor abstract. The petition identified a specific judicial act required by *Rule 104(a)*, demanded by the defense, and documented in the record as deferred rather than performed. Whether that omission ultimately warrants relief is for the district court on remand. Whether the petition states a cognizable claim warranting that remand is the question presently before this Court.

On remand, the district court must perform the *Rule 104(a)* preliminary admissibility determination—applying the *Rule*

*104(b)/Huddleston* standard—that the defense raised before trial and that no court has performed in reviewable form. The determination requires the court to ask: was there sufficient independent proof, apart from the theft-identity evidence itself, from which the jury could find the stolen-property predicate?

## CONCLUSION

The district court denied the petition on threshold grounds without reaching the merits. It did not identify where in the record the *Rule 104(a)* determination appears. It did not hold that no such determination was required. It did not address the court's own language—"regardless of the standard applied," "to the extent otherwise admissible under the rules of evidence to be applied," and "premature at this point"—that the petition identified as evidence that the act was deferred rather than completed. The question the petition presented therefore remains unanswered.

Upholding the district court's threshold reasoning would establish that the conditions most characteristic of coram nobis-eligible errors are the same conditions that defeat relief. Claims fully visible and reasonably raiseable earlier are denied under Riedl. Claims obscured by the mechanism of the error itself, and requiring time and record development before they can be articulated in cognizable form, are denied for delay. The writ would remain available in theory but unreachable in practice for the class of errors it was designed to reach. That is

nullification of the remedy Morgan preserved.

Morgan recognized coram nobis because some errors escape every ordinary remedial mechanism and yet remain too fundamental to leave uncorrected. *346 U.S. at 513*. A timeliness standard that denies relief in proportion to how effectively an error evaded detection does not serve that purpose. It reverses it. This Court should reverse and remand with instruction that the merits be addressed.

Respectfully submitted, this 20th day of March, 2026.

/s/ John Gregory Alexander Herrin

John Gregory Alexander Herrin

Defendant-Appellant, Pro Se

3402 W Babcock St. Apt. 2

Bozeman, MT 59718

(406) 437-2291

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Appellant identifies the following related cases:

*United States v. Herrin*, No. 20-30130 (9th Cir. June 23, 2021): Direct appeal of the underlying conviction. The present appeal arises from the same criminal case and directly implicates the evidentiary rulings reviewed in the direct appeal.

*United States v. Herrin*, No. 19-30002 (9th Cir. June 27, 2019): Dismissed interlocutory appeal of the January 10, 2019 pretrial admissibility ruling at issue in this appeal.

Appellant is not aware of any other related case pending in this Court.

DATED this 20th day of March, 2026.

/s/ John Gregory Alexander Herrin

John Gregory Alexander Herrin

Defendant-Appellant, Pro Se

24

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains less than 14,000 words, with 5,043 total words (including footnotes and quotations) at an average of 220 (or less) words per page, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared and typed with Drafting Mono font, a roman style, mono-spaced typeface, and using 10.5-point size or greater, at or exceeding 10.5 characters per inch.

DATED this 20th day of March, 2026.


/s/ John Gregory Alexander Herrin

John Gregory Alexander Herrin

Defendant-Appellant, Pro Se

25