No. 26-761

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JOHN GREGORY ALEXANDER HERRIN,

Defendant-Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
No. 6:16-CR-00015-BMM
HONORABLE BRIAN M. MORRIS
UNITED STATES DISTRICT JUDGE

---

**DEFENDANT-APPELLANT'S EXCERPTS OF RECORD**

---

JOHN GREGORY ALEXANDER HERRIN
PETITIONER-APPELLANT PRO-SE
3402 W Babcock St, Apt 2
Bozeman, MT 59718
Telephone: (406) 437-2291

SUBMITTED: March 20, 2026

**INDEX**

**Excerpts of Record**                                      **Page**

Order
    [Defendant-Petitioner's Writ of Error Coram Nobis
    Petition Denied]
    Filed on February 03, 2026
    Docket No. 136 ........................................ 1

Defendant-Petitioner's Writ of Error Coram Nobis
    Filed on January 29, 2026
    Docket No. 135 ........................................ 8

Order
    [Defendant's Petition for Writ of Certiorari is Denied]
    Filed on December 07, 2021
    Docket No. 134 ........................................ 14

Order
    [Defendant's Petition for Rehearing and Rehearing En Banc
    Denied]
    Filed on July 27, 2021
    Docket No. 131 ........................................ 15

Memorandum: Disposition of the Ninth Circuit Court of Appeals
    [Defendant's Appeal from District Court Affirmed]
    Filed on June 23, 2021
    Docket No. 130 ........................................ 16

Judgment of the Criminal Case
    Filed on June 16, 2020
    Docket No. 116 ........................................ 20

Excerpts from Reporter's Transcripts of Jury Trial Proceedings
    [Jury Trial Day 4, Volume 4 of 5]
    Filed on February 26, 2020
    Docket No. 108, Pages 600 to 608 ........................ 27

    Docket No. 108, Pages 609 to 622 ....................... 36

    Docket No. 108, Pages 623 to 628 ....................... 50


Defendant Herrin's Opposed, Renewed Motion for Acquittal Under
    *Rule 29(c) Fed*. *R*. *Crim*. *P*. and Opposed, Alternative
    Motion for New Trial Under *Rules 29(d) and 33 Fed R.*
    *Crim*. *P*.
    Filed on February 26, 2020
    Docket No. 98 ......................................... 56


Jury Verdict
    [Redacted]
    Filed on January 16, 2020
    Docket No. 93 ......................................... 59


Final Instructions Given to Jury
    Filed on January 16, 2020
    Docket No. 87 ......................................... 64


Minute Entry: Day Four Jury Trial
    [Redacted Indictment Modified on January 17, 2020]
    Filed on January 16, 2020
    Docket No. 83 ......................................... 81


Minute Entry: Day Three Jury Trial
    [Full Text]
    Filed on January 15, 2020
    Docket No. 81 ......................................... 88


Minute Entry: Day Two Jury Trial
    [Full Text]
    Filed on January 14, 2020
    Docket No. 80 ......................................... 89

ii

Minute Entry: Day One Jury Trial
     [Full Text]
     Filed on January 13, 2020
     Docket No. 77 ........................................ 90

Order
     [Defendant's Notice of Appeal Interlocutory Denied]
     Filed on June 27, 2019
     Docket No. 46 ........................................ 91

Excerpts From Reporter's Transcript of Hearing on Motion to
     Suppress
     Filed on January 18, 2019
     Docket No. 44, Pages 112 to 124 ........................ 92

Defendant's Notice of Interlocutory Appeal From District
     Court Order Denying Defendant's Motion to Suppress
     Filed on January 10, 2019
     Docket No. 36 ........................................ 105

Order
     [Defendant's Motion to Suppress Denied]
     Filed on January 10, 2019
     Docket No. 34 ........................................ 107

Minute Entry: Motion Hearing for Motion to Suppress
     [Full Text]
     Filed on January 08, 2019
     Docket No. 33 ........................................ 109

Defendant Herrin's Proposed Supplemental Jury Instruction
     [Working Copy]
     Filed on January 07, 2019
     Docket No. 27 ........................................ 110

Defendant's Brief In Support of His Opposed Motion to
     Suppress
     Filed on December 12, 2018
     Docket No. 14 ........................................ 113

iii

Defendant's Opposed Motion to Suppress Evidence *Fed. R*
  *Crim. P. Rule 12(b)(3)(C)*
  Filed on December 12, 2018
  Docket No. 13 ........................................ 127

Indictment
  [Redacted]
  Filed on October 26, 2016
  Docket No. 2 ........................................ 135

Defendant-Petitioner's Memorandum in Support of Notice of
  Appeal
  Filed on February 05, 2026
  Docket No. 137 ........................................ 144

Notice of Appeal
  Filed on February 05, 2026
  Docket No. 137 ........................................ 150

Criminal Docket Sheet ........................................ 156

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 16-15-H-BMM |
| Plaintiff/Respondent, | |
| vs. | **ORDER** |
| JOHN GREGORY ALEXANDER HERRIN, | |
| Defendant/Movant. | |

Defendant John Gregory Alexander Herrin's ("Herrin") moved the Court for a petition for writ of error coram nobis, pursuant to 28 U.S.C. § 1651. (Doc. 135.) Herrin is proceeding pro se.

## I.     Background

A federal grand jury returned an indictment against Herrin, charging him with Interstate Transportation of Stolen Property (Count 1), Money Laundering (Counts 2-13), and Attempted Witness Tampering (Count 14) on October 26, 2016. (Doc. 1.) Herring, represented by counsel, proceeded to a 4-day jury trial in January of 2020. The jury found Herring guilty on counts 1, 2, 3, 4, 5, 8 11, 12

1

**EXCERPTS OF RECORD - Page 001**

and 13, and found him not guilty on counts 6, 7, 9 10, and 14. *See e.g.*, Min. (Doc. 83.) The Court sentenced Herrin to the Bureau of Prisons on June 16, 2020, for 30 months on each count, to run concurrently, followed by 36 months of supervised release. (Doc. 116.)

Herrin timely appealed. (Doc. 118.) The Ninth Circuit affirmed his convictions. (*See* Doc. 130); *United States v. Herrin*, Cause No. 20-30130, Mem. (9th Cir. Jun 23, 2021). The Ninth Circuit determined that there had been no constructive amendment of the indictment; the evidence admitted was relevant to the charges for which Herrin was tried, and it did not alter the charges. (*Id*. at 2) (citations omitted). The Ninth Circuit also reviewed the Court's denial of Herrin's motion in limine, admission of other evidence, and whether evidence fell within the scope of Federal Rule of Evidence 404(b). The Ninth Circuit concluded that the evidence to which Herrin objected was relevant under Rule 401 and was not "other act" evidence subject to the restraints of Rule 404(b). (*Id*. at 2-3.) The evidence was related to the elements of the crime charge, specifically that Herrin transported money interstate and had knowledge that the money was stolen. Admission of the evidence was not an abuse of discretion. (*Id*. at 3.)

Finally, the Ninth Circuit concluded that the Court did not err in rejecting one of Herrin's proposed jury instructions and giving the instruction that it did. (*Id*.) The Court was required to consider Herrin's proposed instruction based upon

2

**EXCERPTS OF RECORD - Page 002**

his theory of the case. Herrin was "not entitled to an instruction in a particular form." (*Id*. at 3-4) (citations omitted). Giving an instruction patterned after the Circuit's model 404(b) instruction served to prevent the jury from considering other act evidence and was proper. (*Id*. at 4.)

The United States Supreme Court denied Herrin's petition for writ of certiorari on December 6, 2021. (Doc. 134.)

Herrin did not file a motion to vacate his sentence pursuant to 28 U.S.C. §2255. Herrin indicates that he fully served his sentence and completed supervision in January 2025. (Doc. 135 at 2.)

## II.     Analysis

Pursuant to 28 U.S.C. §1651, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651. A writ of error coram nobis "affords a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody." *United States v. Kwan*, 407 F. 3d 1005, 1009 (9th Cir. 2005), *abrogated on other grounds by Padilla v. Kentucky*, 559 356, 370 (2010). A writ of error coram nobis is a "highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." *United States v. Riedl*, 496 F. 3d 1003, 1005 (9th Cir. 2007). The writ is "used only

to review errors of the most fundamental character." *Matus-Leva v. United States*, 287 F. 3d 758, 760 (9th Cir. 2002).

To qualify for a writ of error coram nobis, the petitioner must show "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *Hirabayashi v. United States*, 828 F. 2d 591, 604 (9th Cir. 1987); *see also Kwan*, 407 F. 3d at 1011. "Because these requirements are conjunctive, failure to meet any one of them is fatal." *Matus-Leva*, 287 F. 3d at 760.

Herrin argues that all four requirements for a writ of error coram nobis are present: (1) having fully discharged his sentence, no other remedy is now available (Doc. 135 at 2); (2) custodial and pandemic-related constraints limited Herrin's access to materials and the petition was filed promptly after his release from supervision (*Id.*); (3)  Herrin continues to suffer significant collateral consequences from his felony conviction, including loss of civic rights, employment and licensing barriers, financial blacklisting, travel restrictions, and reputational harm (*Id.*); and (4) the error is structural and of the most fundamental character. Herrin argues that the Court had a non-delegable duty to adjudicate threshold questions of evidentiary admissibility under Fed. R. Evid 104(a) and failure to do so violated

**EXCERPTS OF RECORD - Page 004**

Herrin's right to due process.  (*Id*. at 3-5.)  Herrin asks that the Court issue a writ of error coram nobis and vacate his judgment as the record cannot sustain a conviction based upon lawfully admitted evidence.  (*Id*. at 5-6.)

Relative to the first coram nobis requirement, Herrin did not exhaust all other remedies. Herrin no longer is serving his term of supervised release and no longer remains in "custody." This end of custody makes a remedy under § 2255 unavailable to Herrin. Herrin did not attempt to file a § 2255 motion following the denial of his petition of certiorari in December of 2021. Herrin did not attempt to do so at any time up until his release from supervision in January of 2025. A remedy remained available to Herrin that he chose not to pursue. Herrin does not appear to meet the first requirement for a writ of error coram nobis.

As to the second requirement, a petition for a writ of error coram nobis is not subject to a specific statute of limitations. *See United States v. Morgan*, 346 U.S. 502, 507 (1954).  "In lieu of a specific statute of limitations, courts have required coram nobis petitioners to provide valid or sound reasons explaining why they did not seek to attack their sentences or convictions earlier."  *Kwan*, 407 F. 3d at 1012; see also Riedl, 496 F. 3d at 1007.  The court in *Riedl* denied coram nobis after the defendant waited more than six years after conviction to file a petition. Riedl had failed to exercise due diligence. *Riedl*, 496 F. 3d at 1007.  In *United Staes v. Njai*, the Ninth Circuit affirmed denial of coram nobis relief where the defendant waited

**EXCERPTS OF RECORD - Page 005**

more than four years after conviction and offered no valid reason for the delay. *Njai*, 312 Fed. App'x. 953, 954 (9th Cir. 2009). Courts have also denied coram nobis relief where a petition was found to have been untimely and there were "no sound reasons" for the delay. *See Maghe v. United States*, 710 F. 2d 503, 503-04 (9th Cir. 1983); *Klein v. United States*, 880 F. 2d 250, 254 (10th Cir. 1989).

Herrin could have raised the claims presented in his petition at any time in the five years following the denial of his petition for writ of certiorari. Herrin states that his incarceration and the COVID-19 pandemic hampered his ability to file. Herrin provides no further support for this contention. The Court has previously found that, without more, general claims of COVID-19 lockdowns and delays do not serve to excuse untimely filings. *See Warner v. May, et al.*, Cause No. CV-24-126-M-DLC, Ord. at 14 (D. Mont. Oct. 20, 2025) (collecting cases). Even after his release from supervision, Herrin waited another year before filing in the Court. Herrin offers no valid reason for the delay. *See Njai*, 312 Fed. App'x. at 954.

The Court finds Herrin did not act with the requisite diligence and fails to meet the second requirement for coram nobis relief. The failure to meet any one of the four requirements for coram nobis relief proves fatal to a petition. *Matus-Leva*, 287 F. 3d at 760. The Court will not analyze whether the error Herrin alleges is fundamental or if adverse consequences exist from Herrin's conviction that are sufficient to satisfy the case or controversy requirement. Herrin's petition for a

**EXCERPTS OF RECORD - Page 006**

writ of error coram nobis is denied.

**IT IS ORDERED** that petitioner Herrin's petition for a writ of error coram nobis (Doc. 135) is DENIED.

DATED this 3rd day of February, 2026.

_____
Brian Morris, Chief District Judge
United States District Court

John Gregory Alexander Herrin

3402 W Babcock St.

Bozeman, MT 59718

(406)437-2291

BYTHERGIG@PROTON.ME

Petitioner Pro Se

RECEIVED

JAN 2 9 2026

Clerk, U S District Court
District Of Montana
Butte, Montana

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>John Gregory Alexander Herrin<br><br>Petitioner. | Case No. 6:16-cr-00015-SEH<br><br>PETITION FOR WRIT OF ERROR<br><br>CORAM NOBIS<br><br>(28 U.S.C. § 1651) |

John Gregory Alexander Herrin ("Petitioner"), Pro Se, respectfully petitions this Court for a writ of error coram nobis to correct a structural defect of the most fundamental character in the judgment of conviction entered in the above-captioned matter.

**I. Parties**

Petitioner is the defendant in the above-captioned criminal case and seeks post-judgment relief. Respondent United States of America was the plaintiff in the underlying criminal proceeding.

PAGE 1 / 6

EXCERPTS OF RECORD - Page 008

## II. Jurisdiction and Availability of Remedy

This Court has jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a). See United States v. Morgan, 346 U.S. 502 (1954); Hirabayashi v. United States, 828 F.2d 591 (9th Cir. 1987). Coram nobis relief is appropriate where a judgment rests on a structural defect not correctable through ordinary appellate review. No other remedy is available because Petitioner is no longer in custody, having fully served the sentence and completed supervision in January 2025. 28 U.S.C. § 2255 is therefore unavailable.

## III. Continuing Adverse Consequences

Petitioner continues to suffer significant collateral consequences from the felony conviction, including loss of civic rights, employment and licensing barriers, financial blacklisting, travel restrictions, and reputational harm, all of which continue to attach to the judgment of conviction.

## IV. Timeliness and Sound Reasons for Delay

Coram nobis relief is available where the petitioner has acted with reasonable diligence. United States v. Kwan, 407 F.3d 1005, 1013 (9th Cir. 2005). The structural defect identified herein became fixed and attributable only after exhaustion of direct appeal, when continued nonperformance occurred with full notice and without further avenue for correction. Custodial and pandemic-related constraints limited access to materials during incarceration and supervision. This petition is filed promptly after full release from supervision. The claim is record-based; the government suffers no prejudice.

EXCERPTS OF RECORD - Page 009

**V. Ground for Relief:** *Structural Defect Requiring Performance of Non-Delegable Judicial Duty*

The judgment suffers from an error of the most fundamental character: the displacement of the court's non-delegable duty to adjudicate threshold questions of evidentiary admissibility under Fed. R. Evid. 104(a).

Petitioner does not seek reweighing of evidence or factual reconsideration, but performance of the judicial function antecedent to lawful adjudication.

Coram nobis is available only to correct errors of the most fundamental character where no other remedy exists and justice so requires.

### A. The Defect
*(Non-Delegable Duty Displaced)*

This petition concerns a structural defect in the proceedings: the displacement of the court's non-delegable duty to adjudicate threshold evidentiary admissibility under Fed. R. Evid. 104(a), a function assigned exclusively to the court and not delegable to the jury. The record reflects that evidentiary predicates required to be determined by the court—authentication, relevance, and materiality—were not adjudicated as judicial questions, but were deferred downstream under "weight" or "jury question" formulations. This was not an error in evidentiary assessment, but a failure to perform a required judicial function antecedent to fact-finding, rendering the evidentiary record procedurally incomplete as a matter of law.

PAGE 3 / 6

**EXCERPTS OF RECORD - Page 010**

## B. Notice and Initial Post-Notice Conduct

### (Trial Court)

The defect was expressly raised by the defense during trial. From that point forward, the issue was no longer latent or speculative. Rather than engage the question presented, the court declined to adjudicate the admissibility predicates, avoided making findings, and proceeded by allowing the evidentiary record to reach the jury without judicial resolution of the threshold questions raised, thereby converting the omission from trial-stage error into post-notice institutional conduct. Continued Notice and Repetition (Appellate Court) The same defect was preserved and presented on appeal. The appellate court was placed on notice that the trial court had declined to perform a non-delegable adjudicative function and that the record contained no judicial determination of evidentiary admissibility after notice. The appellate court nevertheless proceeded without resolving the threshold issue identified, thereby repeating the same non-engagement after notice, rather than curing it.

## C. Foreseeable Constitutional Harm

### (Process, Not Outcome)

The foreseeable harm arising from this conduct was the loss of due process itself: adjudication of guilt on an evidentiary foundation never judicially validated as required. Once a court, with notice, declines to adjudicate required evidentiary predicates and proceeds nonetheless, the proceeding lacks the lawful foundation demanded by due process. The deprivation is structural and complete upon nonperformance of the antecedent judicial duty. Matter Complete on the Record The defect identified herein is institutional, arising from nonperformance

EXCERPTS OF RECORD - Page 011

Case 6:16-cr-00015-BMM   Document 135   Filed 01/29/26   Page 5 of 6

of a non-delegable duty after notice. No further factual development is required. The record itself establishes the sequence: duty, notice, non-engagement, repetition. No additional briefing, evidentiary proffer, or interpretive reconstruction can supply the adjudicative act that was required and declined.

### D. Demand for Reciprocal Application of Standards

Petitioner respectfully demands that this Court now perform the threshold admissibility analysis under Fed. R. Evid. 104(a) that was previously declined. Coherence requires that the judiciary hold its own proceedings to the rigor it demands of litigants. Petitioner asserts no specific evidentiary deficiencies; those questions answer themselves once the required judicial function is performed.

### E. Error "of the Most Fundamental Character"

This defect qualifies as an error "of the most fundamental character" because it denied the proceeding the constitutional prerequisite of a lawfully constituted evidentiary record. See Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir. 1987).

## VI. Prayer for Relief

WHEREFORE, Petitioner prays that this Court:

To perform the threshold evidentiary admissibility analysis required by Fed. R. Evid. 104(a);

Grant such relief as that analysis warrants, including vacatur of the judgment if the record cannot sustain conviction on a lawfully admitted evidentiary foundation;

PAGE 5 / 6

EXCERPTS OF RECORD - Page 012

Issue a writ of error coram nobis and grant such other relief as the Court deems just and proper.

Respectfully submitted this 29th day of January, 2026.

## Verification

I, John Gregory Alexander Herrin, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge and belief.

Executed on January 29, 2026.

/s/ John Gregory Alexander Herrin

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

**Scott S. Harris**
Clerk of the Court
(202) 479-3011

December 6, 2021

Clerk
United States Court of Appeals for the Ninth
Circuit
95 Seventh Street
San Francisco, CA  94103-1526

Re:   John Gregory Alexander Herrin
      v. United States
      No. 21-6142
      (Your No. 20-30130)

Dear Clerk:

The Court today entered the following order in the above-entitled case:

The petition for a writ of certiorari is denied.

Sincerely,

**Scott S. Harris**, Clerk

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 26 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-30130 |
| Plaintiff-Appellee, | |
| v. | D.C. No. 6:16-cr-00015-SEH-1 |
| | District of Montana, |
| | Helena |
| JOHN GREGORY ALEXANDER HERRIN, | |
| | ORDER |
| Defendant-Appellant. | |

Before:  GOULD, CLIFTON, and MILLER, Circuit Judges.

The panel has unanimously voted to deny the petition for rehearing.  Judge Gould and Judge Miller have voted to deny the petition for rehearing en banc, and Judge Clifton so recommends.

The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc.  Fed. R. App. P. 35.

The petitions for rehearing and rehearing en banc (Docket Entry No. 36) are DENIED.

**EXCERPTS OF RECORD - Page 015**

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 23 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>JOHN GREGORY ALEXANDER HERRIN,<br><br>Defendant-Appellant. | No.   20-30130<br><br>D.C. No.<br>6:16-cr-00015-SEH-1<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted June 11, 2021[*]
Seattle, Washington

Before:  GOULD, CLIFTON, and MILLER, Circuit Judges.

John Herrin appeals from his convictions for interstate transportation of stolen property and money laundering.  We have jurisdiction.  28 U.S.C. § 1291. We affirm.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

**EXCERPTS OF RECORD - Page 016**

Reviewing de novo, *see United States v. Ward*, 747 F.3d 1184, 1188 (9th Cir. 2014), we conclude that there was no constructive amendment of the indictment. *See United States v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002). "[T]he proof offered at trial matched the charges made in the indictment." *United States v. Hartz*, 458 F.3d 1011, 1021 (9th Cir. 2006). Prosecutors have broad discretion in bringing charges. *United States v. Batchelder*, 442 U.S. 114, 124 (1979). The Grand Jury Clause was not violated because Herrin was neither tried for nor convicted of bank theft. That he might have been charged with that crime is irrelevant. That there was evidence at trial that might have suggested his guilt of that crime is also irrelevant. The evidence admitted was relevant to the charges for which he was tried, and it did not alter those charges. *See Hartz*, 458 F.3d at 1021.

We review the denial of a motion in limine[1] and the decision to admit evidence at trial for an abuse of discretion. *United States v. Alvirez*, 831 F.3d 1115, 1120 (9th Cir. 2016). Whether evidence falls within the scope of Federal Rule of Evidence 404(b) is reviewed de novo. *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012). The evidence to which Herrin objected was relevant

---

[1] Herrin's motion was a motion in limine and not a motion to suppress because it sought to exclude evidence based on evidentiary grounds and not on grounds that the evidence was illegally obtained. *Compare Motion to Suppress*, BLACK'S LAW DICTIONARY (9th ed. 2009) ("A request that the court prohibit the introduction of illegally obtained evidence at a criminal trial."), *with Motion in Limine*, BLACK'S LAW DICTIONARY (9th ed. 2009) ("A pretrial request that certain inadmissible evidence not be referred to or offered at trial.").

**EXCERPTS OF RECORD - Page 017**

under Rule 401 and was not "other act" evidence subject to Rule 404(b)'s

constraints.  *See* Fed. R. Evid. 401 (evidence is relevant if "it has any tendency to

make a fact more or less probable than it would be without the evidence . . . and

the fact is of consequence in determining the action"); *United States v. Loftis*, 843

F.3d 1173, 1176 (9th Cir. 2016) ("Rule 404(b) applies solely to evidence of 'other'

acts, not to evidence of the very acts charged as crimes in the indictment.").  The

evidence was directly relevant to "element[s] of the crime charged," principally

that Herrin transported the money interstate and that Herrin had knowledge that the

money was stolen.  *See Loftis*, 843 F.3d at 1176 (citation omitted); 18 U.S.C.

§ 2314 (elements include proving that property was transported interstate and that

defendant had knowledge that the property was stolen).  The district court did not

abuse its discretion in admitting it.

Reviewing de novo, *United States v. Dixon*, 201 F.3d 1223, 1230 (9th Cir.

2000), we conclude that the district court did not err in rejecting Herrin's proposed

jury instruction and giving the instruction that it did.  Because the evidence was

relevant under Rule 401, the district court was not necessarily required to give a

limiting Rule 404(b) instruction, but it was not error to give it.  *See United States v.

Rrapi*, 175 F.3d 742, 748–50 (9th Cir. 1999).  A district court must consider a

defendant's proposed jury instruction that covers the defendant's theory of the

**EXCERPTS OF RECORD - Page 018**

case, *see United States v. Marguet-Pillado*, 648 F.3d 1001, 1006 (9th Cir. 2011),

but a defendant is "not entitled to an instruction in a particular form," *United States*

*v. Keyser*, 704 F.3d 631, 641–42 (9th Cir. 2012).  Herrin's proposed jury

instruction was offered to prevent the jury from considering other-act evidence in

deciding whether Herrin was guilty of the offenses charged in the indictment.

However, the instruction the district court gave, which was patterned after this

Circuit's model 404(b) jury instructions, served that purpose as well.  *See* Ninth

Cir. Model Crim. Jury Instrs. 2.10 & 4.3 (2018).  It was proper for the district court

to give the instruction it did.  *See United States v. Thomas*, 612 F.3d 1107, 1122

(9th Cir. 2010).

    **AFFIRMED.**

**EXCERPTS OF RECORD - Page 019**

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

District of Montana

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>JOHN GREGORY ALEXANDER HERRIN | ) ) ) ) ) ) ) ) ) ) |

**JUDGMENT IN A CRIMINAL CASE**

Case Number:  CR 16-15-H-SEH

USM Number:  17460-046

Michael Donahoe (Appointed)
Defendant's Attorney

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☑ was found guilty on count(s)   I, II, III, IV, V, VIII, XI, XII, XIII
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2314 | Interstate Transportation of Stolen Property | 1/13/2014 | I |
| 18 U.S.C. § 1957 | Money Laundering | 7/15/2014 | II, III, IV, V, VIII, XI, XII, XIII |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____   ☐ is   ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

6/15/2020
Date of Imposition of Judgment

_Sam E Haddon_
Signature of Judge

Sam E. Haddon, United States District Judge
Name and Title of Judge

6/16/2020
Date

**EXCERPTS OF RECORD - Page 020**

AO 245B (Rev. 09/19) Judgment in Criminal Case
　　　　　Sheet 2 — Imprisonment

DEFENDANT:   JOHN GREGORY ALEXANDER HERRIN

CASE NUMBER:   CR 16-15-H-SEH

Judgment — Page ___2___ of ___7___

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

30 months on Counts I, II, III, IV, V, VIII, XI, XII and XIII, all terms of confinement to run concurrently, one with the other.

☐ The court makes the following recommendations to the Bureau of Prisons:

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

　　☐ at _____ ☐ a.m. ☐ p.m.　on _____ .

　　☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

　　☐ before 2 p.m. on _____ .

　　☐ as notified by the United States Marshal.

　　☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

EXCERPTS OF RECORD - Page 021

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                       Sheet 3 — Supervised Release

Judgment—Page __3__ of __7__

DEFENDANT:   JOHN GREGORY ALEXANDER HERRIN
CASE NUMBER:   CR 16-15-H-SEH

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

3 years on Counts I, II, III, IV, V, VIII, XI, XII and XIII, all terms of supervision to run concurrently, one with the other.

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
         ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.   ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.   ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.   ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.   ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

**EXCERPTS OF RECORD - Page 022**

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                       Sheet 3A — Supervised Release

DEFENDANT:  JOHN GREGORY ALEXANDER HERRIN
CASE NUMBER:  CR 16-15-H-SEH

Judgment—Page  4  of  7

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.   You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.   After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.   You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.   You must answer truthfully the questions asked by your probation officer.
5.   You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.   You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.   You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.   You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.   If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10.  You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11.  You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12.  If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13.  You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature  _____     Date _____

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3D — Supervised Release

Judgment—Page   5   of   7

DEFENDANT:  JOHN GREGORY ALEXANDER HERRIN
CASE NUMBER:  CR 16-15-H-SEH

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant must provide United States Probation with any requested financial information and must not incur new lines of credit without prior approval of the probation office. The defendant must notify the probation officer of any material changes in his economic circumstances that might affect his ability to pay court-ordered financial obligations.

2. The defendant must apply all monies received from income tax refunds, lottery winnings, judgments, and/or any other financial gains to outstanding court-ordered financial obligations.

3. The defendant must participate in a mental health program inclusive of gambling treatment that is approved by United States Probation. The defendant must remain in the program until he is released by the probation office in consultation with the treatment provider. The defendant must pay part or all of the costs of this treatment as directed by United States Probation.

4. The defendant must not engage in any form of gambling (including, but not limited to, lotteries, online wagering, sports betting) and must not enter any casino or other establishment where gambling is a primary purpose (e.g., horse racetracks, off-track betting establishments).

5. The defendant must submit his person, residence, place of employment, vehicles, and papers, to a search, with or without a warrant by any probation officer based on reasonable suspicion of contraband or evidence in violation of a condition of release. Failure to submit to search may be grounds for revocation. The defendant must warn any other occupants that the premises may be subject to searches under the terms of this condition. The defendant must allow seizure of suspected contraband for further examination.

6. The defendant must participate in and successfully complete a program of substance abuse treatment as approved by United States Probation. The defendant must remain in the program until he is released by the probation office in consultation with the treatment provider. The defendant must pay part or all of the costs of this treatment as directed by United States Probation.

7. The defendant must abstain from the consumption of alcohol and is prohibited from entering establishments where alcohol is a primary item of sale.

8. The defendant must participate in substance abuse testing to include not more than 365 urinalysis tests, not more than 365 breathalyzer tests, and not more than 36 sweat patch applications annually during the period of supervision. The defendant must pay part or all of the costs of testing as directed by United States Probation.

9. The defendant must not possess, ingest or inhale any psychoactive substances that are not manufactured for human consumption for the purpose of altering his mental or physical state. Psychoactive substances include, but are not limited to, synthetic marijuana, kratom and other synthetic stimulants such as bath salts or spice.

10. The defendant must not purchase, possess, use, distribute or administer marijuana, including marijuana that is used for recreational or medicinal purposes under state law.

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 5 — Criminal Monetary Penalties

Judgment — Page ___6___ of ___7___

DEFENDANT: JOHN GREGORY ALEXANDER HERRIN
CASE NUMBER: CR 16-15-H-SEH

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 900.00 | $ | $ N/A | $ N/A | $ N/A |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| **TOTALS** | $              0.00 | $              0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the ☐ fine ☐ restitution.

    ☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

EXCERPTS OF RECORD - Page 025

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page ___7___ of ___7___

DEFENDANT:  JOHN GREGORY ALEXANDER HERRIN
CASE NUMBER:  CR 16-15-H-SEH

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☐ Lump sum payment of $ _____ due immediately, balance due

     ☐ not later than _____ , or
     ☐ in accordance with ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C,   ☐ D, or   ☐ F below); or

**C** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☑ Special instructions regarding the payment of criminal monetary penalties:
Special assessment shall be immediately due and payable. While incarcerated, criminal monetary penalty payments are due during imprisonment at the rate of not less than $25 per quarter, and payment shall be through the Bureau of Prisons' Inmate Financial Responsibility Program. Criminal monetary payments shall be made to the Clerk, United States District Court, P.O. Box 8537, Missoula, MT 59807 **Assessment John Gregory Alexander Herrin **.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate |
|---|---|---|---|
| | | | |

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

the Court and the Clerk of Court at the bench.)

THE COURT:  I have been asked the question of whether the clerk may put up the instructions for you to read along with the court as the court reads the instructions to you.  And I have agreed that that may, of course, be done.

And for your additional information, when you go to the jury room, a complete copy set of all the instructions, whether given preliminarily, during the course of the trial, or in this group that are going to be read to you now, will be available to you for your further review and deliberations during your deliberations in the jury room.

So, now for the final instructions, ladies and gentlemen: Members of the jury, now that you've heard all the evidence, it is my duty to instruct you further on the law that applies to this case.

A copy set -- or a copy of these instructions will be available in the jury room for you to consider during deliberations.

It is your duty to weigh and to evaluate all of the evidence received in the case.  And in that process to decide the facts.  It is also your duty to apply the law as I give it to you to the facts as you find them, whether you agree with the law or not.

You must decide the case solely on the evidence and the law.

Do not allow personal likes or dislikes, sympathy, prejudice, fear, or public opinion to influence you in any way.

You should not be influenced by any person's race, color, religion, national ancestry, or gender, sexual orientation, professional -- profession, occupation, celebrity, economic circumstances or position in life or in the community.

You will recall that you took an oath promising to do so at the beginning of the case.

You must follow these instructions and not single out some and ignore others.  They are all important.

The order in which the instructions are given is of no significance.  All of the instructions are equally important. And please do not read into these instructions or anything that I may have said or done, any suggestion as to what verdict you should return.  That is a matter entirely up to you.

You are reminded that in reaching your verdict, you may consider only the testimony and exhibits received in evidence.

The following are not evidence and you may not consider them in deciding what the facts are:

One:  Questions, statements, objections, and arguments by the lawyers are not evidence.  The lawyers are not witnesses. Although you may consider a lawyer's questions to understand the answers of a witness, the lawyer's questions are not evidence.

Similarly, what the lawyers may have said in their opening

statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.

If the facts as you remember them differ from the way the lawyers state them, your memory of them controls.

And two:  Any testimony that I have excluded, stricken, or instructed you to disregard is not evidence.

Three:  Anything that you may have seen or heard when the court was not in session, is not evidence.

You are to decide the case solely on the evidence received at the trial.

Now, you have heard testimony that the defendant made a statement.  And it is for you to decide, one, whether the defendant made the statement; and two, if so, how much weight to give it -- give to it.

In making those decisions, you should consider all of the evidence about the statement, including the circumstances under which the defendant may have made it.

The defendant is charged in Count One of the indictment with the transportation of stolen property in interstate commerce, in violation of Section 2314 of Title 18 of the United States Code.

In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant transported stolen money between one state and another;

Second, at the time the money crossed the state border, the defendant knew it was stolen;

Third, the defendant intended to deprive the ownership of the money temporarily or permanently; and,

Fourth, the money was of a value of $5,000 or more.

The government need not prove who stole the money.

The defendant is charged in Counts Two through Thirteen of the indictment with money laundering, in violation of Section 1957 of Title 18 of the United States Code.

In order for the defendant to be found guilty of any one of those charges, the government must prove for each charge each of the following elements beyond a reasonable doubt:

First, the defendant knowingly engaged or attempted to engage in a monetary transaction;

Second, the defendant knew the transaction involved criminally derived property;

Third, the property had a value greater than $10,000;

Fourth, the property was, in fact, derived from the interstate transportation of property -- of stolen property as alleged in Count One of the indictment; and,

Fifth, that the transaction occurred in the United States.

The term "monetary transaction" means the deposit, withdrawal, transfer, or exchange in or affecting interstate

commerce of funds or a monetary instrument by, through, or to a financial institution.

The term "financial institution" means an insured bank and a broker or dealer registered with the Securities and Exchange Commission.

The term "criminally derived property," means any property consisting or derived from the proceeds of a criminal offense. The government must prove that the defendant knew that the property involved in the monetary transaction constituted or was derived from proceeds obtained by some criminal offense.

The government does not have to prove that the defendant knew the precise nature of that criminal offense, or knew the property involved in the transaction represented the proceeds of interstate transportation of stolen property.

Although the government must prove that, of the property at issue -- must prove that the value of the property at issue was more than $10,000 was criminally derived, the government does not have to prove that all of the property at issue was criminally derived.

The defendant is charged in Count Fourteen of the indictment with attempted witness tampering, in violation of Section 1512(b)(3) of Title 18 of the United States Code.

In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant knowingly corruptly persuaded Julia Nguyen, or attempted to do so;

Second, the defendant acted with the intent to hinder, delay, or prevent Julia Nguyen from communicating to law enforcement authorities information relating to the commission or possible commission of an offense;

Third, there was a reasonable likelihood that at least one of the communications targeted by the defendant would have been made to a federal officer; and,

Fourth, that the information that would have been communicated related to commission or possible commission of a federal offense.

A person acts corruptly if he or she acts with the purpose of wrongfully impeding the due administration of justice.

An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident.

The government is not required to prove that the defendant knew that his acts or omissions were unlawful.

You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant -- whether the defendant acted knowingly.

The indictment charges that the offenses were committed on or about certain dates. The proof need not establish with certainty the exact date of an alleged offense. It is sufficient if the evidence establishes beyond a reasonable

doubt that an offense was committed on a date reasonably near the date alleged.

The defendant has a constitutional right not to testify. And no presumption of guilt may be raised, and no inference of any kind may be drawn from the fact that the defendant did not testify.

You are here only to determine whether the defendant is guilty or not guilty of the charges in the indictment.

The defendant is not on trial for any conduct or offense not charged in the indictment.

Evidence has been presented concerning matters and acts of which the defendant is not charged in the indictment.

Evidence of such matters and acts may be considered only for its bearing, if any, on questions relevant to proof of the defendant's intent, motive, opportunity, preparation, plan, and knowledge with which the defendant acted, and for no other purpose.

The punishment provided by law for any crime charged is for the court to decide. You may not consider punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced that the defendant is guilty.

It is not required that the government prove guilt beyond all possible doubt.

A reasonable doubt is a doubt based upon reason and common sense, and is not based purely on speculation.

It may arise from a careful and impartial consideration of all the evidence, or from lack of evidence.

If, after a careful and impartial consideration of all the evidence, you are not convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant not guilty.

On the other hand, if, after a careful and impartial consideration of all the evidence, you are convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant guilty.

When you begin your deliberations, you should elect -- you should elect one member of the jury as your foreperson, who will preside over the deliberations and speak for you here in court. You will then discuss the case with your fellow jurors to reach agreement if you can do so.

Your verdict, whether guilty or not guilty, must be unanimous. Each of you must decide the case for yourself, but should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict. But, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Now, a verdict form has been prepared for you and will be given to you to take to the jury room. After you have reached unanimous agreement on a verdict, your foreperson will fill in the form, sign it and date it, and advise the bailiff that you are ready to return to the courtroom.

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by any one or more of you.

No member of the jury should ever attempt to communicate with me except by a signed writing, and I will respond to the jury concerning the case only in writing or here in open court.

If you send out a question, I will consult with the lawyers before answering it. It may take some time. And you may continue your deliberations while waiting for the answer to any question.

Remember that you are not to tell anyone, including me, how the jury stands numerically or otherwise on any question submitted to you, including the question of the guilt of the defendant, until you have reached a unanimous verdict or have been discharged.

Now, ladies and gentlemen, as I said earlier, those instructions just read to you now are to be taken together with all of the instructions read earlier during the course of the trial and to be considered collectively by you in carrying out your deliberations. And as I said, a complete copy set of all the instructions will be made available for your review during your deliberation process.

You may commence argument for the government, Mr. Racicot.

MR. RACICOT: Thank you, Your Honor.

May it please the court, counsel, ladies and gentlemen of the jury, as I told you at the outset of this case, during opening statement, it's about money. It's about Mr. Herrin's spending of money, specifically, from about January of 2014 through the summer and fall of 2014.

Now, this is a strange case in some ways, because there's some unknowns. A lot of unknowns, actually. We don't know precisely how those Kalispell load bags were taken. We don't know exactly when or where, Missoula or Helena. Seems most likely it was Missoula, but we don't know for sure. We don't know precisely who. Maybe it was Mr. Herrin. Maybe it was someone else.

But one of the most important things you need to remember is that it's not your job to solve that mystery. It's your job as the Judge just instructed you, to focus on the charges in the indictment and the elements of those charges. And to use

your reason and your common sense to evaluate all of the evidence to reach a verdict on those charges.

So there's things that you don't know, but there's a lot of things that you do know. You know for sure that money is gone. We know which bags they were. Those three Kalispell ATM load bags. We know how much money was in them, $390,000. We know the denominations of the cash, $50 bills and $20 bills.

In fact, when you combine those three bags together, the total number of $20 bills that went missing that day is 13,500 $20 bills. Another twenty-four hundred $50 bills.

You also know for sure that that OTR fed truck was unoccupied in Missoula at least three times on November 20th, 2013, for at least 20 minutes on each of those occasions. And you know that Mr. Herrin knew that, because he worked that route with some frequency.

You know for sure that a person could use a broom handle or some other long dowel to gain access to that truck if it was locked and unoccupied.

And you know Mr. Herrin knew that, because he worked on that truck, and because he'd been involved in getting into that truck during the purposes of trying to fulfill his duties both with Mr. McAlpin and with Mr. Stacey. And both occasions before November 20th of 2013.

And we know those Kalispell load bags were in locker 13, that's where Curt McAlpin always put them. We know those

lockers could be accessed without a key, at least one locker, just by punching in the code.  And we know Mr. Herrin knew that, because he worked on that truck.  And you can infer that he knew those Kalispell bags would not be missed for a while.  That truck has to make runs all over Missoula, up Highway 93 to Kalispell before anybody's going to get into locker 13 to try to deliver those three bags.

So what might have happened to the money?  Maybe Mr. Herrin followed the truck to Missoula that day.  We know Curt McAlpin and Clay Olson were working.  But maybe he followed it over there.  Maybe he wore his uniform in order to blend in.  Waited for McAlpin and Olson to leave the truck, used a broom handle to open the truck, opened locker 13, took the bags, and drove back to Helena several hours before anyone at Garda realized the money was even missing.

And then the fingers were pointed to all the employees who were working that day, and Mr. Herrin wasn't.  You can infer that based on the evidence here.  There's enough evidence to draw that conclusion.  But you don't need to answer that question.

You only need to address the counts in the indictment and the elements for those counts.  So let's start with Count One, interstate transportation of stolen money.  And you have the elements instruction; it will be with you in the jury room.

But essentially they are that Mr. Herrin transported

stolen money between one state and another, from Montana to Las Vegas -- to Nevada.

Second, that the money at the time it crossed the state border, Mr. Herrin knew that the money was stolen.

Third, he intended to deprive the owner of the money of ownership of that money, either temporarily or permanently. Here it was permanently.

And fourth, that the value of the money was $5,000 or more.

And importantly, as you'll see in that instruction, and as you did moments ago, the government does not need to prove who stole the money.

So what evidence supports a finding of guilt on Count One? Well, let's start with Mr. Herrin's spending before November 20th of 2013. It's routine. It's commensurate with a guy his age, working the job he's working, has some expenditures, paying his bills.

He's got a car payment that he takes on in October of 2013, about a month before the money goes missing, that's going to be $498 a month. The credit card balances are creeping up, so there's maybe some signs of financial stress, but otherwise, pretty routine.

And then in January of 2014, six weeks after the $390,000 goes missing, Mr. Herrin starts spending like crazy. $285,933 deposited into his checking account in January of 2014. That's

Government's Exhibit 15, page 60.

The first deposit -- you've seen that deposit slip a lot, Government's 13, January 7th, 2014, a hundred and sixty thousand eight hundred and seventy dollars.  And the balance before that deposit, $945.65.

And then spending just from January 7th to January 27th, 20 days, a hundred and fifty-seven thousand five hundred and nineteen dollars are spent.

Credit card charges, online charges, trips, loan payments, day trading, transfers to the Ameritrade account.  That's government's Exhibit 15, pages 61 and 62.

The second deposit, January 30th, 2014, a hundred and twenty thousand dollars.  You've seen that a lot.  That's Government's Exhibit 14.  All cash.  All $20 bills, loose in a shoe box.  Brought into the bank in a shoe box.  Not banded, just loose.  Stuffed in there was how Kelly O'Neil described it.

And then there's more spending, including a transfer to savings in the amount of $60,000.  That's Government Exhibit 15, page 63.  By March 10th, 2014, the Wells Fargo bank accounts have a zero balance.  Government's Exhibit 15, page 69, and Government's Exhibit 16, page 12, show you those zero balances.

So over $285,000 through those accounts in about two months.

And then there's other bank accounts. The U.S. Bank account is Government's Exhibit 20. Opened in June of 2014 with another $36,000 in cash.

So that's new cash. All the money that's been through the Wells Fargo accounts is gone.

Two months later, August of 2014, that account has a balance of $60.85. That's page 11 of Government's 20.

So by the summer and fall of 2014, the money's gone. The bank accounts are empty. Mr. Herrin has credit card debt of $14,211 in September. That's Government's Exhibit 19, page 25. His car gets repossessed in February, that's Government's Exhibit 35. That's a lot of evidence as it relates to Count One that Mr. Herrin knew the money was stolen when it was transported across state lines.

How about some more evidence? Focus on just the cash, 37,370 dollar bills in that first January 7th deposit are cash. Mostly 20s; some smaller bills Kelly O'Neil said, but mostly 20s. The deposit on January 30th, all cash, all 20s. Cash at U.S. Bank in June of 36,000. And then the cash buy-ins in Vegas, Government's Exhibit 30. Twenty thousand dollars on January 3rd, a hundred dollars on January 4th, 29 more thousand dollars on January 4th. $56,850 on January 5th. And then, on the second trip, $50,000 on January 24th. Another hundred dollars on January 24th. Cash for the watch at Aria, 22,600 for the watch. That's Government's Exhibit 24, the tax

records, page 17.  Cash to Julia Nguyen, 2,000 for her company in response to the Craigslist ad, 20,000 in cash for shopping, separate and apart from the credit card charges in Government's Exhibit 18.

Cash to the Watson Law Office, $18,500.  That's Government's Exhibit 36.  And think about the timing there, that's March 10th, 2014.  That's the same day that the Wells Fargo bank accounts have a zero balance.  There's about $7,000 in the Wells Fargo accounts that are part of that final withdrawal that zeros those accounts out on March 10th.

And then, the same day, $18,500 in cash is delivered to the Watson Law Office.  And let's be clear about that. Absolutely nothing wrong with going to see a lawyer.  We don't know anything about that relationship.  Nor should we.  But there's nothing wrong with that.

The purpose of that evidence is to remind you of all of the different cash transactions that are involved here.

And then, ten days later a good portion of that money is returned to Mr. Herrin, that's page 9 of Government's 36.  Two different checks, $12,049 total, which Mr. Herrin immediately converts to cash.  More cash.

So how about the gambling evidence?  Well, he won on the first trip, Government's Exhibit 30, page 2, shows he won a hundred and three thousand five hundred dollars at Aria on the first trip in January.  But he started with a cash buy-in of

20,000. And then he takes 37,000 cash out along the way. And you can ask yourselves: Where does that initial $20,000 come from? It's not in the bank accounts. And it's the first thing he does. It's five o'clock in the morning on January 3rd at the Aria Casino, $20,000 cash buy-in.

The second trip is even worse. Loses $49,650 at Aria. That's government's Exhibit 30, page 6. All this money did not come from gambling. Did not come from winnings.

What about day trading? Lost $70,000 in 2014. That's government's Exhibit 33, page 1. And made $18.96 in 2015. Government's Exhibit 34, page 1.

This money did not come from day trading. Additional evidence as it relates to Count One. Mr. Herrin's statements, if you focus on his statements. Comes into the bank for the second deposit January 30th and tells Kelly O'Neil: "I had another big within in Vegas." But we know that's not true; he lost almost $50,000 on that second trip. He told the bankers the casino discouraged him from getting that money in a check.

That's unlikely based on Sherry Peterson's testimony. That they'll pay out essentially however you want. But if they do pay in cash, it's hundreds, and it's strapped. Mr. Herrin's cash on both January 7th and 30th was not in hundreds, and it was not strapped.

He told Kelly O'Neil, very importantly, that he started with $500 on that first trip when he was gambling. "I went

down with $500, and I won big."  And we know that's not true, because the first buy-in is $20,000 in cash, and on the second trip, the buy-in is $50,000 on deposit front money with the casino in cash.

Told Kelly O'Neil he was making money day trading, and we know that's not true.  And why do those statements matter?  Because he has to explain where the money came from.  It magically appears six weeks after the Garda theft, and you can infer from those statements, those explanations, that that's knowledge that he knows that it's stolen, and he has to come up with some explanation for it.

There's more false statements by Mr. Herrin.  He told Dennis Skramstad that he'd met Julia Nguyen's family and was going to have dinner with them.  He told Jeff Stacey that the money was from gambling winnings.  He told Jeff Stacey and others he was making money day trading.  He told Jeff Stacey that Julia Nguyen did not go to France with him.

There's essentially what amounts to false statements on Mr. Herrin's taxes.  And those haven't been audit ed.  But he claims $241,000 in winnings, that Government's Exhibit 24, pages 1 and 7.  And we know that he only won a hundred  and three thousand five hundred on the first trip.  So it's not 241,000 in winnings for the year 2014.  He claims zero in gambling losses.  Exhibit 24, page 8.  But we know he lost $49,650 on the second trip.  So that's the problem with

starting down this road of trying to explain all the money. You explain it as gambling winnings, and you're digging yourself a hole, because then come tax time, you have to try and explain on your taxes why you shouldn't owe the IRS so much money. Why won't a person claim those losses on their taxes and reduce their tax liability?

You have at least $49,650 of losses. Why wouldn't you put that on your tax documents? Because if you do, you can't explain why you have all that money in the bank. If you won some and you lost some, you don't have just winnings. And you can't explain that sum of income.

He needs to have all wins and no losses to explain that windfall.

So he ends up in 2015 owing for tax year 2014, $31,612 to the IRS.

More evidence that he knows the money is stolen when he transports it out of state.

His demeanor in the bank. He tries to hide from the Garda employees when they show up. He's flamboyant before, confident, leaning over the rail. And then nervous when they get there. Moves to the online terminal. Why? Because they might see a hundred and twenty thousand dollars in 20s running through a counting machine. They remember what happened when that money went missing; they remember people losing their jobs. He doesn't want to be seen with that much money.

You can infer that that's knowledge of guilt on Count One.

His demeanor with Jeff Stacey.  Mr. Stacey's interviewed by law enforcement.  Comes back and says to Mr. Herrin:  "Hey, what's going on, John?  Why am I getting interviewed by law enforcement about this case?  I'm starting to wonder if something's up.  If you did have some involvement with this.  And what happened?  Mr. Herrin got visibly upset.  Mr. Stacey said he was on the verge of breaking down.  It's because the walls are closing in; the evidence is piling up.  And think again about the timing.  The routine spending in all of 2013 for a whole year, you have all those records.  They'll be with you in the jury room.  Then crazy spending from January to March of 2014.  No money by the fall of 2014.  The car's repossessed in February of '15, and a huge tax bill due in April.

All of that evidence proves the elements of Count One.  It proves that the money he took to Las Vegas was stolen; it proves that he knew it.  We know that it's more than $5,000.  And obviously, it was intended to deprive the owner permanently of that money.

So let's talk about Counts Two through Thirteen.  You have that elements instruction, as well.  It's that the defendant engaged in -- knowingly engaged in financial transactions, monetary transactions.

Second, he knew those transactions involved criminally

derived property. Here, property that was transported in interstate commerce across state lines.

Third, the property had a value of greater than $10,000, the amount of property involved in the transaction.

Fourth, the money was, in fact, derived from interstate transportation of stolen money as charged in Count One.

And fifth, that it occurred in the United States.

And Mr. Donahoe said it well in opening: All roads lead to Rome. If the evidence is there on Count One, all these transactions sort of speak for themselves. But I've put together just a quick demonstrative exhibit that I'm going to have you look at as we walk through those counts. This will not be with you in the jury room. But I just wanted to give those of you who wanted an opportunity to link up counts with exhibits, an opportunity to do that.

So you see Count Two is the January 7th deposit at Wells Fargo, check and cash. And that's Exhibit 13 and Exhibit 15, page 61.

Count Three: January 9th, the Ameritrade opening, $26,000 to Ameritrade. You can see the exhibit numbers and page numbers 15, page 61, and Exhibit 32, page 2.

Count Four, January 21st, the $30,000 cash withdrawal.

Count Five, the next day, another $30,000 cash withdrawal.

Count Six, the hundred and twenty thousand dollar deposit we've talked so much about.

Count Seven, the $60,000 transfer into savings on January 31st.

Count Eight, $34,000 to Ameritrade on February 4th.

Count Nine, moving money back now from savings into checking. The 60,000 went into savings. Now it's coming back. Fifteen thousand on March 4th; it's Count Nine; 25,000 on March 6th, that's Count Ten; Count Eleven, another $23,000 to Ameritrade; Count Twelve, $25,000 Ameritrade from U.S. Bank; Count Thirteen, July 15th of 2014, $13,000 from Ameritrade to Rocky Mountain Credit Union.

And we can leave that up as we talk about Exhibit 14. But all of those charges are reflected in those exhibit numbers, and that will be available for you to review in the jury room.

Count Fourteen is the attempted witness tampering, the last count in the indictment. And those elements are, essentially: First, that Mr. Herrin knowingly corruptly persuaded Julia Nguyen, or attempted to do so. Second, he acted with the intent to hinder, delay, or prevent Julia from communicating to law enforcement information relating to the commission or possible commission of a crime.

Third, there was a reasonable likelihood at least one of the communications targeted by Mr. Herrin would be made to a federal officer; and fourth, the information would have been communicated related to the commission or possible commission of a federal offense.

And the instruction contains the definition, you act corruptly. You corruptly persuade. If you act for the purpose of wrongfully impeding the due administration of justice.

And the evidence is Julia's testimony about the text that she received. Sometime within days or weeks after the France trip, she gets a text from Mr. Herrin that essentially says: "If the FBI asks about me, don't say anything, or say you don't know me." That's an intent to hinder Julia's conversations with federal law enforcement officers, he specifically mentions the FBI, about the commission of federal crimes. And why is he telling her not to talk to the FBI if he doesn't have anything to hide? If the money's from gambling and day trading, why does Julia need to keep quiet about it? Because she was in Las Vegas; she was there. She probably knows too much about what happened in Las Vegas.

Ladies and gentlemen, all of the evidence in this case proves the elements of the charges in the indictment. Proves each element of each count beyond a reasonable doubt.

And it's your obligation when you get back in that jury room and review that evidence to return a verdict of guilty on all 14 counts in the indictment.

Thank you.

THE COURT: All right.

Mr. Donahoe, you may close for the defendant.

MR. DONAHOE: Thank you.

Good morning, ladies and gentlemen.  You know, I just want to take a minute and thank you for being here.  We really appreciate -- I think I -- in behalf of the government, too, you taking the time and being attentive.  I know it's an imposition on your day-to-day lives, but we really do appreciate it.

So, I wish I had something real profound to say here.  But I don't.

This argument by the government is kind of like the thing -- you know, we might be talking to somebody, and just sort of fooling around and saying:  "Don't think of elephant."  And it's impossible, you know, because everybody's thinking about an elephant right now.

So, the government wants you to follow the law and so do I, and the court has so instructed you, that as to Count One, you don't need to find who stole the money.  But as a matter of fact, they want you to find that Mr. Herrin stole the money.

And that inference arises from a collection of exhibits and a narrative that the government has assembled that primarily rests on financial activities and records.

I'm not going to belabor the point, but there's no physical evidence.  This isn't, you know, us looking at the video of the person in the bank taking the money.

This isn't the situation where a person was apprehended close in time and gave a confession.  All those more typical

things that you might see on television, or, you know, read in the media about other type cases don't apply here. What we have going on is: Is you need to believe as a matter of fact that Mr. Herrin took the money, because he had bank accounts, because he gambled, because he made certain statements, which may or may not have been true, half-truths, full truths, all to different people that he talked to at different times.

And you're supposed to assemble that neatly in charts and graphs and exhibits and just reach the conclusion that he took the money out of the truck.

Now, we have an extraordinary concession in closing argument by the government here that we don't know where on the route it may have been taken. Probably Missoula, it's stated to you. Or maybe Mr. Herrin followed the truck over and at some point when it was unattended, went in with a stick, took the bags, and boom, and all of that fits neatly together.

But you know what? It doesn't. Let's talk about Las Vegas a little bit. Mr. Racicot tells you: "We know he was at the Aria at five o'clock in the morning, because he had a cash buy-in of $20,000."

What time did he get there? Where's the evidence in this record, there's 16 witnesses. Who testified that when he arrived? Who testified to where he went? Did he go right to the Aria? That was his first stop? I don't remember any evidence there. I don't have notes on that. I don't know.

Maybe you do.

So, if we don't know that, is it conceivable that he got money from elsewhere? Sure it is. How do we know, assuming without conceding that he went to Las Vegas, how much money he had in his pocket when he got there?

How much was in the car? Let's assume he took all the money, without conceding it.

Did he take all of it? Did he take $4,999? Did he take 500? Ten thousand? I guess it's a reasonable inference maybe he took 20,000. But because of a cash deposit to a casino, when you don't know when he arrived or where he went, that's a concession from the FBI agent on cross-examination. Don't know.

How many casinos in Las Vegas? Don't know. Are they all owned by MGM Grand? No. Know that for sure. Do other casinos have independent records? Yeah, they do. Do we have those records? Or did anybody look for them? I won't say "do we have them?" Did anybody look for them? Nope. Sure didn't. Used the tax records, apparently. That's how we got to the Aria records.

So let's talk about the tax records. The tax records show wins. How do we know that those numbers are wrong? The government wants to conduct this audit in this court of that tax return.

Did they have the resources to do that on a prior

occasion?  Sure, they did.  But did not.

So, here we are challenging, well, this doesn't all add up.  Who prepared that return?  Don't know.  Is there any symmetry between the tax return, the losses declared, and the money deposited?  It's not perfect.  But it works.  It's reasonably close.

So, is it fuzzy math?  Sloppy accounting?  Is that what we're here to figure out now?  No.  We're here to speculate that Mr. Herrin followed the truck to Missoula and stole the money.

And that's why all roads do lead to Rome.  Because if you don't believe that as a matter of fact, you can't convict on any of the first 13 counts.

There's reasonable doubt there.  The first sentence of that instruction, reasonable doubt, says:  "Firmly convinced.  Firmly convinced."

Is there sufficient evidence in this record to firmly convince you that as a matter of fact, Mr. Herrin took that money?  No, there's not.

Pretty good guess?  Yeah, maybe.  If it was taken in Missoula, was Mr. Ailer involved?  Was Mr. McAlpin involved?

Mr. Racicot elicited from the detective, my witness yesterday on the stand, the texts in the phone records that talked about "don't spend too much money at Christmas," which I mentioned in my opening.

And granted, the witness did testify it was her opinion that that was exculpatory of Mr. Ailer.  It pointed to his innocence or his noninvolvement.

Respectfully, I disagree with that conclusion.  You could take that statement, and I present it to you as a matter of argument, and you could interpret it in such a manner as a caution.  "Don't spend too much money.  Lay low.  We need to wait."

Is that a reason for reasonable doubt?  Yes.  That's a reason for reasonable doubt.

Did the Garda security investigation solve what the government characterizes in its closing argument as "the mystery" of who took the money?  Nope.  They didn't solve it, either.

They were pretty convinced of one set of facts and then jumped to another set of facts.  And frankly, that whole investigation was quite unreliable.  From this evidence, you know that a lot of procedures and policies were just completely disregarded on a pretty consistent basis in that company.

And that somehow should be in the back of your mind.

Sherry Peterson said that the money is paid out in certain denominations and strapped, unless the customer requests otherwise.

There was a qualification there.  So, it wasn't categorical.  You just don't get it the way -- the money back

the way that they want to give it to you.  The customer carries the day.

And her testimony was not clear as to what happens at the tables when you want to buy chips in and out.  Customer has a right of refusal.  Refusal to what?  Identify themselves if it's a certain amount.  If it's 3,000, if it's 5,000.  None of that was entirely clear.

At the end of the day, as a matter of fact, the government has not proved that Mr. Herrin took the money.  And if he didn't take the money, he's got to be not guilty.

Insofar as the last count is concerned, what investigation were we talking about?

Would Julia Nguyen be motivated to want to assist the government?  Probably.  The evidence showed you with regard to that count that she was taking money, fairly significant amounts of money, apparently, from Mr. Herrin.  Would she want to ingratiate herself with the government and be very cooperative?  Yes.  Do we have the text?  We do not.

So for all those reasons, ladies and gentlemen, please give it a fair look and reach the reasonable verdict of not guilty.

Thank you.

THE COURT:  Mr. Racicot, you may close for the government.

MR. RACICOT:  Thank you, Your Honor.

MICHAEL DONAHOE
Deputy Federal Defender
Federal Defenders of Montana
Helena Branch Office
50 West 14th Street, Suite 1
Helena, Montana 59601
Phone: (406) 449-8381
Fax: (406) 449-5651
michael_donahoe@fd.org
            Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN GREGORY ALEXANDER HERRIN,<br><br>Defendant. | CR 16-15-H-SEH<br><br>**DEFENDANT HERRIN'S OPPOSED, RENEWED MOTION FOR ACQUITTAL UNDER RULE 29(c) Fed. R. Crim. P. AND OPPOSED, ALTERNATIVE MOTION FOR NEW TRIAL UNDER RULES 29(d) and 33 Fed. R. Crim. P.** |

## MOTION

COMES NOW Defendant John Gregory Alexander Herrin (Mr. Herrin), by and through his counsel of record, Michael Donahoe and the Federal Defenders of Montana, and seeks to renew his previous motion for acquittal of all charges contained in the indictment. Mr. Herrin makes this motion under Rule 29(c) Fed. R.

1

Crim. P..  Also Mr. Herrin requests in the alternative that the Court grant him a new trial under Rules 29(d) and 33 Fed. R. Crim. P. in the interest of justice.

## GROUNDS

The grounds for these motions are that Mr. Herrin was subjected to a trial wherein he was tried, without grand jury indictment, for a violation of federal law, to wit: theft of bank funds in the amount of $390,000.00 from a GardaWorld armored truck on November 20, 2013, at or near Helena, Montana.  Moreover, the grounds for this renewed motion for acquittal are also developed in Mr. Herrin's previous written motion for acquittal at ECF Nos. 75 and 76 and the oral arguments for acquittal made in Mr. Herrin's behalf at the close of the government's case during trial and then again at the close of all of the evidence.

As for the alternative motion for a new trial under Rules 29(d) and 33, Mr. Herrin requests same in the interests of justice in the event the Court denies acquittal under Rule 29 on the grounds that the Court committed error in both admitting evidence that cast Mr. Herrin as the thief of the armored truck money and/or by failing to instruct the jury how such evidence could be used in determining Mr. Herrin's guilt or innocence; and more specifically by the Court's failure to give the defense jury instruction set forth in Mr. Herrin's proposed supplemental jury instruction, which can be found at ECF No. 27.

///

2

## CONTACT WITH OPPOSING COUNSEL

The undersigned has previewed these motions to Assistant United States Attorneys, Timothy J. Racicot and Michael Kakuk, and the government objects to these motions.

## CONCLUSION

WHEREFORE, based on these motions and the brief that supports them (ECF No. 99), Mr. Herrin should be acquitted on all counts pursuant to Rules 29(c), or granted a new trial under Rules 29(d) and 33 Fed. R. Crim. P.

RESPECTFULLY SUBMITTED this 30th day of January, 2020.

/s/ Michael Donahoe
MICHAEL DONAHOE
Deputy Federal Defender
Counsel for Defendant

3

**EXCERPTS OF RECORD - Page 058**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 16-15-H-SEH |
| Plaintiff, | VERDICT |
| vs. | |
| JOHN GREGORY ALEXANDER HERRIN, | |
| Defendant. | |

1.     We, the Jury, in the above-entitled matter, unanimously find the defendant,

John Gregory Alexander Herrin,

_____Not Guilty

___X___Guilty

of the offense of Interstate Transportation of Stolen Property as charged in count I

of the indictment.

2.     We, the Jury, in the above-entitled matter, unanimously find the defendant,

John Gregory Alexander Herrin,

1

_____Not Guilty

__X__Guilty

of the offense of Money Laundering as charged in count II of the indictment.

3.    We, the Jury, in the above-entitled matter, unanimously find the defendant,

John Gregory Alexander Herrin,

_____Not Guilty

__X__Guilty

of the offense of Money Laundering as charged in count III of the indictment.

4.    We, the Jury, in the above-entitled matter, unanimously find the defendant,

John Gregory Alexander Herrin,

_____Not Guilty

__X__Guilty

of the offense of Money Laundering as charged in count IV of the indictment.

5.    We, the Jury, in the above-entitled matter, unanimously find the defendant,

John Gregory Alexander Herrin,

_____Not Guilty

__X__Guilty

of the offense of Money Laundering as charged in count V of the indictment.

6.    We, the Jury, in the above-entitled matter, unanimously find the defendant,

John Gregory Alexander Herrin,

2

__X__ Not Guilty

_____ Guilty

of the offense of Money Laundering as charged in count VI of the indictment.

7.    We, the Jury, in the above-entitled matter, unanimously find the defendant,

John Gregory Alexander Herrin,

__X__ Not Guilty

_____ Guilty

of the offense of Money Laundering as charged in count VII of the indictment.

8.    We, the Jury, in the above-entitled matter, unanimously find the defendant,

John Gregory Alexander Herrin,

_____ Not Guilty

__X__ Guilty

of the offense of Money Laundering as charged in count VIII of the indictment.

9.    We, the Jury, in the above-entitled matter, unanimously find the defendant,

John Gregory Alexander Herrin,

__X__ Not Guilty

_____ Guilty

of the offense of Money Laundering as charged in count IX of the indictment.

10.    We, the Jury, in the above-entitled matter, unanimously find the defendant,

John Gregory Alexander Herrin,

3

__X__ Not Guilty

__\__ Guilty

of the offense of Money Laundering as charged in count X of the indictment.

11.    We, the Jury, in the above-entitled matter, unanimously find the defendant,

John Gregory Alexander Herrin,

_____ Not Guilty

__X__ Guilty

of the offense of Money Laundering as charged in count XI of the indictment.

12.    We, the Jury, in the above-entitled matter, unanimously find the defendant,

John Gregory Alexander Herrin,

_____ Not Guilty

__X__ Guilty

of the offense of Money Laundering as charged in count XII of the indictment.

13.    We, the Jury, in the above-entitled matter, unanimously find the defendant,

John Gregory Alexander Herrin,

_____ Not Guilty

__X__ Guilty

of the offense of Money Laundering as charged in count XIII of the indictment.

14.    We, the Jury, in the above-entitled matter, unanimously find the defendant,

John Gregory Alexander Herrin,

4

_X_ Not Guilty

_____ Guilty

of the offense of Attempted Witness Tampering as charged in count XIV of the

indictment.

DATED this __16__ day of January, 2020. <span style="color:red">Foreperson signature redacted.  Original document filed under deal.</span>

_____
FOREPERSON

5

**EXCERPTS OF RECORD - Page 063**

Members of the jury, now that you have heard all the evidence, it is my duty to instruct you further on the law that applies to this case. A copy of these instructions will be available in the jury room for you to consult during deliberations.

It is your duty to weigh and to evaluate all the evidence received in the case and, in that process, to decide the facts. It is also your duty to apply the law as I give it to you to the facts as you find them, whether you agree with the law or not. You must decide the case solely on the evidence and the law. Do not allow personal likes or dislikes, sympathy, prejudice, fear, or public opinion to influence you. You should also not be influenced by any person's race, color, religion, national ancestry, or gender, sexual orientation, profession, occupation, celebrity, economic circumstances, or position in life or in the community. You will recall that you took an oath promising to do so at the beginning of the case.

You must follow all these instructions and not single out some and ignore others; they are all important. The order in which the instructions are given is of no significance. All of the instructions are equally important. Please do not read into these instructions or into anything I may have said or done any suggestion as to what verdict you should return—that is a matter entirely up to you.

You are reminded that in reaching your verdict you may consider only the testimony and exhibits received in evidence. The following are not evidence and you may not consider them in deciding what the facts are:

1. Questions, statements, objections, and arguments by the lawyers are not evidence. The lawyers are not witnesses. Although you must consider a lawyer's questions to understand the answers of a witness, the lawyer's questions are not evidence. Similarly, what the lawyers have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers state them, your memory of them controls.

2. Any testimony that I have excluded, stricken, or instructed you to disregard is not evidence.

3. Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

You have heard testimony that the Defendant made a statement. It is for you to decide (1) whether the Defendant made the statement, and (2) if so, how much weight to give to it. In making those decisions, you should consider all the evidence about the statement, including the circumstances under which the Defendant may have made it.

The Defendant is charged in count I of the Indictment with the transportation of stolen property in interstate commerce in violation of Section 2314 of Title 18 of the United States Code.  In order for the Defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the Defendant transported stolen money between one state and another;

Second, at the time the money crossed the state border, the Defendant knew it was stolen;

Third, the Defendant intended to deprive the owner of the ownership of the money temporarily or permanently; and

Fourth, the money was of the value of $5,000 or more.

The government need not prove who stole the money.

The Defendant is charged in counts II through XIII of the Indictment with money laundering in violation of Section 1957 of Title 18 of the United States Code. In order for the Defendant to be found guilty of any one of those charges, the government must prove for each charge each of the following elements beyond a reasonable doubt:

First, the Defendant knowingly engaged or attempted to engage in a monetary transaction;

Second, the Defendant knew the transaction involved criminally derived property;

Third, the property had a value greater than $10,000;

Fourth, the property was, in fact, derived from the interstate transportation of stolen property as alleged in count I of the Indictment; and

Fifth, the transaction occurred in the United States.

The term "monetary transaction" means the deposit, withdrawal, transfer or exchange, in or affecting interstate commerce, of funds or a monetary instrument by, through, or to a financial institution.

The term "financial institution" means an insured bank and a broker or dealer registered with the Securities and Exchange Commission.

The term "criminally derived property" means any property constituting, or derived from, the proceeds of a criminal offense. The government must prove that

the Defendant knew that the property involved in the monetary transaction constituted, or was derived from, proceeds obtained by some criminal offense. The government does not have to prove that the Defendant knew the precise nature of that criminal offense, or knew the property involved in the transaction represented the proceeds of interstate transportation of stolen property.

Although the government must prove that, of the property at issue more than $10,000 was criminally derived, the government does not have to prove that all of the property at issue was criminally derived.

The Defendant is charged in count XIV of the Indictment with attempted witness tampering in violation of Section 1512(b) (3) of Title 18 of the United States Code. In order for the Defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the Defendant knowingly corruptly persuaded Julia Nguyen, or attempted to do so;

Second, the Defendant acted with intent to hinder, delay or prevent Julia Nguyen from communicating to law enforcement authorities information relating to the commission or possible commission of an offense;

Third, there was a reasonable likelihood that at least one of the communications targeted by the Defendant would have been made to a federal officer; and

Fourth, the information that would have been communicated related to the commission or possible commission of a federal offense.

A person acts "corruptly" if he or she acts with the purpose of wrongfully impeding the due administration of justice.

An act is done knowingly if the Defendant is aware of the act and does not act through ignorance, mistake, or accident. The government is not required to prove that the Defendant knew that his acts or omissions were unlawful. You may consider evidence of the Defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the Defendant acted knowingly.

The Indictment charges that the offenses were committed "on or about" certain dates. The proof need not establish with certainty the exact date of an alleged offense. It is sufficient if the evidence establishes beyond a reasonable doubt that an offense was committed on a date reasonably near the date alleged.

The Defendant has a constitutional right not to testify. No presumption of guilt may be raised, and no inference of any kind may be drawn, from the fact that the Defendant did not testify.

You are here only to determine whether the Defendant is guilty or not guilty of the charges in the Indictment. The Defendant is not on trial for any conduct or offense not charged in the Indictment.

Evidence has been presented concerning certain matters and acts of the Defendant not charged in the Indictment. Evidence of such matters and acts may be considered only for its bearing, if any, on questions relevant to proof of the Defendant's intent, motive, opportunity, preparation, plan, and knowledge with which the Defendant acted and for no other purpose.

The punishment provided by law for any crime charged is for the court to decide. You may not consider punishment in deciding whether the government has proved its case against the Defendant beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced that the Defendant is guilty. It is not required that the government prove guilt beyond all possible doubt.

A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation. It may arise from a careful and impartial consideration of all the evidence, or from lack of evidence.

If after a careful and impartial consideration of all the evidence, you are not convinced beyond a reasonable doubt that the Defendant is guilty, it is your duty to find the Defendant not guilty. On the other hand, if after a careful and impartial consideration of all the evidence, you are convinced beyond a reasonable doubt that the Defendant is guilty, it is your duty to find the Defendant guilty.

**EXCERPTS OF RECORD - Page 077**

When you begin your deliberations, elect one member of the jury as your foreperson who will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict, whether guilty or not guilty, must be unanimous. Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

A verdict form has been prepared for you and will be given to you to take to the jury room. After you have reached unanimous agreement on a verdict, your foreperson will fill in the form, sign it and date it, and advise the bailiff that you are ready to return to the courtroom.

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will respond to the jury concerning the case only in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, on any question submitted to you, including the question of the guilt of the Defendant, until after you have reached a unanimous verdict or have been discharged.

## COUNT II

On or about January 7, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN deposited $160,870 into his Wells Fargo Bank checking account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

2

EXCERPTS OF RECORD - Page 081

## COUNT III

On or about January 9, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN deposited $26,000 into his Ameritrade account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

## COUNT IV

On or about January 21, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN withdrew $30,000 from his Wells Fargo Bank checking account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

EXCERPTS OF RECORD - Page 082

## COUNT V

On or about January 22, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN withdrew $30,000 from his Wells Fargo Bank checking account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

## COUNT VI

On or about January 30, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN deposited $120,000 into his Wells Fargo Bank checking account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

4

## COUNT VII

On or about January 31, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN transferred $60,000 from his Wells Fargo Bank checking account to his Wells Fargo Bank saving account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

## COUNT VIII

On or about February 4, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN transferred $34,000 from his Wells Fargo Bank checking account into his Ameritrade account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

5

EXCERPTS OF RECORD - Page 084

## COUNT IX

On or about March 4, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN transferred $15,000 from his Wells Fargo Bank savings account to his Wells Fargo Bank checking account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

## COUNT X

On or about March 6, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN transferred $25,000 from his Wells Fargo Bank savings account to his Wells Fargo Bank checking account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

EXCERPTS OF RECORD - Page 085

## COUNT XI

On or about March 7, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN transferred $23,000 from his Wells Fargo Bank checking account to his Ameritrade account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

## COUNT XII

On or about June 5, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN transferred $25,000 from his US Bank account to his Ameritrade account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

EXCERPTS OF RECORD - Page 086

## COUNT XIII

On or about July 15, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN transferred $13,000 from his Ameritrade account to his account at Rocky Mountain Credit Union, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

8

**Full docket text for document 81:**

MINUTE ENTRY for proceedings held before Judge Sam E Haddon: Jury Trial as to John Gregory Alexander Herrin held on 1/15/2020. Present in the courtroom are AUSA Tim Racicot and Michael Kakuk with FBI SA Selina Devantier. FD Michael Donahoe with Defendant Herrin. Judge goes over the remaining timeline of the trial with the Jury. Government calls and examines final witnesses and moves for admission of final exhibit. Defense objects to testimony which was overruled as stated. Government rests. Out of the presence of the Jury, Defense wants charges dismissed as to Rule 29. It is denied. Jury back in court. Defense calls witness and moves for admission of Exhibit 500, objected, sustained and denied. Defense argues Offer of Proof without the Jury as to Exhibit 500 and witness testimony, denied and record on this matter is closed. Defense wants Rule 29 renewed and is denied. Jury back in court. Evidence is complete. Court gave the admonition to jurors before breaks and upon excusing them for the rest of the day. Court to prepare Final instructions for the jury for deliberations. Parties will convene at 8am to go through and complete Final Jury Instructions. Jury to be present and ready for final day at 9am. Hearing commenced at 8:27 and concluded at 11:45, ( Jury Trial set for 1/16/2020 at 08:00 AM in Helena, MT before Judge Sam E Haddon.) (Court Reporter Tina Brilz) (Government Witnesses Sworn and Examined: Todd Wysocki, Kelly ONeil, Deanna Tierney, Julia Nguyen), (Defense Witnesses Sworn and Examined: Stacy Lear), (Government Exhibits Admitted:35) (Hearing held in Helena) (Grady, Colleen)

**Full docket text for document 80:**

MINUTE ENTRY for proceedings held before Judge Sam E Haddon: Jury Trial DAY 2 as to John Gregory Alexander Herrin held on 1/14/2020. Present in the courtroom are AUSA Tim Racicot and Michael Kakuk with FBI SA Selina Devantier. FD Michael Donahoe with Defendant Herrin. Government resumes with witness Prell from previous day. Government continues to call witnesses and moves for admission of exhibits. Defense brought up his objections to the Exhibits 13-27 out of the presence of the Jury. Judge said Objections are noted for the record and are overruled. Court gave the admonition to jurors before breaks, lunch and upon excusing them for the evening. Trial will reconvene tomorrow beginning at 8:15. Hearing commenced at 8:19 and concluded at 4:58, ( Jury Trial set for 1/15/2020 at 08:15 AM in Helena, MT before Judge Sam E Haddon.) (Court Reporter Tina Brilz) (Government Witnesses Sworn and Examined: S.A. Selena DeVantier,Wanda Douglas, Arnold Ailer, Curtis McAlpin, Christopher Molzhon,Craig Stevens, Jeff Stacey,Cheri Mann, Dennis Skramstad, LaTisha Hough), (Government Exhibits Admitted: 13,14,15,16,17,18,19,20,21,22,23,24,25,26,27, 28,30,32,33,34,36), (Law Clerk: W Casey), (Hearing held in Helena) (Grady, Colleen)

**Full docket text for document 77:**

MINUTE ENTRY for proceedings held before Judge Sam E Haddon: Jury Trial DAY ONE as to John Gregory Alexander Herrin held on 1/13/2020. Present in the courtroom are AUSA Tim Racicot and Michael Kakuk with FBI SA Selina Devantier. FD Michael Donahoe with Defendant Herrin (released) and Admin Assistant Ashley Ulsher. Preliminary Trial matters discussed; without jury. Court is in session with all counsel and defendant present 43 prospective jurors present. Welcome from the Court. Panel sworn. Names of 32 preselected panel members seated; introductions and brief voir dire conducted. Judge takes a recess without jury to address a reported juror issue. US Marshal is heard. Counsel are heard regarding juror #37. Dft counsel objects to the removal of the juror; Over Ruled; juror and his name is stricken from the courtroom and role call. Court directs the clerk to file the note into the record re: juror into the record. Court returns after a brief recess with all parties and the pre selected and remaining jurors present to continue voir dire. Jurors # 19, 25, 32, 35 excused, redrawn. Voir Dire by parties, passed for cause. Arizona challenges conducted. Clerk reads names of 13 trial jurors. Court thanks and excuses remainder of panel and re-seats trial jurors. Trial oath sworn to jury by clerk. Jurors excused for lunch break and admonition given. Parties continue out of the presence of the jury to discuss the motion of acquittal filed on behalf of the defendant. Court is heard briefly on this issue and excuses all for lunch recess. All parties present and ready to proceed following lunch recess; jury not present. 401 revalance addressed before the Court. Court denies request as stated.Preliminary instructions read to the jury. Parties give opening statements. Plaintiffs moves to invoke rule 615; granted. Agent Devantier is allowed to remain at counsel table for the government. Government begins case in chief; calling witnesses; admitting exhibits. Admonition given to the jury before breaking for afternoon recess. All parties present and ready to proceed. Jurors return to the courtroom to hear continued testimony of gvmts witness. Court give the admonition to jurors before excusing them for the evening. Trial will reconvene tomorrow beginning at 8:15. Hearing commenced at 8:45 and concluded at 5:05, ( Jury Trial set for 1/14/2020 at 08:15 AM in Helena, MT before Judge Sam E Haddon.) (Court Reporter Tina Brilz) (Government Witnesses Sworn and Examined: Steve Prell), (Government Exhibits Admitted: 1,2,3,4,5,6,7,8,9,10,11,12), (Law Clerk: W. Casey), (Hearing held in Helena) (HEG) Modified on 1/14/2020 to clean up text(HEG).

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 26 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff-Appellee,<br><br>  v.<br><br>JOHN GREGORY ALEXAND HERRIN,<br><br>    Defendant-Appellant. | No.   19-30002<br><br>D.C. No.<br>6:16-cr-00015-SEH-1<br>District of Montana,<br>Helena<br><br>ORDER |

Before:  CLIFTON, N.R. SMITH, and FRIEDLAND, Circuit Judges.

We have reviewed the responses to this court's order to show cause why this appeal should not be dismissed for lack of jurisdiction.  We conclude that we lack jurisdiction to review the district court's interlocutory order.  *See* 28 U.S.C. § 1291; *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989) (stating that finality requirement generally "prohibits appellate review until after conviction and imposition of sentence").  According, this appeal is dismissed.

**DISMISSED.**

EXCERPTS OF RECORD - Page 091

MR. DONAHOE:  I have nothing further.

THE COURT:  You may step down.

THE WITNESS:  Thank you.

THE COURT:  Do you have other witnesses, Mr. Donahoe?

MR. DONAHOE:  No, Your Honor.

Thank you.

THE COURT:  Mr. Racicot, what's the timeline on the government's presentation of evidence?

MR. RACICOT:  We don't have any witnesses to call, Your Honor.

THE COURT:  Very well.

It's five minutes past noon.  We'll take a 15-minute recess.  The court will reconvene at that time, and I will attempt to address the issues raised by the motion.

We're in recess till 25 past.

(The proceedings in this matter were recessed at 12:08 p.m. and reconvened at 12:27 p.m.)

THE COURT:  Be seated, please, all.

We are back in open court session.

Counsel for both parties are present.

The defendant is present.

And the evidence record on this motion has been closed, the defendant having presented four witnesses who gave testimony.  The government having stated it has no witnesses to present on this particular issue.

So we'll deem the matter, insofar as the record is concerned, submitted.

Counsel, I'll be pleased to hear summary argument on both sides as you care to present it. Keep in mind, please, that the court has read the briefs and has conducted what it considers to be appropriate additional research directed to the issues.

But you are welcome to proceed. I have no particular preference as to order of presentation, keeping in mind, as I said earlier, the court will approach the issues on the basis of the totality of the record that's before it.

MR. RACICOT: Thank you, Your Honor.

Judge, we would just highlight a couple of points that we referenced in our briefing that I know the court has reviewed, and that's first and foremost that there is prosecutorial discretion in which offense to charge in a case of this type. And interstate transportation of stolen property and all of the transportation of property statutes relate as much to receiving of stolen property as to the initial taking. And that in this case, we charged receiving and transportation. The best analogy I could think of that's not contained in our brief would relate to the possession and transport of stolen motor vehicles across state lines. There is no federal offense that I'm aware of specifically addressed to stealing a vehicle. But if I steal a vehicle here in Helena, and I drive it across

state lines, I can be prosecuted federally for the transportation of that stolen property, even though I couldn't be charged for it -- for the actual underlying theft.

Here, there's arguments that Mr. Herrin could have been charged with the underlying theft, but he wasn't.  We believe that's within our discretion to make that determination, so long as we're not discriminating against any class of defendant, which there's been no indication that we are.

Then in our view, as we've said in our brief, it becomes an issue of the evidence and whether it's relevant under 401, whether it's unduly prejudicial under 403.  We think there's pattern instructions the court can give the jury at the time of trial to help focus their review of proof, including pattern instruction 3.10 that addresses the fact that the defendant is not on trial for any conduct or offense that is not charged in the indictment.

So the jury will not be asked to find the defendant guilty or not guilty of actually taking the money off the truck. They'll be asked to determine whether the government met its burden of proof as to the elements of interstate transportation of the stolen property.  We think that argument dovetails with the Ninth Circuit decisions in Helberg and Desmond, which are cited in our briefs.  And we just don't think the defendant's argument as it relates to the Fifth Amendment and being charged under the Fifth Amendment by the way of grand jury for the

actual theft is relevant here, because he will not be exposed to double punishment. He will not be punished for actually taking the money, because the jury won't be asked to determine whether he actually took the money. Any evidence that did he would be relevant only to proving, one, that the money is stolen; and two, that he knew it at the time he transported it across state lines, which are two of the elements of interstate transportation of stolen property.

And with that, Your Honor, unless you have questions, I'd be happy to stand on our briefs.

THE COURT: Nope. I don't have questions.

MR. RACICOT: Thank you.

THE COURT: Mr. Donahoe.

MR. DONAHOE: Thank you.

Your Honor, thank you for the opportunity to make some closing remarks here.

So, I'm going to pick up where the government began, and they seem to be just fastened, apparently, to this idea of prosecutorial discretion. And I would ask the court to conceive of this as prosecutorial obligation.

I think it's apparent from what the court heard today, that the orientation of this case, from the government's point of view, is that Mr. Herrin took the money.

There's evidence of truck break-ins, accessibility to the trucks, keys, possession of keys. Your Honor now has, I think,

a context to look at this indictment and think to yourself: "Well, was it Mr. McAlpin that took the money?"

He denies that, and he's never been charged with it.

Nor was it anyone else that apparently had contact with these funds that took the money.

There's some testimony that seems to indicate that perhaps the correct number of bags were loaded by looking at this video cam, but even that hasn't been established.

Frankly, Your Honor, I think at this point, what we have here is money that has been misplaced. If the government doesn't want to say that Mr. Herrin did it, I guess we're fine with that. And that would take a large part of the government's case, in terms of evidence, and set it to the side. Because there would be no apparent relevance for it.

At the beginning of the hearing, Your Honor summarized in some detail its understanding of the papers that have been filed so far.

And alighted on the fact that the government had made the argument that this should be cast as a motion in limine and not as a motion to suppress, because there's no alleged constitutional violation.

There clearly is alleged a constitutional violation, as a violation of the grand jury clause in the Fifth Amendment, Fifth and Sixth Amendments, together with and looked at through the lens of the statute of limitations statute, which I bring

to Your Honor's attention, states expressly:  "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished."

The government in its remarks says:  "Well, he won't be punished for taking the money."  But there's two other clauses or two other words that are really stand out in this phrasing in the statute of limitations statute 3282, "prosecuted or tried."

It has to be the government's view that it intends to put on bank records, casino records, statements, apparently, that Mr. Herrin made, banking activities, deposits, all directed to the goal to show that the money, and I want to use that phrase, "the money," that was run through his accounts and perhaps used for gambling in Las Vegas and so on, is "the money" that was on the truck.

But there's not going to be any physical evidence whatsoever that will connect Mr. Herrin -- "the money" that went through his accounts to "the money" that was apparently misplaced from this truck.

So, for all those reasons, and for all the reasons in the papers, we respectfully request that the court enter an order that says that any effort by the government to offer evidence that Mr. Herrin was the taker of the funds, ought to be excluded.

Thank you, Your Honor.

THE COURT:  Thank you, counsel.

We will, with those arguments, deem this matter submitted to the court for decision.

I appreciate the specificity with which both sides have addressed their perception of the issues.

And we will endeavor to address the issues as presented as specifically as possible.

Let's start with the evidence that was presented today. Defendant, at the court's direction, assumed the responsibility to present evidence related to the issues.  Four witnesses were called and testified and were examined.

And it is the court's observation, and it's fair to say that the testimony that was encompassed in those four witnesses, largely focused upon the factual events that surrounded the missing money that occurred on -- in November of 2013.

The legal issues, as raised, essentially, in the briefs and argued in the briefs, were not the focus of particular evidence.

And those legal issues remain for the court's analysis and decision, essentially, on the basis of the record, which while it may be impacted to some extent by the testimony presented here today, is largely directed to an analysis of the charges made.

The defendant argues that he has made a constitutional

claim.  However, upon analysis, it appears that it remains to be concluded and is concluded by the court that the arguments advanced are, essentially, arguments related to the admissibility of evidence.

But regardless of whether the court takes the motion as a motion to suppress the record which is sought to be excluded, or had the court approaches the question as one of exclusion of evidence, the issue really remains for the court to decide, and that is, whether the evidence surrounding the events of the day in question should be excluded.

That is, it is essentially the defendant's position that all of that evidence, whatever may have -- be shown to have factually occurred on the date of I think it was November the 13th, that that evidence is irrelevant, inadmissible, and prejudicial to the defendant, and should not be admitted.

The government, on the other hand, contends that this evidence has relevancy.  And that the -- keeping in mind that the government, from its perspective, does not have to prove the issue of who stole the money as a part of the crime charged, that the evidence the government seeks to introduce is not only relevant, but that it has probative value, and should be allowed to be introduced at the trial, because it touches upon and deals with both the question of who took the money and whether or not the defendant intended to deprive the true owner of the money with its use and possession on a permanent basis.

This issue is framed in -- at least in part, by the Ninth Circuit pattern instructions, particularly pattern instruction 8.189, 2018 edition, the charge being interstate transportation of stolen property.

And I paraphrase:  "The defendant is charged in the indictment with the transportation of stolen property in interstate commerce, in violation of Section 2314 of Title 18 of the United States Code.

"In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

"First:  That the defendant transported, transmitted, transferred, or otherwise moved stolen property," in this instance, the funds taken from the Garda truck, "between the states, as it's charged, of Montana and Nevada."

Second element:  "At the time of the property, the money, crossing the state line boundary, the defendant knew that it was stolen.

"Third:  That the defendant intended to deprive the owner of the money temporarily or permanently.

"Fourth, that the money or property was of a value of $5,000 or more."

And finally, as an element in the standard stock instruction:  "The government need not prove who stole the money."

Those are the elements of this crime as it is charged in the indictment.

And as I said earlier, the question directly for the court is: Does the court appropriately allow this evidence, which the government has outlined in its brief, to be introduced if otherwise admissible at time of trial?

The manner in which the issue is presented, arguably, could be said to have isolated the claim made by the defendant to one that does not charge a constitutional rights violation. I make no final determination on that issue, because it is the court's determination, regardless of the standard applied, and whether the review of this court's decision be for abuse of discretion, or whether it be by de novo review, that the evidence should be admitted. And that is the ruling of the court.

What happened on the day of the loss of the money that preceded the loss, the events of the day, the investigation that followed, and the evidence that presumably will be found to be admissible at trial of activities of the defendant that followed the loss of the money, are -- and it is the court's determination, relevant to the proof of the crime that was charged. That is, the taking of the money that had been stolen. Not specifically that the defendant took it. And that it is relevant to proof of the charge made by the government. The government simply does not have to prove that the defendant

was the thief, although there may be evidence that would tend to support that conclusion, yet to be developed at time of trial.

But the ruling of the court is the motion to suppress or the motion in limine, however characterized, is denied.

To the extent that the defendant has raised issues that may be appropriate for address by the instructions to be given by the court at the completion of the trial process, those questions are, in the view of the court, premature at this point, and will be addressed at an appropriate time, including, if not before, at the time of settlement of instructions at the completion of trial.

Therefore, the motion, as framed, whether characterized as a motion to dismiss or to suppress or as a motion in limine, is denied.

The evidence may be presented to the extent that the court finds it otherwise to be admissible under the Rules of Evidence to be applied.

That is the ruling of the court.

The case will proceed to trial as scheduled.

There is one other matter, counsel, that I feel obliged to bring to your attention.  And that is that the scheduling order in this case that was issued required that by January 4 of this year, that a -- either a plea agreement, if there were a plea negotiation effected, or a notice of intent to go to trial were

to be filed.

No side, either side, complied with that order of this court.

I have nothing before the court to -- other than the absence of a filing, to provide the notice to the court that was required by the court's scheduling order.

I don't have any statement to that effect by the defendant.  And I have no response statement or any other statement from the United States on that issue either.

Consequently, counsel, it's my order that on or before close of business on Friday of this week, that's on November -- January 11, that each of you shall file and submit to this court a written explanation of your reasons or reason for not complying with the court's scheduling order in this case.

And for the information of everyone, the court does not issue scheduling orders with the expectation or belief that counsel can or will be free to simply ignore them.

So I expect the filings to be -- as ordered to be made.

That concludes the matters before us today.

We are in recess.

MR. DONAHOE:  Judge, can I be heard on something before you leave there?

THE COURT:  If it's not related to the rulings of the court, yes.

MR. DONAHOE:  It's not.  Well, it is, I guess,

tangentially, but it would be my intention, and I just don't want to electronically file it without the court knowing, I'm going to appeal this order to the Ninth Circuit.

THE COURT:  Well, counsel, that's -- whatever your prerogatives are under the --

MR. DONAHOE:  Well, I just didn't want to not disclose that.

THE COURT:  Well, I appreciate your bringing that to the attention.  The court will act as it deems appropriate based upon whatever is filed, of course.

MR. DONAHOE:  Okay.

THE COURT:  All right.

We are in recess.

(The proceedings in this matter were adjourned at 12:49 p.m.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Tina C. Brilz, RPR, FCRR

Dated this 18th day of January, 2019.

MICHAEL DONAHOE
Deputy Federal Defender
FEDERAL DEFENDERS OF MONTANA
50 West 14th Street, Suite 1
Helena, MT 59601
Michael_donahoe@fd.org
(406) 449-8381
(406) 449-5651 (Facsimile)
        Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CR 16-15-H-SEH** |
| Plaintiff, | |
| vs. | **NOTICE OF INTERLOCUTORY APPEAL FROM DISTRICT COURT ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS** |
| JOHN GREGORY ALEXANDER HERRIN, | |
| Defendant. | |

### NOTICE OF APPEAL

COMES NOW defendant-appellant, John Gregory Alexander Herrin (Herrin) and hereby gives notice of his appeal to the Ninth Circuit Court of Appeals from the order entered by the United States District Court in and for the District of Montana on January 10, 2019, denying Herrin's Motion to Suppress. (*See* ECF No. 34).

Federal Defenders of Montana
50 West 14th Street, Suite 1
Helena, Montana 59601
(406) 449-8381                                                                 1

**EXCERPTS OF RECORD - Page 105**

The record in this case consists of the district court's written denial of defendant's motion (ECF No. 34). The briefs filed in the case by the parties (ECF Nos. 14, 17 and 20); and the transcript of the hearing held by the district court on January 10, 2019, which has been ordered from the court reporter this date under separate cover.

This appeal centers on the defendant's rights under the Fifth and Sixth Amendments not to be tried for an offense for which he has not been timely indicted. "This [Indictment Clause] claim meets all three standards for immediate appealability" *United States v. Yellow Freight Systems, Inc.*, 637 F.2d 1248, 1251 (9th Cir. 1980).

RESPECTFULLY SUBMITTED this 10th day of January, 2019.

/s/ Michael Donahoe
MICHAEL DONAHOE
Deputy Federal Defender
Attorney for Defendant

Federal Defenders of Montana
50 West 14th Street, Suite 1
Helena, Montana 59601
(406) 449-8381                                    2

**EXCERPTS OF RECORD - Page 106**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 16-15-H-SEH |
| Plaintiff, | **ORDER** |
| vs. | |
| JOHN GREGORY ALEXANDER HERRIN, | |
| Defendant. | |

On December 12, 2018, Defendant filed a Motion to Suppress Evidence.[1]

The Court held a hearing on the motion on January 10, 2019. Upon the record made in open court,

ORDERED:

Defendant's Motion to Suppress Evidence[2] is DENIED.

---

[1] Doc. 13.

[2] Doc. 13.

-1-

Trial remains set for January 22, 2019, at 8:45 a.m. at the Paul G. Hatfield

Courthouse, Courtroom I, Helena, Montana.

DATED this *16th* day of January, 2019.

SAM E. HADDON
United States District Judge

**EXCERPTS OF RECORD - Page 108**

**Full docket text for document 33:**

MINUTE ENTRY for proceedings held before Judge Sam E Haddon: Motion Hearing as to John Gregory Alexander Herrin held on 1/10/2019 re [13] MOTION to Suppress filed by John Gregory Alexander Herrin. Present in the courtroom are AUSA Timothy Racicot; FD Michael Donahoe with deft (released). Court advises all present of the purpose of todays hearing; reviewing matter to date. Deft witnesses sworn and examined; ex 501 admitted w/out obj. The government has no witnesses. Following a brief recess with all parties present and ready to proceed. Summary arguments are heard following the conclusion of the evidence. The Court is heard on the issues argued. Motion to Dismiss is DENIED as stated. Scheduling order issued discussed. Parties are to file on or before 1/11, each party shall file written explanation for not complying with the scheduling order. Court is in Recess. Hearing commenced at 10:00 and concluded at 12:49 (Court Reporter Tina Brilz) (Attachments: # (1) Dft Ex 501) (Defense Witnesses Sworn and Examined: Arnold Ailer, Detective Stacy Lear, Curtis McAlpin, Jeff Stacey), (Defense Exhibits Admitted: Ex 501), (Law Clerk: E. Anderson), (Hearing held in Helena) (HEG)

**EXCERPTS OF RECORD - Page 109**

MICHAEL DONAHOE
Deputy Federal Defender
Federal Defenders of Montana
Helena Branch Office
50 West 14th Street, Suite 1
Helena, Montana 59601
Phone: (406) 449-8381
Fax: (406) 449-5651
      Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CR 16-15-H-SEH** |
| Plaintiff, | |
| vs. | **DEFENDANT HERRIN'S PROPOSED SUPPLEMENTAL JURY INSTRUCTION** |
| JOHN GREGORY ALEXANDER HERRIN, | **(WORKING COPY)** |
| Defendant. | |

COMES NOW the defendant John Gregory Alexander Herrin, by and through his undersigned counsel, and submits the attached proposed jury instruction marked as Herrin's Proposed Instruction No. 1.

RESPECTFULLY SUBMITTED this 7th day of January, 2019.

              /s/ Michael Donahoe
              MICHAEL DONAHOE
              Deputy Federal Defender
              Federal Defenders of Montana
              Counsel for Defendant

**Instruction No. _____**

During the course of this trial certain evidence has been presented concerning alleged transactions in addition to those charged in the indictment, to wit, suspicious banking activity reports, statements of the defendant, bank records, accounting analysis of defendant's banking activity, defendant's ability to break into the armored trucks etc.

This evidence, if you choose to accept it, is admitted for the limited purpose of assisting you in determining the (*insert government's alleged 404(b) purposes*) with which a defendant may have acted. In this regard, you are instructed that evidence of any alleged other transaction may not be considered by the jury in determining whether an accused committed the acts or participated in the activity alleged in the indictment.

Nor may evidence of such an alleged other transaction be considered for any other purpose whatever unless the jury first finds that the other evidence in the case, standing alone, establishes beyond a reasonable doubt that the accused participated in the activity alleged in the indictment.

---

Defendant Herrin's Proposed Instruction No. 1

SOURCE: *United States v. Beechum*, 582 F.2d 918 (5th Cir. 1978) (footnoted instruction, *as modified*).

Federal Defenders of Montana
50 West 14th Street, Suite 1
Helena, Montana 59601
(406) 449-8381

3

If the jury should find beyond a reasonable doubt from independent evidence in the case that the accused participated in the activity alleged in the indictment, then the jury may consider evidence as to other transactions in determining (*insert government's alleged 404(b) purpose*) with which the accused did the act charged in the indictment.

I want to instruct you very explicitly and unequivocally as to the very limited extent to which you may consider this evidence as to other acts and transactions.

As I just instructed you, you may consider such evidence of other transactions in determining the (*404(b) purpose*) with which the accused may have done the act charged in the indictment, but only if you first find that the independent evidence standing alone establishes beyond a reasonable doubt that the defendant committed the act alleged in the indictment.

Federal Defenders of Montana
50 West 14th Street, Suite 1
Helena, Montana 59601
(406) 449-8381

4

**EXCERPTS OF RECORD - Page 112**

MICHAEL DONAHOE
Deputy Federal Defender
Federal Defenders of Montana
Helena Branch Office
50 West 14th Street, Suite 1
Helena, Montana 59601
Phone: (406) 449-8381
Fax: (406) 449-5651
      Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>vs.<br><br>JOHN GREGORY ALEXANDER HERRIN,<br><br>     Defendant. | **CR 16-15-H-SEH**<br><br><br>**DEFENDANT'S BRIEF IN SUPPORT OF HIS OPPOSED MOTION TO SUPPRESS** |

## I.  INTRODUCTION

Defendant has filed a motion to suppress evidence (ECF No. 13). which was previewed to and opposed by the government, through Assistant United States Attorney Timothy Racicot. The central focus of the motion is that the Indictment brought by the government in this case rests on the factual proposition that defendant, Mr. Herrin, an employee of GardaWorld, stole approximately $390,000

Federal Defenders of Montana
50 West 14th Street, Suite 1
Helena, Montana 59601
(406) 449-8381

1

from a GardaWorld armored truck on or about November 20, 2013. Unfortunately, however, the government (by design) elected not to charge that separate offense, which is bank theft under 18 U.S.C. §2113(b).

Accordingly based on the arguments set forth below defendant seeks an order from this Court that will bar and suppress any evidence proposed or offered by the government at trial that would suggest, imply or indicate in any manner (whether by circumstantial proof or direct proof) that defendant, Mr. Herrin, took the $390,000 from the GardaWorld armored truck. Which again is a discrete violation of 18 U.S.C. §2113(b) that the government chose not to indict; and which cannot be indicted now by operation of 18 U.S.C. §3282(a) and the due process and grand jury clauses of the Fifth Amendment to the United States Constitution.

## II. ARGUMENTS

**(A)** *The Government's theory of the case*

Although the Indictment itself alleges no factual context it is apparent from the discovery that the government's theory in this case is that Mr. Herrin's guilt can be inferred from the fact that he stole the money from the GardaWorld armored truck on November 20, 2013. Moreover, unable to uncover any direct evidence that Mr. Herrin stole the money from the armored truck the government further intends to rest its case on that fact that sometime in January of 2014 defendant traveled to Las Vegas, Nevada and subsequent to that trip deposited a check in his Montana Wells

Federal Defenders of Montana
50 West 14th Street, Suite 1
Helena, Montana 59601
(406) 449-8381

2

Fargo checking account (drawn by a Las Vegas casino) in the amount of $127,000. Also the discovery shows that on January 30, 2014, defendant deposited a substantial number of $20 dollar bills in that same Wells Fargo account, which we expect the government will contend was the principle denomination of currency taken from the GardaWorld truck in or around November 20, 2013. And finally, although defendant has never confessed to any crime, there is discovery which claims Mr. Herrin discussed with a co-worker from GardaWorld that entry into some of the GardaWorld armored trucks could be accomplished without keys with relative ease.

**(B)** *The government's proposed evidence raises two independent theories of how the money could be considered "stolen" within in the meaning of 18 U.S.C. §2314.*

It is reasonably apparent that the United States intends to advance two lines of argument to the jury. First, that in a general sense, *and without specifically naming defendant as the thief*, that the money went missing and should be considered "stolen" as that term in 18 U.S.C. §2314 has been interpreted by the Supreme Court. And second, as an independent matter, that defendant was actually the thief. It is the differences between these two theories, and the government's obligations to deal with them discretely before and during trial, that we intend to discuss here.

First, since at least 1957 the Supreme Court has interpreted the term "stolen", as used in federal criminal statutes, rather broadly. The leading case is *United States*

Federal Defenders of Montana
50 West 14th Street, Suite 1
Helena, Montana 59601
(406) 449-8381

3

*v. Turley*, 352 U.S. 407 (1957). There, the court construed the word "stolen" as used in the National Motor Vehicle Theft Act, NMVTA, (18 U.S.C. §2312), which is the same way the term is used in the National Stolen Property Act, NSP; the charge the government has brought here under Count I, and which forms the basis for Counts II-XIII.[1] Under *Turley*, the court resolved two questions.

First, whether when interpreting the word "stolen" in the NMVTA the government is obliged to prove that the vehicle had been stolen under the relevant state law. The *Turley* court quickly answered this question in the negative.

Next the *Turley* court considered whether the government was obliged to prove common law larceny in order to satisfy the "stolen" element as set forth in the NMVTA. In *Turley* the defendant had taken possession of a car lawfully but subsequently converted it to his own use, which at common law would <u>not</u> have been larceny but only embezzlement. In finding for the government and reading the term "stolen" expansively the Supreme Court took pains to abolish all of the archaic nuances between larceny, embezzlement and obtaining property by false pretenses. But make no mistake "[e]ven under the broad definition in *Turley*, stealing is still essentially *an offense* against another person's proprietary or possessory interests in

---

[1] In enacting the NSPA the Congress's intent was "[t]o extend the provisions of the [NMVTA] to other stolen property." 48 Stat. 794.

Federal Defenders of Montana
50 West 14th Street, Suite 1
Helena, Montana 59601
(406) 449-8381

4

property." *See e.g. United States v. Long Cove Seafood, Inc.*, 582 F.2d 159, 163 (2nd Cir. 1978).

Thus the key take-away here is that in the federal statutes where Congress employs the term "stolen" that term functions as an umbrella device for all manner of theft offenses, so as not to hamstring the government in having to prove some particular species of theft. This makes sense considering that there is more than one way for money or property to be deemed "stolen" within the meaning of the law. Furthermore, a broad interpretation of the term "stolen" likewise permits the government to prove that it was conduct or circumstances caused by others (other than the defendant) which resulted in the money or property being deemed "stolen" within the meaning of the statute.

This case is a perfect example. Consider that the GardaWorld investigators concluded that the armored truck drivers making the Missoula run from Helena took the money as a crime of opportunity. Under this theory of guilt, the government does not allege that defendant himself took the money; but only that other drivers committed the theft and that defendant subsequently moved that very same money in interstate commerce, knowing that his co-worker committed the crime. In fact, we contend that this is Count I as alleged in the Indictment.

On the other hand, the government could proceed on the theory of guilt that it was indeed defendant who committed the theft. Under this scenario the evidence

Federal Defenders of Montana
50 West 14th Street, Suite 1
Helena, Montana 59601
(406) 449-8381

5

**EXCERPTS OF RECORD - Page 117**

picture changes profoundly because the government contends that, not only did Mr. Herrin transport money stolen by others in commerce from one state to another, he was also the individual who took the money from the GardaWorld armored truck in the first place. This of course involves a different set of legal facts and elements because it forces an obligation on the government to actually prove beyond a reasonable doubt that Mr. Herrin took the money to render it "stolen" within the meaning of 18 U.S.C. §2314. *See e.g. Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20-21 (2000) (burden of proof is an essential element of every claim and one who asserts the claim is entitled to the burden of proof that normally comes with it).

Thus we urge the Court to take notice by contrast that in this case the government has indicted Mr. Herrin for the first hypothetical (a person other than the defendant stole the money); *however* it intends to advance at trial the second factual iteration that it was the defendant himself who stole the funds. Unfortunately, defendant has not been indicted for the latter crime, bank theft.

Here we level attack on the procedure the government intentionally followed in this case based on the rights inherent in the constitutional guarantee of indictment by grand jury. The Fifth Amendment expressly guarantees that prosecutions for serious crime may only be instituted by indictment. An indictment has two important purposes. To furnish notice to the accused of the charges being brought against him and to outline with requisite specificity the offense with which the defendant is

charged in order to protect against future jeopardy for the same offense. *Russell v. United States*, 369 U.S. 749, 763-764 (1962). More expressly ". . . [T]he very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Stirone v. United States*, 361 U.S. 212, 218 (1960).

For this reason, a grand jury composed of ordinary citizens must agree upon an indictment before a defendant is tried on a felony charge:

> Historically, [the grand jury] has been regarded as a primary security to the innocent against hasty malicious and oppressive prosecution . . . to determine whether a charge is founded upon reason . . .

> *Wood v. Georgia*, 370 U.S. 375, 390 (1962).

An individual must also be adequately informed of the nature of the §2314 offense he is charged with. *United States v. Bruun*, 809 F.2d 397, 405 (7th Cir. 1987).

In this case the Indictment does not allege that defendant was the thief. However, the discovery clearly expresses that Mr. Herrin's guilt can be inferred from his trip to Las Vegas and his banking activity. *Cf. United States v. Tasy*, 203 F.3d 1060, 1062 (8th Cir. 2000) (although not clear court surmises that the government contends that defendants guilt for § 2314 offense can be inferred from fact that they were involved in shipping stolen computers). Hence there are two problems here.

Federal Defenders of Montana
50 West 14th Street, Suite 1
Helena, Montana 59601
(406) 449-8381

7

First that the government intends to prove a case it did not charge. And second the

inferential reasoning chain that the government intends to employ at trial is faulty.

We now address these questions in the same order.

**(C)** *When a charged federal offense includes as an element another federal offense that can be punished separately under the Supreme Court's decision in Whalen v. United States (cite omitted) that separate offense must be charged independently.*

In *Whalen v. United States*, 445 U.S. 684 (1980) the Supreme Court addressed

a situation where the defendant, under District of Columbia law, was convicted of

murder during the course of a rape. The question presented was whether the

defendant could be punished for both rape and murder. Employing standard

interpretative tools and the test set forth in *Blockburger v. United States*, 284 U.S.

299 (1932) the Court concluded that because the combined offenses (rape and

murder) did <u>not</u> each contain an element that the other offense did not those offenses

(rape and murder) could not be punished separately. At a glance the *Whalen* decision

would appear to add little to the discussion here. However important features in the

*Whalen* court's analysis prefigure the outcome for this motion.

Much like the situation presented here with regard to the element of the money

or property having to be "stolen" the situation in the *Whalen* case presented a similar

legal paradigm. Under the statute at issue in *Whalen* (D.C. Code § 22-2401) killing

another in the course of a rape, robbery, kidnaping or arson was a violation of the

law. 445 U.S. at 694. As for killing in the course of a rape however the Supreme

Court makes a *fine* distinction under the *Blockburger* test that murder in the course of a rape would be a single, same offense when the two component offenses are broken down into individual parts; whereas murder in the course of a robbery would not. *Id.* And the reason is that in proving a felony murder/rape as opposed to just a rape, each offense does <u>not</u> require proof of an element that the other does not.

On the other hand, murder in the course of rape and robbery would require proof of two independent offenses because each offense (felony murder/rape and robbery) would require proof of an element that the other did not. Therefore, the *Whalen* decision cogently teaches that where a statute contains multiple alternative bases for liability, each basis for liability should be treated as though they were charged in a separate statute, if the offenses charged satisfy the *Blockburger* test. *Whalen*, *supra*, 445 U.S. at 694. *Also see United States v. Stafford, 831 F.2d* 1479, 1482 (9th Cir. 1987) (citing Whalen and recognizing rule that in a compound felony case where there are multiple possibilities for the predicate felony each predicate should be deemed as arising under a separate statute).

The logic of the *Whalen/Stafford* analysis applies here because the "stolen" element in §2314 is not limited to a particular species of theft, since under the *Turley* rule "stolen" embraces without distinction larceny, embezzlement, taking by false pretenses, etc. Yet under *Whalen/Stafford* where the predicate manner of the theft that the government desires to argue is itself a *federal offense* the government is not

at liberty to relieve itself of its constitutional obligation to indict such an offense. Put another way, the government cannot take shelter under the *Turley* rule's expansive interpretation of the "stolen" element in §2314 because under the *Whalen/Stafford* paradigm when one of those several predicate offenses that renders the money "stolen" *happens to be a federal offense* the government is required to indict it under the Fifth Amendment grand jury clause.

If the government intends to prove that the "stolen" money transported in interstate commerce is the very same money the government intends to argue defendant took from the GardaWorld armored truck then the government was obliged under 18 U.S.C. §3282 and the Fifth Amendment due process clause to indict defendant in a separate count for violation of 18 U.S.C. §2113(b). This follows because as footnote 2 below shows transportation of stole money (§2314) and bank

theft (§2113(b)) are separate offense under *Blockburger*, since each offense contains

an element that the other does not.[2]

Title 18 U.S.C. §3282 expressly provides that an individual cannot be ". . .

prosecuted, tried or punished for any offense, not capital, unless the indictment is

found . . . within five years next after such offense shall have be committed."

According to the Supreme Court this type of limitation serves several critical

purposes:

> The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may become obscured by the passage of time and to minimize the danger of official punishment because the acts in the far-distant past.

---

[2] Transportation of stolen property in violation of 18 U.S.C. §2314 has four elements.:

    (1) defendant transported goods or money in commerce;
    (2) the value was above $5000;
    (3) the goods/money was stolen;
    (4) defendant knew goods/money was stolen at the time of transport.

> *United States v. Tasy*, 203 F.3d 1060, 1062 (8th Cir. 2000).

Bank theft under 18 U.S.C. §2113(b) has the following elements:

    (1) defendant carried away money belonging to a bank;
    (2) the bank had its deposits insured by the FDIC;
    (3) defendant had the intent to steal;
    (4) the amount of money was more than $1000.00.

> Criminal Pattern Jury Instructions: Tenth Circuit, No. 2.78 (2011 ed.); Pattern Jury Instructions: Fifth Circuit, No. 2.80B (2015 ed.) (Bank Burglary-Elements).

*Toussie v. United States*, 397 U.S. 112, 114-15 (1970).

*See also United States v. Marion*, 404 U.S. 307, 322 (1971) (statutes of limitation "provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced"). Because of these important considerations, statute of limitations are "to be liberally interpreted in favor of repose." *Toussie*, 397 U.S. at 115.

Since the money was taken from an armored truck on or about November 20, 2013 in Missoula and the government intends to argue that Mr. Herrin was the thief Mr. Herrin should have been indicted for a separate violation of federal law for bank theft of the armored truck. *See* 18 U.S.C. §2113(b). *See United States v. King*, 178 F.3d 1376, 1377 (11th Cir. 1999); *United States v. Mafnas*, 701 F.2d 83, 85 (9th Cir. 1983) (armored car theft by armored car driver is theft from bank and covered by 18 U.S.C. §2113(b)). Moreover, the government's failure to charge a separate violation of §2113(b) results in defendant having gained the "right not to be tried" for robbing the truck and any evidence the government intends to proffer at trial to prove that contention ought to be excluded pretrial. *See e.g. Midland Asphalt Corp. v. United States*, 489 U.S. 794, 802 (1989) (recognizing that lack of grand jury indictment gives rise to a constitutional right not to be tried).

Federal Defenders of Montana
50 West 14th Street, Suite 1
Helena, Montana 59601
(406) 449-8381

12

**(D)** *If defendant is not on trial for bank theft evidence tending to show defendant was the thief is not relevant.*

Assuming the Court acts favorably on this motion it would be error to admit evidence tending to show that defendant was the thief. Evidence is relevant under Fed. R. Evid. 401 if it tends to make a fact more or less probable and is of consequence in determining the action. If there is no trial casting defendant as the thief any evidence of defendant's travels to Las Vegas, banking activities or statements regarding the ease with which armored trucks can be broken into would be irrelevant and/or more prejudicial than probative under Rule 403. Furthermore, under the rule set forth in *Opper v. United States*, 348 U.S. 84 (1954) defendant's statements would be considered inadmissible, until the proof shows that the criminal conduct at the core of the offense the government is trying to prove actually occurred.

The *corpus delicti*—or "*Opper*"—rule was developed in the context of criminal prosecutions and their attendant heightened protections for defendants. *Opper* imposes two evidentiary requirements before a defendant's confession/admission can be used as the basis for conviction. First, the government "must introduce sufficient evidence to establish that the criminal conduct at the core of the offense has occurred." *United States v. Lopez–Alvarez*, 970 F.2d 583, 592 (9th Cir.1992). This foundation ensures that convictions are not based on confessions to

Federal Defenders of Montana
50 West 14th Street, Suite 1
Helena, Montana 59601
(406) 449-8381

13

nonexistent crimes. *Id.* "Second, [the government] must introduce independent evidence tending to establish the trustworthiness of the admissions, unless the confession is, by virtue of special circumstances, inherently reliable." *Id.* This additional requirement ensures that defendants are not convicted for making false confessions to crimes committed by others. "[O]nly when both [of] these prongs are satisfied will a jury be 'sufficiently justified' in believing the truth of a criminal admission; only then will the evidence be deemed sufficient in a case in which the conviction depends in part on such admission." *Id.*

### III. CONCLUSION

WHEREFORE defendant prays the Court will consider his motion (ECF No. 13), hold a hearing if necessary and grant defendant appropriate relief.

RESPECTFULLY SUBMITTED this 12th day of December, 2018.

 /s/ Michael Donahoe\
MICHAEL DONAHOE\
Deputy Federal Defender\
Federal Defenders of Montana\
Counsel for Defendant

**EXCERPTS OF RECORD - Page 126**

MICHAEL DONAHOE
Deputy Federal Defender
Federal Defenders of Montana
Helena Branch Office
50 West 14th Street, Suite 1
Helena, Montana 59601
Phone: (406) 449-8381
Fax: (406) 449-5651
   Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>vs.<br><br>JOHN GREGORY ALEXANDER HERRIN,<br><br>   Defendant. | **CR 16-15-H-SEH**<br><br><br>**DEFENDANT'S OPPOSED MOTION TO SUPPRESS EVIDENCE FED. R. CRIM. P. RULE 12(b)(3)(C)** |

## I.  MOTION

COMES NOW the defendant (Mr. Herrin) and moves the Court for a pretrial ruling suppressing any and all evidence that the government intends to put before the jury showing that Mr. Herrin was the individual who stole, converted or embezzled money from GardaWorld, an international company that provides

armored truck services to FDIC banks and other businesses throughout the world, including Montana.

## II.  CONTEXT FOR THIS MOTION

Following is a summary of the discovery the government has provided thus far:

**(A)** GardaWorld is an armored truck company with offices in Helena, Montana. Every Wednesday the company's OTR (over the road) truck drives to Missoula and Kalispell where it makes currency exchanges with local route trucks. This case involves an OTR truck that left Helena on November 20, 2013, and made a currency transfer to a Missoula route truck in Missoula. The OTR truck made about five additional stops before arriving in Kalispell to make a transfer to a Kalispell route truck. (Bates pg. 235).[1] It was there that three ATM load bags, intended for that transfer, were determined missing. (Bates pg. 236). The three ATM load bags contained a total of $390,000.

**(B)** The driver of the Missoula route truck (not the defendant) turned in his resignation November 15, 2013, effective November 28, 2013. (Bates pg. 238).

**(C)** The ATM load bags for Kalispell were allegedly properly prepared by GardaWorld's Helena Service Manager on November 19, 2013. (Bates pg. 227).

---

[1] All citations labeled Bates are in reference to the United States Discovery.

**(D)** At 3:50 a.m., on November 20, 2013, the OTR truck was loaded for the day by the driver and messenger (the passenger employee). (Bates pg. 228). The OTR Truck left Helena at 4:30 a.m. and arrived at Missoula 6:30 a.m. (Bates pg. 229). The truck stopped at a local convenience store, and then proceeded to the First Interstate Bank on Front Street, where it rendezvoused with a Missoula truck. The driver of the Missoula truck had previously handed in his official resignation, and the messenger was new to the route that day. (Bates pg. 232).

**(E)** After completing the transfer at 8:51 a.m., the Missoula truck began its route, which include making a transfer to another Missoula truck. The OTR truck finished servicing the First Interstate Bank and then serviced three other banks before rendezvousing with the Kalispell truck, at 12:00 p.m., in Kalispell. It was there that three ATM load bags were discovered missing. (Bates pg. 230).

**(F)** At 1:45 p.m. the driver of the OTR truck contacted the Missoula trucks inquiring as to whether they inadvertently received Kalispell's missing ATM load bags. At 5:00 p.m. the employees from the OTR truck met with the employees of other Missoula route trucks at the GardaWorld Missoula branch office. (Bates pg. 238). No one knew what happened to the missing money.

**(G)** GardaWorld sent two internal investigators to Montana who began interviewing GardaWorld employees on November 23, 2013. (Bates pg. 219). The

Federal Defenders of Montana
50 West 14th Street, Suite 1
Helena, Montana 59601
(406) 449-8381

3

driver of the Missoula truck that accepted a transfer from the OTR truck, who had already given his resignation, refused to be interviewed and presented the investigators with his attorney's business card. (Bates pg. 226).

**(H)** The Missoula truck had shown "**a number of offages**" in the past. The driver of the OTR truck could not be certain that he did not accidentally transfer the Kalispell bag to the Missoula truck. It is the speculation of the OTR driver that the money must have gone missing during the Missoula transfer. (Bates pg. 36).

**(I)** The investigators shared their findings with Missoula law enforcement. (Bates pg. 220). On December 3, 2013, a Missoula Detective obtained a Search Warrant for the cell phone records of the driver of the Missoula route truck. The Application for that Search Warrant stated that the messenger of the Missoula route truck accidently accepted the 3 Kalispell load bags from the OTR truck. (Bates pg. 323). The conclusion of the GardaWorld internal investigation was that the driver of the Missoula route truck discovered the mishandled money and committed a crime of opportunity.

**(J)** Defendant, John Herrin, was a driver for GardaWorld, living in Helena, when the money went missing. Mr. Herrin did not drive a route on the day the money went missing, but in Helena did load bags of coins into his truck for the next day, between 5:21 p.m. and 6:14 p.m., which was common practice. (Bates pg. 239).

**(K)** Mr. Herrin vacationed in Las Vegas between January 3, 2014 and January 5, 2014. On January 07, 2014 Mr. Herrin deposited a $123,500 check from Aria Resort and Casino, and $37,370 in cash, into his Wells Fargo Account in downtown Helena. (Bates pg. 3).

**(L)** Mr. Herrin made a second trip to Las Vegas between January 24, 2014 and November 27, 2014. On January 30, 2014 Mr. Herrin deposits numerous $20 bills, totaling $120,000, into his Wells Fargo Account in downtown Helena. (USA age 3).

**(M)** On February 12, 2014, a Missoula Detective wrote to a Captain of the Helena Police Department advising that she was aware of these activity on the bank account of Mr. Herrin. (Bates pg. 333). Based on Mr. Herrin's banking activities the government shifted its theory for blame from the driver of the Missoula truck to Mr. Herrin. Mr. Herrin was indicted in this Court on October 26, 2016. Notably, Mr. Herrin has neither been charged nor convicted in any court with stealing the money.

### III. GROUNDS FOR THIS MOTION

**(A)** In satisfaction of Rule 47(b) Fed. R. Crim. P. defense counsel states the following grounds for this motion:

> Since discovery shows that the government intends to cast Mr. Herrin before the jury as the thief of the money, Count I-XIII of the Indictment are what we term compound offenses. In other words, Counts I-XIII of necessity will require proof beyond a reasonable doubt at trial, not only

that Mr. Herrin moved money in interstate commerce and that Mr. Herrin's illegally gained "proceeds" were processed through his bank accounts (Counts II-XIII); but also that Mr. Herrin stole the money from the armored car, which is a violation of 18 U.S.C. §2113(b) with the following elements:

(1) Mr. Herrin carried away in excess $1000;

(2) The money belonged to or was in the custody, care or control of an FDIC bank;

(3) Mr. Herrin's intent was to steal the money.

*See United States v. King*, 178 F.3d 1376, 1377 (11th Cir. 1999); *United States v. Mafnas*, 701 F.2d 83, 85 (9th Cir. 1983) (armored car theft by armored car driver is theft from bank and covered by 18 U.S.C. §2113(b)).

**(B)** Accordingly, it is Mr. Herrin's contention that any trial evidence intended by the government to show that Mr. Herrin violated 18 U.S.C. §2113(b) ought to be suppressed pretrial because the government failed to indict Mr. Herrin for stealing the money as required by the grand jury clause in the Fifth Amendment to the U.S. Constitution. Furthermore, under 18 U.S.C. §3282 "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found . . . within five years next after such offense shall have been committed" *Id.* (emphasis added). Thus, since the discovery shows that the money in this case went missing from the armored truck in or around November 20, 2013, that charge (a violation of 18 U.S.C. §2113(b)) cannot be tried under the present Indictment for

Federal Defenders of Montana
50 West 14th Street, Suite 1
Helena, Montana 59601
(406) 449-8381

6

**EXCERPTS OF RECORD - Page 132**

that offense because it is legally a separate offense under controlling case law and 18 U.S.C. §3282(a). Consequently, any evidence tending to show that Mr. Herrin was the thief ought to be ruled inadmissible before trial.

**(C)** Assuming the Court rules favorably on ground (B) set forth above defendant, Mr. Herrin, further contends that Mr. Herrin's out of court statements, banking activities and travels to Las Vegas would be irrelevant at any trial on the Indictment before a jury. This follows because where the Court has barred the government from contending that the defendant was the actual bank theft it would be more prejudicial than probative under Rule 403 Fed. R. Evid. to allow the jury to pile inference upon inference without foundation. *See e.g. United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998) (conviction cannot be upheld by piling inference upon inference). Absent a trial wherein the government contends defendant was the actual thief there would be no basis or foundation to infer that Mr. Herrin's statements, banking activities or travels involved the same money taken by the robber of the GardaWorld armored truck.

### IV.  GOVERNMENT'S POSITION

Assistant United States Attorney Tim Racicot states that the government opposes this motion and will respond in writing under the terms of the Court's scheduling order.

Federal Defenders of Montana
50 West 14th Street, Suite 1
Helena, Montana 59601
(406) 449-8381

7

## V.  CONCLUSION

WHEREFORE, based on this motion and the brief that supports it (ECF No.

14) suppression of any evidence tending to show defendant was the thief of the

money ought to be granted

RESPECTFULLY SUBMITTED this 12th day of December, 2018.

 /s/ Michael Donahoe_____
MICHAEL DONAHOE
Deputy Federal Defender
Federal Defenders of Montana
Counsel for Defendant

Federal Defenders of Montana
50 West 14th Street, Suite 1
Helena, Montana 59601
(406) 449-8381

**EXCERPTS OF RECORD - Page 134**

**TIMOTHY J. RACICOT**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, MT 59807**
**105 E. Pine, 2d Floor**
**Missoula, MT 59802**
**Phone:** (406) 542-8851
**Fax:** (406) 542-1476
**E-mail:** tim.racicot2@usdoj.gov



FILED

OCT 2 6 2016

Clerk, U.S District Court
District Of Montana
Missoula

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CR 16- 15 -H- SEH |
| **Plaintiff,** | **INDICTMENT** |
| vs. | **INTERSTATE TRANSPORTATION OF STOLEN PROPERTY** (Count I) Title 18 U.S.C. § 2314 (Penalty: Ten years imprisonment, $250,000 fine, and three years supervised release) |
| **JOHN GREGORY ALEXANDER HERRIN,** | |
| **Defendant.** | **MONEY LAUNDERING** (Counts II-XIII) Title 18 U.S.C. § 1957 (Penalty: Ten years imprisonment, $250,000 fine, and three years supervised release) |

1

**EXCERPTS OF RECORD - Page 135**

| | **ATTEMPTED WITNESS TAMPERING** (Count XIV) Title 18 U.S.C. § 1512(b)(3) (Penalty: 20 years imprisonment, $250,000 fine, and three years supervised release) |
|---|---|

THE GRAND JURY CHARGES:

## COUNT I

On or about January 3, 2014, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, did unlawfully transport in interstate commerce from Montana to Nevada stolen money of a value of $5,000 or more, knowing the same to have been stolen, in violation of 18 U.S.C. § 2314.

## COUNT II

On or about January 7, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN deposited $160,870 into his Wells Fargo Bank checking account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

2

## COUNT III

On or about January 9, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN deposited $26,000 into his Ameritrade account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

## COUNT IV

On or about January 21, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN withdrew $30,000 from his Wells Fargo Bank checking account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

COUNT V

On or about January 22, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN withdrew $30,000 from his Wells Fargo Bank checking account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

COUNT VI

On or about January 30, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN deposited $120,000 into his Wells Fargo Bank checking account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

4

## COUNT VII

On or about January 31, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN transferred $60,000 from his Wells Fargo Bank checking account to his Wells Fargo Bank saving account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

## COUNT VIII

On or about February 4, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN transferred $34,000 from his Wells Fargo Bank checking account into his Ameritrade account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

5

## COUNT IX

On or about March 4, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN transferred $15,000 from his Wells Fargo Bank savings account to his Wells Fargo Bank checking account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

## COUNT X

On or about March 6, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN transferred $25,000 from his Wells Fargo Bank savings account to his Wells Fargo Bank checking account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

## COUNT XI

On or about March 7, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN transferred $23,000 from his Wells Fargo Bank checking account to his Ameritrade account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

## COUNT XII

On or about June 5, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN transferred $25,000 from his US Bank account to his Ameritrade account, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

**EXCERPTS OF RECORD - Page 141**

## COUNT XIII

On or about July 15, 2014, at Helena, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly engaged in a monetary transaction by, through, and to a financial institution, with criminally derived property of a value greater than $10,000, affecting interstate commerce, that is, JOHN GREGORY ALEXANDER HERRIN transferred $13,000 from his Ameritrade account to his account at Rocky Mountain Credit Union, such money having been derived from a specified unlawful activity, that being interstate transportation of stolen property described in Count I, all in violation of 18 U.S.C. § 1957.

## COUNT XIV

In approximately March 2014, in the State and District of Montana, the defendant, JOHN GREGORY ALEXANDER HERRIN, knowingly attempted to corruptly persuade another person, with the intent to hinder, delay, and prevent the communication of information relating to the commission of a federal offense to a law enforcement officer, and committed a substantial step toward corruptly persuading that other person, in violation of 18 U.S.C. § 1512(b)(3).

///

///

///

8

**EXCERPTS OF RECORD - Page 142**

A TRUE BILL.

Foreperson signature redacted.  Original document filed under seal.

Foreperson signature

_____
FOREPERSON

_____
MICHAEL W. COTTER
United States Attorney

_____
JOSEPH E. THAGGARD
Criminal Chief Assistant U.S. Attorney

WARRANT ✔_____

BAIL _____

CRM/SUM _____

9

**EXCERPTS OF RECORD - Page 143**

John Gregory Alexander Herrin

3402 W Babcock St.

Bozeman, MT 59718

(406)437-2291

BYTHERGIG@PROTON.ME

Petitioner Pro Se

**FILED**

FEB 0 5 2026

Clerk, U.S. Courts
District of Montana
Butte Division

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>John Gregory Alexander Herrin<br><br>Petitioner. | Case No. 6:16-cr-00015-SEH<br><br>MEMORANDUM IN SUPPORT<br><br>OF NOTICE OF APPEAL AND<br><br>NOTICE OF CONTINUING UNRESOLVED<br><br>JUDICIAL DEFECT AND RESULTING ONGOING<br><br>CONSTITUTIONAL HARM FOLLOWING DENIAL<br><br>OF PETITION FOR WRIT OF CORAM NOBIS |

COMES NOW Defendant-Appellant, John Gregory Alexander Herrin, and enters into the record a Memorandum in Support of Notice of Appeal and Notice of Continuing Unresolved Judicial Defect and Resulting Ongoing Constitutional Harm Follwoing Denial of Petition for Writ of Coram Nobis.

This appeal records that a mandatory judicial determination required as a condition precedent to the admission and use of evidence was never performed. The law requires that determination to be rendered, either affirmatively or to the contrary, before proceedings may lawfully continue. The absence of the determination was identified and placed before the court prior to trial and

PAGE 1 / 6

**EXCERPTS OF RECORD - Page 144**

reiterated thereafter. No court performed the determination, no court identified where it exists in the record, and no court held that it was unnecessary. Proceedings nevertheless continued through trial, appeal, post-judgment review, and collateral proceedings. After notice of the omission, proceedings continued without cure. From that point forward, the proceedings were not conducted lawfully as a matter of law, and all subsequent actions occurred in the absence of the required judicial predicate.

## I. JURISDICTIONAL STATEMENT

This appeal arises from the District Court's denial of Defendant—Appellant's Petition for Writ of Coram Nobis, which constitutes a final post-judgment order.

A timely Notice of Appeal was filed.

This Court has appellate jurisdiction.

## II. ISSUE PRESENTED

Whether criminal proceedings may lawfully continue where a threshold judicial determination required before the admission and use of evidence was raised, noticed, and never performed, and where no court has identified where such determination exists in the record.

## III. STATEMENT OF THE CASE (PROCEDURAL)

1. Prior to trial, Defendant formally raised a threshold procedural defect requiring judicial resolution before proceedings could lawfully continue.

PAGE 2 / 6

2. The defect concerned the absence of a required judicial determination that functioned as a predicate condition to the admission and use of evidence.

3. The defect was presented to the District Court by written motion and supporting briefing.

4. The District Court denied relief without performing the required determination.

5. The District Court did not rule affirmatively or negatively on the existence of the predicate condition.

6. The District Court did not hold that the determination was unnecessary.

7. Proceedings continued without the identified determination ever having been made.

8. Evidence was admitted and relied upon despite the unresolved predicate issue.

9. Trial proceeded to verdict and judgment without the required determination having been performed.

10. The unresolved defect was raised on direct appeal.

11. No appellate court identified where in the record the threshold determination was made.

12. No appellate court held that the determination was not required.

13. Defendant thereafter sought coram nobis relief for the limited purpose of compelling performance of the judicial determination omitted from the original proceedings.

14. The Petition for Writ of Coram Nobis did not seek reweighing of evidence, reconsideration of factual findings, or substitution of judgment.

15. The Petition sought only completion of a required judicial act that had never occurred.

PAGE 3 / 6

**EXCERPTS OF RECORD - Page 146**

16. The District Court denied the Petition without performing the omitted determination.

## IV. ARGUMENT

Proceedings Continued Without Performance of a Required Judicial Act After Notice:

1. The threshold judicial determination at issue functioned as a necessary predicate to the lawful admission and use of evidence.

2. The determination was required to occur before evidentiary rulings could be meaningfully made.

3. The absence of the determination was identified and placed before the District Court prior to trial.

4. The District Court declined to perform the determination and declined to state that the determination was unnecessary.

5. Proceedings nonetheless continued.

6. Once the predicate determination was left unresolved, subsequent evidentiary rulings lacked a lawful foundation because the condition precedent to their validity had never been satisfied.

7. The unresolved predicate deprived Defendant of the ability to meaningfully challenge admissibility, scope, or relevance of evidence, as such challenges presuppose resolution of the threshold issue.

8. The defect was not cured at trial.

9. The defect was not cured on appeal.

10. The defect remains uncured following denial of coram nobis relief.

11. No court has identified where in the record the omitted determination exists.

EXCERPTS OF RECORD - Page 147

## V. ONGOING CONSTITUTIONAL HARM

1. The failure to perform the threshold judicial determination deprived Defendant of the ability to present a complete defense.

2. The continuation of proceedings without resolving the defect rendered subsequent rulings incapable of lawful foundation.

3. Defendant was subjected to trial, conviction, and continuing legal consequences without the procedural safeguard required at the outset.

4. The harm resulting from the unresolved defect is ongoing and has not been cured by any subsequent proceeding.

5. Each continuation, denial, or affirmance issued after notice of the defect constitutes an independent continuation of the original procedural deprivation.

## VI. RELIEF REQUESTED

Defendant—Appellant respectfully requests that this Court:

1. Identify where in the record the threshold judicial determination was performed; or

2. Remand the matter with instructions that the District Court perform the threshold judicial determination that was omitted.

PAGE 5 / 6

**EXCERPTS OF RECORD - Page 148**

## VII. CONCLUSION

This appeal does not ask this Court to reweigh evidence, resolve factual disputes, or reconsider matters of trial strategy. It asks only whether a required judicial act was ever performed, and if not, whether proceedings may lawfully continue in its absence.

Respectfully submitted,

/s/ John Gregory Alexander Herrin

Defendant—Appellant, Pro Se

February 05, 2026

PAGE 6 / 6

John Gregory Alexander Herrin

3402 W Babcock St.

Bozeman, MT 59718

(406)437-2291

BYTHERGIG@PROTON.ME

Petitioner Pro Se

**FILED**

FEB 05 2026

Clerk, U.S. Courts
District of Montana
Butte Division

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>John Gregory Alexander Herrin<br><br>Petitioner. | Case No. 6:16-cr-00015-SEH<br><br>NOTICE OF APPEAL<br><br>AND<br><br>NOTICE OF CONTINUING UNRESOLVED<br><br>JUDICIAL DEFECT AND RESULTING ONGOING<br><br>CONSTITUTIONAL HARM FOLLOWING DENIAL<br><br>OF PETITION FOR WRIT OF CORAM NOBIS |

COMES NOW Defendant—Appellant, John Gregory Alexander Herrin, and hereby gives notice of appeal from the District Court's order denying his Petition for Writ of Coram Nobis.

This Notice is further submitted to place on the record the continued existence of an unresolved judicial defect, notice of which was provided prior to trial, reiterated through post-conviction proceedings, and remains unaddressed following denial of coram nobis relief, together with the continuing constitutional harm resulting from that failure.

PAGE 1 / 4

**EXCERPTS OF RECORD - Page 150**

## I. NOTICE OF UNRESOLVED DEFECT

1. Prior to trial, Defendant formally raised a threshold procedural defect requiring judicial resolution before the proceedings could lawfully continue.

2. The defect concerned the absence of a required judicial determination that functioned as a predicate condition to the admission and use of evidence.

3. The defect was presented to the District Court by written motion and supporting briefing.

4. The District Court denied the motion without performing the required determination.

5. The District Court did not rule affirmatively or negatively on the existence of the predicate condition.

6. The District Court did not hold that the determination was unnecessary.

7. Proceedings continued without the identified determination ever having been made.

## II. CONTINUATION OF PROCEEDINGS AFTER NOTICE

8. Following notice of the defect, evidence was admitted and relied upon without the unresolved threshold issue being addressed.

9. Trial proceeded to verdict and judgment without the required determination having been performed.

10. The unresolved defect was raised on appeal.

11. No appellate court identified where in the record the threshold determination was made.

12. No appellate court held that the determination was not required.

PAGE 2 / 4

**EXCERPTS OF RECORD - Page 151**

## III. CORAM NOBIS DENIAL

13. Defendant thereafter sought coram nobis relief for the limited purpose of compelling performance of the judicial determination omitted from the original proceedings.

14. The Petition for Writ of Coram Nobis did not seek reweighing of evidence, reconsideration of factual findings, or substitution of judgment.

15. The Petition sought only completion of a required judicial act that had never occurred.

16. The District Court denied the Petition without performing the omitted determination.

## IV. ONGOING CONSTITUTIONAL HARM

17. The failure to perform the threshold judicial determination deprived Defendant of the ability to meaningfully challenge the admissibility, scope, or relevance of evidence.

18. Once the predicate issue was left unresolved, Defendant was deprived of the ability to present a complete defense to the matters presented at trial.

19. The continuation of proceedings without resolving the defect rendered subsequent evidentiary rulings incapable of lawful foundation.

20. As a result, Defendant was subjected to trial, conviction, and continuing legal consequences without the procedural safeguards required at the outset.

21. The harm resulting from the unresolved defect is ongoing and has not been cured by any subsequent proceeding.

PAGE 3 / 4

22. Each continuation, denial, or affirmance issued after notice of the defect constitutes an independent continuation of the original due process violation.

## V. CONTINUING STATUS

23. As of the filing of this Notice, no court has performed the threshold judicial determination identified prior to trial.

24. As of the filing of this Notice, no court has identified where in the record such determination exists.

25. As of the filing of this Notice, Defendant continues to suffer ongoing legal consequences flowing from proceedings conducted without resolution of the defect.

**This Notice is submitted to memorialize:**

(a) the existence of an unresolved judicial defect;

(b) notice provided to the courts; and

(c) the continuing constitutional harm resulting from failure to correct the defect.

Respectfully submitted,

/s/ John Gregory Alexander Herrin

Defendant—Appellant, Pro Se

February 05, 2026

PAGE 4 / 4

**EXCERPTS OF RECORD - Page 153**

John Gregory Alexander Herrin

3402 W Babcock St.

Bozeman, MT 59718

(406)437-2291

BYTHERGIG@PROTON.ME

Petitioner Pro Se

**FILED**

FEB 0 5 2026

Clerk, U.S. Courts
District of Montana
Butte Division

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  vs.<br><br>John Gregory Alexander Herrin<br><br>  Petitioner. | ) Case No. 6:16-cr-00015-SEH<br>)<br>)<br>)<br>)<br>)<br>) CERTIFICATE OF SERVICE<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

COMES NOW, John Gregory Alexander Herrin ("Petitioner"), Pro Se, respectfully notifies the court of Service upon the United States of America ("Plaintiff").

PETITIONER CERTIFIES, that on February 05, 2026, Petitioner personally hand-delivered a true and correct copy of the foregoing Notice of Appeal, Memorandum in Support, Appendix A, and Public Statement to the Office of the United States Attorney for the District of Montana, at the following address:

PAGE 1 / 2

**EXCERPTS OF RECORD - Page 154**

United States Attorney's Office - Helena Branch

901 Front St.

Suite 1100

Helena, MT

59626as f

(406) 457-5120


Executed on February 05, 2026.


/s/ John Gregory Alexander Herrin

PAGE 2 / 2

APPEAL

# U.S. District Court
## District of Montana (Helena)
## CRIMINAL DOCKET FOR CASE #: 6:16–cr–00015–BMM–1

Case title: USA v. Herrin

Date Filed: 10/26/2016

Date Terminated: 06/16/2020

Assigned to: Judge Brian Morris

Appeals court case numbers:
19–30002 Ninth Circuit, 20–30130
Ninth Circuit, 26–761

### Defendant (1)

**John Gregory Alexander Herrin**
*TERMINATED: 06/16/2020*

represented by

**John Gregory Alexander Herrin**
3402 W Babcock St.
Bozeman, MT 59718
PRO SE

**Anthony R. Gallagher FD**
FEDERAL DEFENDERS OF MONTANA –
GREAT FALLS
Office Headquarters, Great Falls
104 2nd Street South, Suite 301
Great Falls, MT 59401–3645
406–727–5328
Fax: 727–4329
Email: anthony_gallagher@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community
Defender Appointment*

**Michael Donahoe**
FEDERAL DEFENDERS OF MONTANA –
HELENA
50 West 14th Street, Suite 300
Helena, MT 59601–3332
406–449–8381
Fax: 406–449–5651
Email: michael_donahoe@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community
Defender Appointment*

**Joslyn M. Hunt**
FEDERAL DEFENDERS OF MONTANA –
HELENA
50 West 14th Street, Suite 300
Helena, MT 59601–3332
406–449–8381
Fax: 406–449–5651
Email: joslyn_hunt@fd.org
*ATTORNEY TO BE NOTICED*

### Pending Counts

18:2314 INTERSTATE
TRANSPORTATION OF STOLEN

### Disposition

Defendant is sentenced to the BOP for a term of 30
months to run concurrently as to each count;

**EXCERPTS OF RECORD - Page 156**

| | |
|---|---|
| PROPERTY<br>(1) | followed by 36 months supervision to run concurrent. Standard and special conditions imposed. Special assessment of $900. No monetary fine imposed. |
| 18:1957 MONEY LAUNDERING<br>(2–5) | Defendant is sentenced to the BOP for a term of 30 months to run concurrently as to each count; followed by 36 months supervision to run concurrent. Standard and special conditions imposed. Special assessment of $900. No monetary fine imposed. |
| 18:1957 MONEY LAUNDERING<br>(8) | Defendant is sentenced to the BOP for a term of 30 months to run concurrently as to each count; followed by 36 months supervision to run concurrent. Standard and special conditions imposed. Special assessment of $900. No monetary fine imposed. |
| 18:1957 MONEY LAUNDERING<br>(11–13) | Defendant is sentenced to the BOP for a term of 30 months to run concurrently as to each count; followed by 36 months supervision to run concurrent. Standard and special conditions imposed. Special assessment of $900. No monetary fine imposed. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:1957 MONEY LAUNDERING<br>(6–7) | Dismissed: found to be not guilty after jury trial |
| 18:1957 MONEY LAUNDERING<br>(9–10) | Dismissed: found to be not guilty after jury trial |
| 18:1512(b)(3) ATTEMPTED WITNESS TAMPERING<br>(14) | Dismissed: found to be not guilty after jury trial |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Plaintiff**

| | | |
|---|---|---|
| USA | represented by | **Timothy J. Racicot**<br>U.S. ATTORNEY'S OFFICE – MISSOULA<br>PO Box 8329<br>Missoula, MT 59807<br>406–542–8851<br>Fax: 542–1476<br>Email: tim.racicot2@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Retained*<br><br>**Michael A. Kakuk** |

**EXCERPTS OF RECORD - Page 157**

U.S. ATTORNEY'S OFFICE – HELENA
Paul G. Hatfield United States Courthouse
901 Front Street
Suite 1100
Helena, MT 59626
406–457–5262
Fax: 406–457–5130
Email: michael.kakuk@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/26/2016 | 1 | SEALED INDICTMENT as to John Gregory Alexander Herrin (1) count(s) 1, 2–13, 14. (HEG, ) Modified on 10/28/2016 to correct file date(HEG, ). (Entered: 10/28/2016) |
| 10/26/2016 | 2 | Redacted Indictment as to John Gregory Alexander Herrin. (HEG, ) Modified on 10/28/2016 to correct file date (HEG, ). (Entered: 10/28/2016) |
| 10/26/2016 | 3 | Criminal Cover Sheet filed by USA regarding the 1 Indictment (Sealed) as to John Gregory Alexander Herrin. (HEG, ) Modified on 10/28/2016 to correct date filed(HEG, ). (Entered: 10/28/2016) |
| 11/28/2018 | | Set/Reset Hearings as to John Gregory Alexander Herrin Arraignment set for 11/29/2018 at 02:00 PM in Missoula, MT before Magistrate Judge Jeremiah C. Lynch. Initial Appearance set for 11/29/2018 at 02:00 PM in Missoula, MT before Magistrate Judge Jeremiah C. Lynch. (TXB) (Entered: 11/28/2018) |
| 11/29/2018 | | Case unsealed as to John Gregory Alexander Herrin (APP) (Entered: 11/29/2018) |
| 11/29/2018 | 5 | MINUTE ENTRY for proceedings held before Magistrate Judge Jeremiah C. Lynch: Initial Appearance and Arraignment as to John Gregory Alexander Herrin (1) Count 1,2–13,14 held on 11/29/2018; AUSA Cyndee Peterson appeared for the govt, FD Michael Donahoe appointed and appeared w/ in custody defendant; Read charges, penalty, rights w/ defendant understanding the same; Defendant reviewed indictment w/ counsel prior to court and waived reading; Plea entered by John Gregory Alexander Herrin (1) Not Guilty; PPTC set for 11/30/18 at 1:30 p.m. w/ Judge Haddon; Defendant released with conditions; Hearing commenced at 2:47 p.m. and concluded at 2:55 p.m. (Court Reporter FTR Gold) (USPO: M. Henkel), (Hearing held in Missoula) (APP) Modified on 11/30/2018 to reflect correcting time of PPTC hearing. Regenerated NEF (APP). (Entered: 11/29/2018) |
| 11/29/2018 | 6 | TEXT Order Setting as to John Gregory Alexander Herrin: Pretrial Conference set for 11/30/2018 at 01:30 PM in Helena, MT before Judge Sam E Haddon. Signed by Magistrate Judge Jeremiah C. Lynch on 11/29/2018. (APP) (Entered: 11/29/2018) |
| 11/29/2018 | 7 | ORDER Setting Conditions of Release as to John Gregory Alexander Herrin. Signed by Magistrate Judge Jeremiah C. Lynch on 11/29/2018. (APP) (Entered: 11/29/2018) |
| 11/30/2018 | 8 | SCHEDULING ORDER as to John Gregory Alexander Herrin. Discovery due by 12/3/2018. Motions due by 12/12/2018. Plea Agreement due by 1/4/2019. Jury Trial set for 1/22/2019 at 08:45 AM in Helena, MT before Judge Sam E Haddon. Signed by Judge Sam E Haddon on 11/30/2018. (HEG) Modified on 12/19/2018 **Tina Brilz to report for the trial** (HEG). (Entered: 11/30/2018) |
| 11/30/2018 | | MINUTE ENTRY for proceedings held before Judge Sam E Haddon: Telephone Conference as to John Gregory Alexander Herrin held on 11/30/2018 (LJF) (Entered: 11/30/2018) |
| 11/30/2018 | 9 | Arrest Warrant Returned Executed on 11/29/2018 in case as to John Gregory Alexander Herrin. (HEG) (Entered: 11/30/2018) |
| 11/30/2018 | 10 | Arrest Warrant Returned Executed on 11/27/18 in case as to John Gregory Alexander Herrin. (APP) (Entered: 11/30/2018) |
| 11/30/2018 | 11 | CJA 23 Financial Affidavit by John Gregory Alexander Herrin signed on 11/29/18 (APP) (Entered: 11/30/2018) |

| | | |
|---|---|---|
| 11/30/2018 | 12 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to John Gregory Alexander Herrin, Reimbursement information: Defendant is not required to reimburse the Court. Signed by Magistrate Judge Jeremiah C. Lynch on 11/29/2018. (APP) (Entered: 11/30/2018) |
| 12/12/2018 | | Terminate Deadlines and Hearings as to John Gregory Alexander Herrin: Preliminary Pretrial Conference and Discovery Deadlines termed as past. (HEG) (Entered: 12/12/2018) |
| 12/12/2018 | 13 | MOTION to Suppress by John Gregory Alexander Herrin. (Donahoe, Michael) (Entered: 12/12/2018) |
| 12/12/2018 | 14 | BRIEF/MEMORANDUM in Support by John Gregory Alexander Herrin re 13 MOTION to Suppress (Donahoe, Michael) (Entered: 12/12/2018) |
| 12/12/2018 | 15 | SEALED NOTICE *OF ALIBI RULE 12.1 FED. R. CRIM. P.* by John Gregory Alexander Herrin (Donahoe, Michael) Modified on 12/18/2018 TO SEAL. PLEASE REFERENCE REDACTED NOTICE 19 (HEG). (Entered: 12/12/2018) |
| 12/14/2018 | 16 | Unopposed MOTION to Withdraw Document *NOTICE OF ALIBI 12.1 FED. R. CRIM. P. AND MOTION TO SUBSTITUTE REDACTED NOTICE OF ALIBI RULE 12.1 FED. R. CRIM. P.* by John Gregory Alexander Herrin. (Donahoe, Michael) (Entered: 12/14/2018) |
| 12/17/2018 | 17 | RESPONSE to Motion by USA as to John Gregory Alexander Herrin re 13 MOTION to Suppress (Racicot, Timothy) (Entered: 12/17/2018) |
| 12/18/2018 | | Terminate Deadlines as to John Gregory Alexander Herrin: Response Deadline 13 termed as filed. (HEG) (Entered: 12/18/2018) |
| 12/18/2018 | 18 | ORDERED:The Motion to Withdraw Unredacted Notice of Alibi and Motion to SubstituteRedacted Notice of Alibi is GRANTED. Undersigned shall file the Redacted Noticeof Alibi with this Court. Signed by Judge Sam E Haddon on 12/18/2018. (HEG) (Entered: 12/18/2018) |
| 12/18/2018 | 19 | NOTICE *REDACTED ALIBI RULE 12.1 FED. R. CRIM. P.* by John Gregory Alexander Herrin (Donahoe, Michael) (Entered: 12/18/2018) |
| 12/19/2018 | 20 | REPLY TO RESPONSE to Motion by John Gregory Alexander Herrin re 13 MOTION to Suppress (Donahoe, Michael) (Entered: 12/19/2018) |
| 12/26/2018 | 21 | ORDER Setting Hearing on Motion 13 MOTION to Suppress: as to John Gregory Alexander Herrin. Motion Hearing set for 1/10/2019 at 10:00 AM in Helena, MT before Judge Sam E Haddon. Signed by Judge Sam E Haddon on 12/26/2018. (HEG) Modified on 12/27/2018 to correct date to 2019 (HEG). (Entered: 12/26/2018) |
| 12/27/2018 | | Set Hearing as to John Gregory Alexander Herrin Motion Hearing set for 1/10/2019 at 10:00 AM in Helena, MT before Judge Sam E Haddon. (HEG) Modified on 12/28/2018 **Laurie Crutcher to report** (HEG). (Entered: 12/27/2018) |
| 12/31/2018 | 22 | Proposed Jury Instructions *Government's Proposed* by USA as to John Gregory Alexander Herrin (Attachments: # 1 Supplement Clean Version) (Racicot, Timothy) (Entered: 12/31/2018) |
| 12/31/2018 | 23 | Proposed Verdict Form *(Government's Proposed)* by USA as to John Gregory Alexander Herrin (Racicot, Timothy) (Entered: 12/31/2018) |
| 01/07/2019 | 26 | STRICKEN per Order 30 . TRIAL BRIEF by John Gregory Alexander Herrin (Attachments: # 1 Supplement Grand Jury Transcript) (Donahoe, Michael) Modified on 1/8/2019 to add text and seal (HEG). (Entered: 01/07/2019) |
| 01/07/2019 | 27 | Proposed Jury Instructions *SUPPLEMENTAL (WORKING COPY)* by John Gregory Alexander Herrin (Attachments: # 1 Proposed Jury Instructions – Clean Copy) (Donahoe, Michael) (Entered: 01/07/2019) |
| 01/07/2019 | 28 | MOTION for Leave to File Under Seal, MOTION TO SEAL TRIAL BRIEF ATTACHMENT re 26 Trial Brief by John Gregory Alexander Herrin. (Attachments: # 1 Text of Proposed Order) (Donahoe, Michael) (Entered: 01/07/2019) |

**EXCERPTS OF RECORD - Page 159**

| | | |
|---|---|---|
| 01/07/2019 | 29 | TRIAL BRIEF by USA as to John Gregory Alexander Herrin (Racicot, Timothy) (Entered: 01/07/2019) |
| 01/08/2019 | 30 | ORDERED: Defendant's Trial Brief and attachment filed January 7, 2019, (Docs. 26 and 26–1) are STRICKEN for failure to follow L.R. CR 6.2(a) and L.R. CR 55.l(d)(l). Defendant may refile Trial Brief in compliance with the applicable local rules. Signed by Judge Sam E Haddon on 1/8/2019. (HEG) (Entered: 01/08/2019) |
| 01/08/2019 | 31 | TRIAL BRIEF by John Gregory Alexander Herrin (Donahoe, Michael) (Entered: 01/08/2019) |
| 01/08/2019 | 32 | Sealed Document Unredacted *Trial Brief Attachment Grand Jury Transcript* re: 31 Trial Brief by John Gregory Alexander Herrin (Donahoe, Michael) (Entered: 01/08/2019) |
| 01/10/2019 | 33 | MINUTE ENTRY for proceedings held before Judge Sam E Haddon: Motion Hearing as to John Gregory Alexander Herrin held on 1/10/2019 re 13 MOTION to Suppress filed by John Gregory Alexander Herrin. Present in the courtroom are AUSA Timothy Racicot; FD Michael Donahoe with deft (released). Court advises all present of the purpose of todays hearing; reviewing matter to date. Deft witnesses sworn and examined; ex 501 admitted w/out obj. The government has no witnesses. Following a brief recess with all parties present and ready to proceed. Summary arguments are heard following the conclusion of the evidence. The Court is heard on the issues argued. Motion to Dismiss is DENIED as stated. Scheduling order issued discussed. Parties are to file on or before 1/11, each party shall file written explanation for not complying with the scheduling order. Court is in Recess. Hearing commenced at 10:00 and concluded at 12:49 (Court Reporter Tina Brilz) (Attachments: # 1 Dft Ex 501) (Defense Witnesses Sworn and Examined: Arnold Ailer, Detective Stacy Lear, Curtis McAlpin, Jeff Stacey), (Defense Exhibits Admitted: Ex 501), (Law Clerk: E. Anderson), (Hearing held in Helena) (HEG) (Entered: 01/10/2019) |
| 01/10/2019 | 34 | ORDERED: Defendant's Motion to Suppress Evidence is DENIED. Trial remains set for January 22, 2019, at 8:45 a.m. at the Paul G. Hatfield Courthouse, Courtroom I, Helena, Montana. Signed by Judge Sam E Haddon on 1/10/2019. (HEG) (Entered: 01/10/2019) |
| 01/10/2019 | 35 | NOTICE *EXPLANATION IN SATISFACTION OF COURT ORDER* by John Gregory Alexander Herrin (Donahoe, Michael) (Entered: 01/10/2019) |
| 01/10/2019 | 36 | NOTICE OF APPEAL (Interlocutory) by John Gregory Alexander Herrin re 34 Order on Motion to Suppress. (Donahoe, Michael) (Entered: 01/10/2019) |
| 01/10/2019 | 37 | TRANSCRIPT DESIGNATION ORDER FORM by John Gregory Alexander Herrin for proceedings held on 1/10/19 before Judge Haddon, Court reporter Tina Brilz, re 36 Notice of Appeal – Interlocutory Transcript due by 2/11/2019. (Donahoe, Michael) (Entered: 01/10/2019) |
| 01/11/2019 | 38 | USCA Case Number as to John Gregory Alexander Herrin 19–30002 and Time Schedule Order for 36 Notice of Appeal – Interlocutory filed by John Gregory Alexander Herrin. (HEG) (Entered: 01/11/2019) |
| 01/11/2019 | 39 | TRANSCRIPT DESIGNATION ORDER FORM by USA as to John Gregory Alexander Herrin for proceedings held on 1/10/19 before Judge Sam E. Haddon. Court reporter Tina Brilz Transcript due by 1/18/2019. (Racicot, Timothy) (Entered: 01/11/2019) |
| 01/11/2019 | 40 | NOTICE *Of Explanation In Satisfaction Of Court Order* by USA as to John Gregory Alexander Herrin re 33 Motion Hearing. (Racicot, Timothy) (Entered: 01/11/2019) |
| 01/14/2019 | | Terminate Deadlines as to John Gregory Alexander Herrin: Plea agreement deadline termed as past and not filed. (HEG) (Entered: 01/14/2019) |
| 01/14/2019 | | MINUTE ENTRY for proceedings held before Judge Sam E Haddon: Telephone Conference as to John Gregory Alexander Herrin held on 1/14/2019 (LJF) (Entered: 01/31/2019) |
| 01/15/2019 | 41 | BRIEF/RESPONSE TO ORDER by USA as to John Gregory Alexander Herrin (Racicot, Timothy) (Entered: 01/15/2019) |

**EXCERPTS OF RECORD - Page 160**

| 01/15/2019 | 42 | BRIEF/RESPONSE TO ORDER by John Gregory Alexander Herrin (Donahoe, Michael) (Entered: 01/15/2019) |
|---|---|---|
| 01/16/2019 | 43 | ORDERED: The trial set for January 22, 2019, is VACATED, to be reset, if appropriate, upon final resolution of the pending appeal. All time from the date of the filing of the appeal to the date of the filing of the Ninth Circuit's mandate, or disposition is excluded for purposes of the Speedy Trial Act. 18 U.S.C. 3161(h)(1)(C). Upon the filing of the Ninth Circuit's mandate or other disposition, the United States shall file a motion to reset the case for trial, or for such other action as may be appropriate. Signed by Judge Sam E Haddon on 1/16/2019. (HEG) (Entered: 01/16/2019) |
| 01/18/2019 | 44 | TRANSCRIPT of Motion re 37 Appeal Transcript Designation Order Form, 39 Transcript Designation Order Form as to John Gregory Alexander Herrin held on 1/10/2019, before Judge Sam E. Haddon. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER, the Clerks Office or the court reporter NOTICE: A NOTICE OF INTENT TO REQUEST REDACTION MUST BE FILED WITHIN 14 DAYS OF THIS FILING. Contact Court Reporter Tina Brilz, 406–899–8912, tinabrilz@hotmail.com. For further information, please see the Transcript Redaction Procedure and Schedule on the Court Reporters page of our website Redaction Request due 2/8/2019. Redacted Transcript Deadline set for 2/19/2019. Release of Transcript Restriction set for 4/18/2019. (HEG) (Entered: 01/18/2019) |
| 01/18/2019 | | Terminate Deadlines as to John Gregory Alexander Herrin: Transcript request deadline termed as filed. (HEG) (Entered: 01/18/2019) |
| 02/11/2019 | | Terminate Deadlines as to John Gregory Alexander Herrin: 44 redaction request and redacted transcript deadlines termed as past. (HEG) (Entered: 02/11/2019) |
| 02/22/2019 | 45 | NOTICE OF ATTORNEY APPEARANCE: Joslyn M. Hunt appearing for John Gregory Alexander Herrin (Hunt, Joslyn) (Entered: 02/22/2019) |
| 04/18/2019 | | Terminate Deadlines as to John Gregory Alexander Herrin: Release of Transcript Restrict 44 termed. (HEG) (Entered: 04/18/2019) |
| 06/27/2019 | 46 | ORDER of USCA as to John Gregory Alexander Herrin re 36 Notice of Appeal – Interlocutory. DISMISSED. (HEG) (Entered: 06/27/2019) |
| 07/03/2019 | | MINUTE ENTRY for proceedings held before Judge Sam E Haddon: Telephone Conference as to John Gregory Alexander Herrin held on 7/3/2019 (LJF) (Entered: 08/02/2019) |
| 07/08/2019 | | MINUTE ENTRY for proceedings held before Judge Sam E Haddon: Telephone Conference as to John Gregory Alexander Herrin held on 7/8/2019 (LJF) (Entered: 08/02/2019) |
| 08/21/2019 | 47 | STATUS REPORT by John Gregory Alexander Herrin (Attachments: # 1 Exhibit) (Donahoe, Michael) (Entered: 08/21/2019) |
| 10/10/2019 | 48 | Document received from U.S. Supreme Court: The petition for a writ of certiorari in the above entitled case was filed on July 25, 2019 and placed on the docket October 7, 2019 as No. 19–6188. as to John Gregory Alexander Herrin re 36 Notice of Appeal – Interlocutory. (HEG) (Entered: 10/10/2019) |
| 10/15/2019 | 49 | Document received from U.S. Supreme Court: The motion for leave to file a petition for a writ of certiorari with the supplemental appendix under seal is granted as to John Gregory Alexander Herrin re 36 Notice of Appeal – Interlocutory. (JEH) (Entered: 10/15/2019) |
| 10/31/2019 | 50 | ORDER of USCA as to John Gregory Alexander Herrin re 36 Notice of Appeal – Interlocutory. Appellants motion to stay issuance of the mandate is denied (Docket Entry No. 14). The mandate shall issue in due course. (HEG) (Entered: 10/31/2019) |
| 11/01/2019 | 51 | MANDATE of USCA as to John Gregory Alexander Herrin re 38 USCA Case Number, 50 USCA Order, 46 USCA Order, 37 Appeal Transcript Designation Order Form, 49 U.S. Supreme Court Document, 48 U.S. Supreme Court Document, 36 Notice of Appeal – Interlocutory. (HEG) (Entered: 11/01/2019) |

**EXCERPTS OF RECORD - Page 161**

| | | |
|---|---|---|
| 11/04/2019 | 52 | Order Setting as to John Gregory Alexander Herrin. Jury Trial set for 12/18/2019 at 08:45 AM in Helena, MT before Judge Sam E Haddon. Signed by Judge Sam E Haddon on 11/4/2019. (HEG) (Entered: 11/04/2019) |
| 11/25/2019 | 53 | NOTICE *OF UNITED STATES SUPREME COURT ACTION ON PETITION FOR CERTIORARI* by John Gregory Alexander Herrin (Attachments: # 1 Appendix) (Donahoe, Michael) (Entered: 11/25/2019) |
| 11/25/2019 | 54 | Unopposed MOTION to Continue *JURY TRIAL AND REQUEST FOR HEARING ON THIS MOTION* by John Gregory Alexander Herrin. (Donahoe, Michael) (Entered: 11/25/2019) |
| 11/25/2019 | | MINUTE ENTRY for proceedings held before Judge Sam E Haddon: Telephone Conference as to John Gregory Alexander Herrin held on 11/25/2019 (LJF) (Entered: 12/03/2019) |
| 11/26/2019 | | MINUTE ENTRY for proceedings held before Judge Sam E Haddon: Telephone Conference as to John Gregory Alexander Herrin held on 11/26/2019 (LJF) (Entered: 12/03/2019) |
| 11/26/2019 | | DUPLICATE ENTRY MINUTE ENTRY for proceedings held before Judge Sam E Haddon: Telephone Conference as to John Gregory Alexander Herrin held on 11/26/2019 (LJF) Modified on 12/3/2019 to identify entry as a duplicate to the one previously filed on 11/26.(HEG). (Entered: 12/03/2019) |
| 11/27/2019 | 57 | EXHIBIT LIST by USA as to John Gregory Alexander Herrin (Racicot, Timothy) (Entered: 11/27/2019) |
| 11/27/2019 | 58 | WITNESS LIST by USA as to John Gregory Alexander Herrin (Racicot, Timothy) (Entered: 11/27/2019) |
| 11/27/2019 | 59 | ORDER denying 54 Motion to Continue as to John Gregory Alexander Herrin (1). The trial will commence on December 18, 2019, at 8:45 a.m.as previously set by Order of November 4, 2019.Signed by Judge Sam E Haddon on 11/27/2019. (HEG) (Entered: 11/27/2019) |
| 11/27/2019 | | MINUTE ENTRY for proceedings held before Judge Sam E Haddon: Telephone Conference as to John Gregory Alexander Herrin held on 11/27/2019 (LJF) (Entered: 12/03/2019) |
| 12/03/2019 | 60 | NOTICE OF ATTORNEY APPEARANCE Michael A. Kakuk appearing for USA. (Kakuk, Michael) (Entered: 12/03/2019) |
| 12/04/2019 | 61 | Second MOTION to Continue *Trial (Unopposed)* by John Gregory Alexander Herrin. (Attachments: # 1 Text of Proposed Order) (Donahoe, Michael) Modified on 12/6/2019 **Tina Brilz to report** (HEG). (Entered: 12/04/2019) |
| 12/04/2019 | 62 | WAIVER of Speedy Trial by John Gregory Alexander Herrin (Donahoe, Michael) (Entered: 12/04/2019) |
| 12/05/2019 | 63 | Document received from U.S. Supreme Court: The petition for a writ of certiorari is denied as to John Gregory Alexander Herrin re 36 Notice of Appeal – Interlocutory. (HEG) (Entered: 12/05/2019) |
| 12/05/2019 | 64 | ORDERED: The jury trial set for December 18, 2019, is VACATED to be reset by further order of the Court upon resolution of the pending motion. The Court will conduct a hearing on Defendant Herrin's Second Unopposed Motion to Continue Jury Trial at 11:00 a.m. on December 18, 2019. Defendant's counsel shall ensure Defendant's presence at the hearing. See order for additional information on the speedy trial calculation. Signed by Judge Sam E Haddon on 12/5/2019. (HEG) Modified on 12/6/2019 Tina Brilz to report (HEG). (Entered: 12/05/2019) |
| 12/13/2019 | 65 | Unopposed MOTION *TO CONTINUE HEARING ON SECOND MOTION TO CONTINUE JURY TRIAL* by John Gregory Alexander Herrin. (Attachments: # 1 Text of Proposed Order) (Donahoe, Michael) (Entered: 12/13/2019) |
| 12/13/2019 | 66 | ORDERED: Motion to Extend Time of Hearing as to John Gregory Alexander Herrin (1)is GRANTED. The hearing set for December 18, 2019, at 11:00 a.m. is RESET for December 18, 2019, at 2:00 p.m. Defendant's counsel shall ensure Defendant's |

**EXCERPTS OF RECORD - Page 162**

| | | |
|---|---|---|
| | | presence at the hearing. Signed by Judge Sam E Haddon on 12/13/2019. (HEG) (Entered: 12/13/2019) |
| 12/18/2019 | 67 | MINUTE ENTRY for proceedings held before Judge Sam E Haddon: Motion Hearing as to John Gregory Alexander Herrin held on 12/18/2019 re 65 Unopposed MOTION *TO CONTINUE HEARING ON SECOND MOTION TO CONTINUE JURY TRIAL* filed by John Gregory Alexander Herrin. Present in the courtroom are AUSA Tim Racicot and Michael Kakuk; FD Michael Donahoe with (released) defendant. Court advises the parties of the purpose of todays proceeding and reviewing matter to date. Parties are heard on the unopposed motion to continue the trial. Court addresses the matter and determines that the ends of justice outweigh the best interests of the public and the defendant regarding speedy trial. Motion for continuance is granted and the matter will be reset for trial on Monday, January 13, 2020 at 8:45 am. Nothing further from the parties. Court is in Recess. Hearing commenced at 2:00 and concluded at 2:12 (Court Reporter Tina Brilz) (Law Clerk: W. Casey), (Hearing held in Helena) (HEG) (Entered: 12/18/2019) |
| 12/19/2019 | 71 | ORDERED: Defendant Herrin's Second Unopposed Motion to Continue Jury Trial is GRANTED. Jury Trial is RESET for 1/13/2020 at 08:45 AM in Helena, MT before Judge Sam E Haddon. Signed by Judge Sam E Haddon on 12/19/2019. (HEG) Modified on 12/20/2019 **Tina Brilz to report** (HEG). (Entered: 12/19/2019) |
| 01/10/2020 | 73 | EXHIBIT LIST by John Gregory Alexander Herrin (Donahoe, Michael) (Entered: 01/10/2020) |
| 01/10/2020 | 74 | Proposed Jury Instructions *Government's Supplemental (Working Copy)* by USA as to John Gregory Alexander Herrin (Attachments: # 1 Supplement Clean Copy) (Racicot, Timothy) (Entered: 01/10/2020) |
| 01/13/2020 | 75 | MOTION *FOR JUDGMENT OF ACQUITTAL* by John Gregory Alexander Herrin. (Donahoe, Michael) (Entered: 01/13/2020) |
| 01/13/2020 | 76 | BRIEF/MEMORANDUM in Support by John Gregory Alexander Herrin re 75 MOTION *FOR JUDGMENT OF ACQUITTAL* (Donahoe, Michael) (Entered: 01/13/2020) |
| 01/13/2020 | 77 | MINUTE ENTRY for proceedings held before Judge Sam E Haddon: Jury Trial DAY ONE as to John Gregory Alexander Herrin held on 1/13/2020. Present in the courtroom are AUSA Tim Racicot and Michael Kakuk with FBI SA Selina Devantier. FD Michael Donahoe with Defendant Herrin (released) and Admin Assistant Ashley Ulsher. Preliminary Trial matters discussed; without jury. Court is in session with all counsel and defendant present 43 prospective jurors present. Welcome from the Court. Panel sworn. Names of 32 preselected panel members seated; introductions and brief voir dire conducted. Judge takes a recess without jury to address a reported juror issue. US Marshal is heard. Counsel are heard regarding juror #37. Dft counsel objects to the removal of the juror; Over Ruled; juror and his name is stricken from the courtroom and role call. Court directs the clerk to file the note into the record re: juror into the record. Court returns after a brief recess with all parties and the pre selected and remaining jurors present to continue voir dire. Jurors # 19, 25, 32, 35 excused, redrawn. Voir Dire by parties, passed for cause. Arizona challenges conducted. Clerk reads names of 13 trial jurors. Court thanks and excuses remainder of panel and re−seats trial jurors. Trial oath sworn to jury by clerk. Jurors excused for lunch break and admonition given. Parties continue out of the presence of the jury to discuss the motion of acquittal filed on behalf of the defendant. Court is heard briefly on this issue and excuses all for lunch recess. All parties present and ready to proceed following lunch recess; jury not present. 401 revalance addressed before the Court. Court denies request as stated.Preliminary instructions read to the jury. Parties give opening statements. Plaintiffs moves to invoke rule 615; granted. Agent Devantier is allowed to remain at counsel table for the government. Government begins case in chief; calling witnesses; admitting exhibits. Admonition given to the jury before breaking for afternoon recess. All parties present and ready to proceed. Jurors return to the courtroom to hear continued testimony of gvmts witness. Court give the admonition to jurors before excusing them for the evening. Trial will reconvene tomorrow beginning at 8:15. Hearing commenced at 8:45 and concluded at 5:05, ( Jury Trial set for 1/14/2020 at 08:15 AM in Helena, MT before Judge Sam E Haddon.) (Court Reporter Tina Brilz) (Government Witnesses Sworn and Examined: Steve Prell), (Government |

| | | |
|---|---|---|
| | | Exhibits Admitted: 1,2,3,4,5,6,7,8,9,10,11,12), (Law Clerk: W. Casey), (Hearing held in Helena) (HEG) Modified on 1/14/2020 to clean up text(HEG). (Entered: 01/13/2020) |
| 01/13/2020 | 78 | JURY MEALS/LODGING ORDER as to John Gregory Alexander Herrin. Signed by Judge Sam E Haddon on 1/13/2020. (HEG) (Entered: 01/13/2020) |
| 01/13/2020 | 79 | NOTE given to Court re: juror. Ordered by Court to be filed in the Record. (HEG) (Entered: 01/13/2020) |
| 01/14/2020 | 80 | MINUTE ENTRY for proceedings held before Judge Sam E Haddon: Jury Trial DAY 2 as to John Gregory Alexander Herrin held on 1/14/2020. Present in the courtroom are AUSA Tim Racicot and Michael Kakuk with FBI SA Selina Devantier. FD Michael Donahoe with Defendant Herrin. Government resumes with witness Prell from previous day. Government continues to call witnesses and moves for admission of exhibits. Defense brought up his objections to the Exhibits 13–27 out of the presence of the Jury. Judge said Objections are noted for the record and are overruled. Court gave the admonition to jurors before breaks, lunch and upon excusing them for the evening. Trial will reconvene tomorrow beginning at 8:15. Hearing commenced at 8:19 and concluded at 4:58, ( Jury Trial set for 1/15/2020 at 08:15 AM in Helena, MT before Judge Sam E Haddon.) (Court Reporter Tina Brilz) (Government Witnesses Sworn and Examined: S.A. Selena DeVantier,Wanda Douglas, Arnold Ailer, Curtis McAlpin, Christopher Molzhon,Craig Stevens, Jeff Stacey,Cheri Mann, Dennis Skramstad, LaTisha Hough), (Government Exhibits Admitted: 13,14,15,16,17,18,19,20,21,22,23,24,25,26,27, 28,30,32,33,34,36), (Law Clerk: W Casey), (Hearing held in Helena) (Grady, Colleen) (Entered: 01/14/2020) |
| 01/15/2020 | 81 | MINUTE ENTRY for proceedings held before Judge Sam E Haddon: Jury Trial as to John Gregory Alexander Herrin held on 1/15/2020. Present in the courtroom are AUSA Tim Racicot and Michael Kakuk with FBI SA Selina Devantier. FD Michael Donahoe with Defendant Herrin. Judge goes over the remaining timeline of the trial with the Jury. Government calls and examines final witnesses and moves for admission of final exhibit. Defense objects to testimony which was overruled as stated. Government rests. Out of the presence of the Jury, Defense wants charges dismissed as to Rule 29. It is denied. Jury back in court. Defense calls witness and moves for admission of Exhibit 500, objected, sustained and denied. Defense argues Offer of Proof without the Jury as to Exhibit 500 and witness testimony, denied and record on this matter is closed. Defense wants Rule 29 renewed and is denied. Jury back in court. Evidence is complete. Court gave the admonition to jurors before breaks and upon excusing them for the rest of the day. Court to prepare Final instructions for the jury for deliberations. Parties will convene at 8am to go through and complete Final Jury Instructions. Jury to be present and ready for final day at 9am. Hearing commenced at 8:27 and concluded at 11:45, ( Jury Trial set for 1/16/2020 at 08:00 AM in Helena, MT before Judge Sam E Haddon.) (Court Reporter Tina Brilz) (Government Witnesses Sworn and Examined: Todd Wysocki, Kelly ONeil, Deanna Tierney, Julia Nguyen), (Defense Witnesses Sworn and Examined: Stacy Lear), (Government Exhibits Admitted:35) (Hearing held in Helena) (Grady, Colleen) (Entered: 01/15/2020) |
| 01/16/2020 | 82 | Jury List as to John Gregory Alexander Herrin (Attachments: # 1 Arizona Challenge, # 2 Plaintiff Arizona Challenge, # 3 Defendant Arizona Challenge) (HEG) (Entered: 01/16/2020) |
| 01/16/2020 | 83 | MINUTE ENTRY for proceedings held before Judge Sam E Haddon: Jury Trial Day 4 as to John Gregory Alexander Herrin held on 1/16/2020. Present in the courtroom are AUSA Tim Racicot and Michael Kakuk with FBI SA Selina Devantier. FD Michael Donahoe with Defendant Herrin. Parties go over Final Jury Instructions out of the presence of the Jury. The Rule 29 issues raised and renewed by the Defendant had been resolved with objections noted. Parties go over Final Jury Instructions out of the presence of the Jury. Defense objected to Count 1 instruction, overruled and Court instructed to submit the case with instructions as written. Jury brought in and given Final Instruction by the Court. Parties give closing arguments. Judge explains duties to alternate. Bailiff oath administered. Jury escorted to Jury room to begin deliberations at 10:10. Court received two notes from the jury at 3:12. Parties called back to court. As a result of note 1, parties filed a stipulation which was read to the jury; and as it related to note 2 the Jury was given a copy of the indictment on counts 2–13. Court received word from the Bailiff that a verdict had been reached at 5:34. All parties and |

| | | |
|---|---|---|
| | | Jury present in the courtroom as the verdict was read on all 14 counts; Verdict rendered unanimously; GUILTY on Counts 1,2,3,4,5,8,11,12,13; NOT GUILTY on counts 6,7,9,10 and 14. Judge asked if the parties wanted the Jury polled and Government declined and Defense waived. Jury thanked for their service and released. Sentencing set for May 19, 2020 at 10am. Defendant remanded to custody of the USMS pending sentencing. Hearing commenced at 8:38 and concluded at 5:48 (Court Reporter Tina Brilz) (Law Clerk: W Casey), (Hearing held in Helena) (Grady, Colleen) (HEG). Modified on 1/17/2020 Redacted Indictment added to minute entry. NEF regenerated to all parties. (HEG). (Entered: 01/16/2020) |
| 01/16/2020 | 84 | STIPULATION by John Gregory Alexander Herrin. (HEG) (Entered: 01/17/2020) |
| 01/16/2020 | 85 | Jury Notes as to John Gregory Alexander Herrin (Attachments: # 1 Jury Note 2, # 2 Jury Note 3) (HEG) Modified on 1/17/2020 to correct file date (HEG). (Entered: 01/17/2020) |
| 01/16/2020 | 86 | PRELIMINARY Jury Instructions given as to John Gregory Alexander Herrin. (HEG) (Entered: 01/17/2020) |
| 01/16/2020 | 87 | FINAL Jury Instructions given as to John Gregory Alexander Herrin. (HEG) (Entered: 01/17/2020) |
| 01/16/2020 | 88 | EXHIBIT LIST by USA as to John Gregory Alexander Herrin (Attachments: # 1 Ex 1 OTR Photos, # 2 Ex 2 Garda Photos (bags), # 3 Ex 3 Garda Surveillance Video Still Photos, # 4 Ex 4 Garda Manifest Forms, # 5 Ex 5 Garda Settlement Reports, # 6 Ex 6Helena Work Schedule, # 7 Ex 7 Olson and McAlpin Route Sheets, # 8 Ex 8 Reese and Tisdal Route Sheets, # 9 Ex 9 Ailer and Molzhon Route Sheets, # 10 Ex 10 Garda Photos – load bag CW858, # 11 Ex 11 Garda Photos – load bag 5796M, # 12 Ex 12 Garda Photos load bag 1324–1327, # 13 Ex 13 WFB 160,870 Deposit (Count II), # 14 Ex 14WFB 120,000 Deposit (Court VI), # 15 Ex 15 WFB – Account 8094, # 16 Ex 16 WFB – Account 2888, # 17 Ex 17 WFB – Credit Card – Account 1718, # 18 WFB Ex 18 Credit Card – Account 1718 Jan–Feb 2014, # 19 Ex 19 WFB Credit Card – Account 1718 Jan–Sept 2014, # 20 Ex 20 US Bank– Accounts 2656 and 8952, # 21 Ex 21 Rocky Mountain Bank Records – Account 5050 – July 2014, # 22 Ex 22 Rocky Mountain Bank Records – Account 5050 – Dec 2014, # 23 Ex 23 2013 Tax Returns, # 24 Ex 24 2014 Tax Returns, # 25 Ex 25 Delta Records (1273–1275), # 26 Ex 26 Allegiant Records (BZN–LAS), # 27 Ex 27 Allegiant Records (MSO–LAS), # 28 Ex 28 Ailer Resignation Letter, # 29 Ex 30 Aria Records, # 30 Ex 32 Ameritrade – Wire and ACH Information, # 31 Ex 33 Ameritrade – 2014 Form 1099, # 32 Ex 34 Ameritrade – 2015 Form 1099, # 33 Ex 35 Ford Repossession Documents (286–295), # 34 36 Rocky Mountain Bank Records re Watson Law Office) (HEG) (Entered: 01/17/2020) |
| 01/16/2020 | 89 | WITNESS LIST by USA as to John Gregory Alexander Herrin (HEG) (Entered: 01/17/2020) |
| 01/16/2020 | 90 | DEFENDANTS EXHIBIT LIST by John Gregory Alexander Herrin (Attachments: # 1 EX 500 (Not Admitted) (HEG) Modified on 1/17/2020 TO CORRECT FILE DATE (HEG). (Entered: 01/17/2020) |
| 01/16/2020 | 91 | JERS EXHIBITS by USA as to John Gregory Alexander Herrin. (HEG) (Entered: 01/17/2020) |
| 01/16/2020 | 92 | UNREDACTED JURY VERDICT as to John Gregory Alexander Herrin. (HEG) (Entered: 01/17/2020) |
| 01/16/2020 | 93 | REDACTED JURY VERDICT. (HEG) (Entered: 01/17/2020) |
| 01/16/2020 | 95 | WITNESS LIST by John Gregory Alexander Herrin (HEG) (Entered: 01/17/2020) |
| 01/17/2020 | 94 | Order Setting as to John Gregory Alexander Herrin Sentencing set for 5/19/2020 at 10:00 AM in Helena, MT before Judge Sam E Haddon. Signed by Judge Sam E Haddon on 1/17/2020. (HEG) (Entered: 01/17/2020) |
| 01/22/2020 | 96 | AMENDED ORDER as to John Gregory Alexander Herrin re 94 . Sentencing is set for May 19, 2020, at 10:00 a.m., **in Courtroom I of the Paul G. Hatfield Courthouse, Helena, Montana.** Signed by Judge Sam E Haddon on 1/22/2020. (HEG) (Entered: 01/22/2020) |

| 01/27/2020 | 97 | Exhibits Returned of to Defendant John Gregory Alexander Herrin consisting of: Governments JERS flash drive and exhibit binder of admitted exhibits; binder and flash drive delivered to Helena AUSA. Defendant's JERS flash drive and exhibit 501 (not admitted); mailed to counsel for defendant. (HEG) (Entered: 01/27/2020) |
|---|---|---|
| 01/30/2020 | 98 | MOTION for Acquittal *Under Rule 29(c) Fed. R. Crim. P.*, MOTION for New Trial *Under Rules 29(d) and 33 Fed. R. Crim. P.* by John Gregory Alexander Herrin. (Donahoe, Michael) (Entered: 01/30/2020) |
| 01/30/2020 | 99 | BRIEF/MEMORANDUM in Support by John Gregory Alexander Herrin re 98 MOTION for Acquittal *Under Rule 29(c) Fed. R. Crim. P.* MOTION for New Trial *Under Rules 29(d) and 33 Fed. R. Crim. P.* (Donahoe, Michael) (Entered: 01/30/2020) |
| 02/03/2020 | 100 | TRANSCRIPT DESIGNATION ORDER FORM *FOR TRIAL* by John Gregory Alexander Herrin for proceedings held on 01/13/20 – 01/16/20 before Judge Sam E. Haddon. Court reporter Tina Brilz. Type of transcript: 30–Day. Transcript due by 3/4/2020. (Donahoe, Michael) (Entered: 02/03/2020) |
| 02/03/2020 | 101 | TRANSCRIPT DESIGNATION ORDER FORM *(Trial Transcript)* by USA as to John Gregory Alexander Herrin for proceedings held on 1/13/20–1/16/20 before Judge Sam E. Haddon. Court reporter Tina Brilz. Type of transcript: 30–Day. Transcript due by 3/4/2020. (Racicot, Timothy) (Entered: 02/03/2020) |
| 02/05/2020 | 102 | RESPONSE to Motion by USA as to John Gregory Alexander Herrin re 98 MOTION for Acquittal *Under Rule 29(c) Fed. R. Crim. P.* MOTION for New Trial *Under Rules 29(d) and 33 Fed. R. Crim. P.* (Racicot, Timothy) (Entered: 02/05/2020) |
| 02/12/2020 | 103 | REPLY TO RESPONSE to Motion by John Gregory Alexander Herrin re 98 MOTION for Acquittal *Under Rule 29(c) Fed. R. Crim. P.* MOTION for New Trial *Under Rules 29(d) and 33 Fed. R. Crim. P.* (Donahoe, Michael) (Entered: 02/12/2020) |
| 02/19/2020 | 104 | ORDERED: Defendant's Renewed Motion for Acquittal Under Rule 29(c) Fed. R. Crim. P. and Alternative Motion for New Trial Under Rules 29(d) and 33 Fed. R. Crim. P. is DENIED. Signed by Judge Sam E Haddon on 2/19/2020. (HEG) (Entered: 02/19/2020) |
| 02/26/2020 | 105 | TRANSCRIPT of Jury Trial re 101 Transcript Designation Order Form, 100 Transcript Designation Order Form, as to John Gregory Alexander Herrin held on 1/13/2020 before Judge Sam E. Haddon. Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER, the clerks office, or the court reporter. NOTICE: A NOTICE OF INTENT TO REQUEST REDACTION MUST BE FILED WITHIN 7 DAYS OF THIS FILING. Contact court reporter Tina Brilz, 406–899–8912, tinabrilz@hotmail.com. For further information, please see the Transcript Redaction Procedure and Schedule on the Court Reporters page of our website. Redaction Request due 3/18/2020. Redacted Transcript Deadline set for 3/30/2020. Release of Transcript Restriction set for 5/26/2020. (HEG) (Entered: 02/26/2020) |
| 02/26/2020 | 106 | TRANSCRIPT of Jury Trial re 101 Transcript Designation Order Form, 100 Transcript Designation Order Form, as to John Gregory Alexander Herrin held on 1/14/2020 before Judge Sam E. Haddon. Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER, the clerks office, or the court reporter. NOTICE: A NOTICE OF INTENT TO REQUEST REDACTION MUST BE FILED WITHIN 7 DAYS OF THIS FILING. Contact court reporter Tina Brilz, 406–899–8912, tinabrilz@hotmail.com. For further information, please see the Transcript Redaction Procedure and Schedule on the Court Reporters page of our website. Redaction Request due 3/18/2020. Redacted Transcript Deadline set for 3/30/2020. Release of Transcript Restriction set for 5/26/2020. (HEG) (Entered: 02/26/2020) |
| 02/26/2020 | 107 | TRANSCRIPT of Jury Trial re 101 Transcript Designation Order Form, 100 Transcript Designation Order Form, as to John Gregory Alexander Herrin held on 1/15/2020 before Judge Sam E. Haddon. Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER, the clerks office, or the court reporter. NOTICE: A NOTICE OF INTENT TO REQUEST |

| | | |
|---|---|---|
| | | REDACTION MUST BE FILED WITHIN 7 DAYS OF THIS FILING. Contact court reporter Tina Brilz, 406–899–8912, tinabrilz@hotmail.com. For further information, please see the Transcript Redaction Procedure and Schedule on the Court Reporters page of our website. Redaction Request due 3/18/2020. Redacted Transcript Deadline set for 3/30/2020. Release of Transcript Restriction set for 5/26/2020. (HEG) (Entered: 02/26/2020) |
| 02/26/2020 | 108 | TRANSCRIPT of Jury Trial re 101 Transcript Designation Order Form, 100 Transcript Designation Order Form, as to John Gregory Alexander Herrin held on 1/16/2020 before Judge Sam E. Haddon. Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER, the clerks office, or the court reporter. NOTICE: A NOTICE OF INTENT TO REQUEST REDACTION MUST BE FILED WITHIN 7 DAYS OF THIS FILING. Contact court reporter Tina Brilz, 406–899–8912, tinabrilz@hotmail.com. For further information, please see the Transcript Redaction Procedure and Schedule on the Court Reporters page of our website. Redaction Request due 3/18/2020. Redacted Transcript Deadline set for 3/30/2020. Release of Transcript Restriction set for 5/26/2020. (HEG) (Entered: 02/26/2020) |
| 02/26/2020 | 109 | INDEX of Jury Trial re 101 Transcript Designation Order Form, 100 Transcript Designation Order Form, as to John Gregory Alexander Herrin held on 1/13/20 – 1/16/2020 before Judge Sam E. Haddon. Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER, the clerks office, or the court reporter. NOTICE: A NOTICE OF INTENT TO REQUEST REDACTION MUST BE FILED WITHIN 7 DAYS OF THIS FILING. Contact court reporter Tina Brilz, 406–899–8912, tinabrilz@hotmail.com. For further information, please see the Transcript Redaction Procedure and Schedule on the Court Reporters page of our website. Redaction Request due 3/18/2020. Redacted Transcript Deadline set for 3/30/2020. Release of Transcript Restriction set for 5/26/2020. (HEG) (Entered: 02/26/2020) |
| 03/02/2020 | | Terminate Deadlines as to John Gregory Alexander Herrin: Transcript Deadline 100 101 termed as filed. (HEG) (Entered: 03/02/2020) |
| 03/18/2020 | | Terminate Deadlines as to John Gregory Alexander Herrin: Redacted Transcript Request/Redacted Transcript Deadlines 105, 106, 107, 108, 109 termed as past and not requested. (HEG) (Entered: 03/18/2020) |
| 03/30/2020 | 110 | ORDERED: The probation officer shall disclose the completed report, except for recommendations of the probation officer, to Defendant, counsel for Defendant, and counsel for the government on or before April 17, 2020. Copy provided to USPO. Signed by Judge Sam E Haddon on 3/30/2020. (HEG) (Entered: 03/30/2020) |
| 04/20/2020 | 111 | ORDERED: The sentencing hearing set for May 19, 2020, is VACATED and is RESET for 11:00 a.m. on June 15, 2020, at the Paul G. Hatfield Courthouse, Courtroom I, Helena, Montana. Copy emailed to USPO. Signed by Judge Sam E Haddon on 4/20/2020. (HEG) Modified on 4/21/2020 **Tina Brilz to report** (HEG). (Entered: 04/20/2020) |
| 05/01/2020 | 112 | SENTENCING MEMORANDUM by USA as to John Gregory Alexander Herrin (Racicot, Timothy) (Entered: 05/01/2020) |
| 05/01/2020 | 113 | SENTENCING MEMORANDUM by John Gregory Alexander Herrin (Donahoe, Michael) (Entered: 05/01/2020) |
| 05/27/2020 | | Terminate Deadlines as to John Gregory Alexander Herrin: Transcript Restrict Deadline termed for Docs. 105, 106, 107, 108, 109. (HEG) (Entered: 05/27/2020) |
| 06/12/2020 | 114 | MOTION *FOR RELEASE PENDING APPEAL* by John Gregory Alexander Herrin. (Attachments: # 1 Exhibit A – Conditions of Release) (Donahoe, Michael) (Entered: 06/12/2020) |
| 06/15/2020 | 115 | MINUTE ENTRY for proceedings held before Judge Sam E Haddon: Sentencing held on 6/15/2020 for John Gregory Alexander Herrin (1). Present in the courtroom are AUSA/Timothy Racicot, Michael Kakuk and FBI SA Selina Devantier; FD/ Michael |

| | | |
|---|---|---|
| | | Donahoe with dft (in custody); USPO/Ashley Hunter. Court advises the parties of the purpose of todays proceeding, reviewing matter to date. There is one objections to the PSR– Addendum by the defendant as stated. Parties are heard on objection. The Court finds the objection is not met by the governments burden of proof as stated. Restitution will not be ordered. Advisory guideline calculations stated. Allocution by counsel for the defendant; nothing from the defendant; Government responds. Defendant is sentenced to the BOP for a term of 30 months as to each count to run concurrently; followed by 36 months of supervision to run concurrent to each count. Standard and special conditions as stated. Special assessment of $900; $100 for each count found to be guilty at trial: 1,2,3,4,5,8,11,12,13. Monetary fine waived. Right of appeal waived/advised. Obj to conditions heard by counsel for the defendant. Conditions will remain as stated. Defendant is remanded to the custody of USMS. Nothing further from the parties. Court is in Recess.Hearing commenced at 11:00 and concluded at 11:36 Presentence Report due by 6/22/2020. (Court Reporter Tina Brilz) (USPO: Ashley Hunter), (Law Clerk: W. Casey), (Hearing held in Helena) (HEG) (Entered: 06/15/2020) |
| 06/16/2020 | 116 | JUDGMENT as to John Gregory Alexander Herrin (1), Count(s) 1,2–5,8,11–13. Defendant is sentenced to the BOP for a term of 30 months to run concurrently as to each count; followed by 36 months supervision to run concurrent. Standard and special conditions imposed. Special assessment of $900. No monetary fine imposed.; Count(s) 6–7, 9–10,14 Dismissed: found to be not guilty after jury trial.Original Judgment provided to USPO for retention. Signed by Judge Sam E Haddon on 6/16/2020. (HEG) (Entered: 06/16/2020) |
| 06/16/2020 | 117 | STATEMENT OF REASONS as to John Gregory Alexander Herrin re 116 Judgment. Copies to counsel via sealed email. Original to USPO for retention. Signed by Judge Sam E Haddon on 6/16/2020. (HEG) (Entered: 06/16/2020) |
| 06/16/2020 | 118 | NOTICE OF APPEAL by John Gregory Alexander Herrin Filing fee $ 505, receipt number FDOM. (Donahoe, Michael) (Entered: 06/16/2020) |
| 06/16/2020 | 119 | PRESENTENCE INVESTIGATION REPORT and ADDENDUM (Sealed) as to John Gregory Alexander Herrin (Attachments: # 1 Transcript of Rulings) (HEG) Modified on 6/22/2020 To add addendum to text (HEG). (Entered: 06/16/2020) |
| 06/17/2020 | 120 | USCA Case Number as to John Gregory Alexander Herrin 20–30130 and Time Scheduling Order for 118 Notice of Appeal – Final Judgment filed by John Gregory Alexander Herrin. (HEG) (Entered: 06/17/2020) |
| 06/26/2020 | 121 | TRANSCRIPT DESIGNATION ORDER FORM *FOR ARRAIGNMENT* by John Gregory Alexander Herrin for proceedings held on 11/29/2018 before Judge Jeremiah C. Lynch. Court reporter JoAnn Jett Corson. Type of transcript: 30–Day. Transcript due by 6/25/2021. (Donahoe, Michael) (Entered: 06/26/2020) |
| 06/26/2020 | 122 | TRANSCRIPT DESIGNATION ORDER FORM *MOTIONS HEARING AND SENTENCING HEARING* by John Gregory Alexander Herrin for proceedings held on 12/18/2019 and 06/15/2020 before Judge Sam E. Haddon. Court reporter Tina Brilz. Type of transcript: 30–Day. Transcript due by 7/24/2020. (Donahoe, Michael) (Entered: 06/26/2020) |
| 06/29/2020 | 123 | ORDERED: The United States shall file its brief in response to 114 Defendant's Motion for Release Pending Appeal on of before 4:45 p.m. on Tuesday, June 30, 2020. Signed by Judge Sam E Haddon on 6/29/2020. (JDR) (Entered: 06/29/2020) |
| 06/30/2020 | 124 | RESPONSE to Motion by USA as to John Gregory Alexander Herrin re 114 MOTION *FOR RELEASE PENDING APPEAL* (Racicot, Timothy) (Entered: 06/30/2020) |
| 06/30/2020 | 125 | REPLY TO RESPONSE to Motion by John Gregory Alexander Herrin re 114 MOTION *FOR RELEASE PENDING APPEAL* (Donahoe, Michael) (Entered: 06/30/2020) |
| 06/30/2020 | 126 | ORDER denying 114 Motion for Release Pending Appeal as to John Gregory Alexander Herrin (1). Signed by Judge Sam E Haddon on 6/30/2020. (HEG) (Entered: 06/30/2020) |
| 06/30/2020 | 127 | TRANSCRIPT of Initial Appearance and Arraignment as to John Gregory Alexander Herrin held on 11–29–2018 before Judge Jeremiah C. Lynch. Transcript may be |

| | | |
|---|---|---|
| | | viewed at the court public terminal or purchased through the transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER, the clerk's office, or the transcriber. NOTICE: A NOTICE OF INTENT TO REQUEST REDACTION MUST BE FILED WITHIN 7 DAYS OF THIS FILING. Contact court reporter JoAnn Jett Corson, 406–698–9965, joannjettcorson@gmail.com. For further information, please see the Transcript Redaction Procedure and Schedule on the Court Reporters page of our website. Redaction Request due 7/21/2020. Redacted Transcript Deadline set for 7/31/2020. Release of Transcript Restriction set for 9/28/2020. (JJC) (Entered: 06/30/2020) |
| 07/20/2020 | 128 | TRANSCRIPT of Motion re 122 Transcript Designation Order Form, as to John Gregory Alexander Herrin held on 12/18/2019 before Judge Sam E. Haddon. Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER, the clerks office, or the court reporter. NOTICE: A NOTICE OF INTENT TO REQUEST REDACTION MUST BE FILED WITHIN 7 DAYS OF THIS FILING. Contact court reporter Tina Brilz, 406–899–8912, tinabrilz@hotmail.com. For further information, please see the Transcript Redaction Procedure and Schedule on the Court Reporters page of our website. Redaction Request due 8/10/2020. Redacted Transcript Deadline set for 8/20/2020. Release of Transcript Restriction set for 10/19/2020. (HEG) (Entered: 07/20/2020) |
| 07/20/2020 | 129 | TRANSCRIPT of Sentencing re 122 Transcript Designation Order Form, as to John Gregory Alexander Herrin held on 6/15/2020 before Judge Sam E. Haddon. Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER, the clerks office, or the court reporter. NOTICE: A NOTICE OF INTENT TO REQUEST REDACTION MUST BE FILED WITHIN 7 DAYS OF THIS FILING. Contact court reporter Tina Brilz, 406–899–8912, tinabrilz@hotmail.com. For further information, please see the Transcript Redaction Procedure and Schedule on the Court Reporters page of our website. Redaction Request due 8/10/2020. Redacted Transcript Deadline set for 8/20/2020. Release of Transcript Restriction set for 10/19/2020. (HEG) (Entered: 07/20/2020) |
| 07/22/2020 | | Terminate Deadlines as to John Gregory Alexander Herrin: Transcript Deadline 121 , 122 termed. Redaction Request/Redacted Transcript Deadline 127 termed. (HEG) (Entered: 07/22/2020) |
| 08/28/2020 | | Terminate Deadlines as to John Gregory Alexander Herrin: Redaction Request and Redacted Transcript Deadlines 128 , 129 termed. (HEG) (Entered: 08/28/2020) |
| 09/29/2020 | | Terminate Deadlines as to John Gregory Alexander Herrin: Release of Transcript Restrict 127 . (HEG) (Entered: 09/29/2020) |
| 10/21/2020 | | Terminate Deadlines as to John Gregory Alexander Herrin: Release of Transcript Restrict (Docs. 128,129). (HEG) (Entered: 10/21/2020) |
| 06/23/2021 | 130 | MEMORANDUM of USCA as to John Gregory Alexander Herrin re 118 Notice of Appeal – Final Judgment. Affirmed. (HEG) (Entered: 06/23/2021) |
| 07/27/2021 | 131 | ORDER of USCA as to John Gregory Alexander Herrin re 118 Notice of Appeal – Final Judgment. The petitions for rehearing and rehearing en banc (Docket Entry No. 36) are DENIED. (HEG) (Entered: 07/27/2021) |
| 08/04/2021 | 132 | MANDATE of USCA as to John Gregory Alexander Herrin re 131 USCA Order, 118 Notice of Appeal – Final Judgment, 130 USCA Memorandum, 120 USCA Case Number (HEG) (Entered: 08/04/2021) |
| 11/08/2021 | 133 | Document received from U.S. Supreme Court: The petition for a writ of certiorari in the above entitled case was filed on October 22, 2021 and placed on the docket November 3, 2021 as No. 21–6142. as to John Gregory Alexander Herrin re 118 Notice of Appeal – Final Judgment (EMH) (Entered: 11/08/2021) |
| 12/07/2021 | 134 | Document received from U.S. Supreme Court: The Court today entered the following order in the above–entitled case: The petition for a writ of certiorari is denied. as to John Gregory Alexander Herrin re 118 Notice of Appeal – Final Judgment (HEG) (Entered: 12/07/2021) |

| 01/29/2026 | | Case as to John Gregory Alexander Herrin Reassigned to Judge Brian Morris. Judge Sam E Haddon no longer assigned to the case. Please update case number on future filings to: CR−16−15−H−BMM. (TAG) (Entered: 01/29/2026) |
|---|---|---|
| 01/29/2026 | 135 | Petition for Writ by John Gregory Alexander Herrin. (Attachments: # 1 Certificate of Service) (TAG) (Entered: 01/29/2026) |
| 02/03/2026 | 136 | ORDER denying 135 Petition as to John Gregory Alexander Herrin (1). Signed by Judge Brian Morris on 2/3/2026. Mailed to Herrin (TAG) (Entered: 02/03/2026) |
| 02/05/2026 | 137 | NOTICE OF APPEAL by John Gregory Alexander Herrin re 136 Order. Filing fee $ 605 not paid. (TAG) (Entered: 02/05/2026) |
| 02/06/2026 | 138 | USCA Case Number as to John Gregory Alexander Herrin 26−761 for 137 Notice of Appeal – Order filed by John Gregory Alexander Herrin. (TAG) (Entered: 02/09/2026) |